**LAW OFFICES**
**SHERMAN & HOWARD L.L.C.**
2800 NORTH CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA  85004-1043
TELEPHONE  (602) 240-3000
FACSIMILE  (602) 240-6600
(AZ BAR FIRM NO. 00441000)
Arthur W. Pederson (AZ Bar No. 002821)
(apederson@shermanhoward.com)
David W. Garbarino (AZ Bar No. 022452)
(dgarbarino@shermanhoward.com)
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BEST WESTERN INTERNATIONAL, INC., an Arizona non-profit corporation, <br><br> Plaintiff, <br><br> v. <br><br> AV INN ASSOCIATES 1, LLC., a California limited liability company; HOOSHANG HAROONI, <br><br> Defendants. | No. CIV08-02274-PHX-DGC <br><br> **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS** |

Plaintiff Best Western International, Inc., an Arizona non-profit corporation ("Best Western"), requests summary judgment against defendants AV Inn Associates 1, LLC, a California limited liability company ("AV Inn Associates"), and Hooshang Harooni ("Harooni") (AV Inn Associates and Harooni collectively, "Defendants").  The following memorandum of points and authorities supports this motion.

### *MEMORANDUM OF POINTS AND AUTHORITIES*

Best Western seeks summary judgment on its claims against Defendants that Defendants are jointly and severally liable to Best Western for unpaid dues and assessments in the amount of $75,219.59 together with interest at the rate of one and one-half percent (1.5%) per month from December 1, 2008 until paid in full pursuant to the Membership Application and Agreement (the "Membership Agreement").

Best Western also seeks summary judgment on Harooni's counterclaim[1] on five

---

[1]      Harooni is the only counterclaimant.  *See infra* at 3.

separate grounds: (1) Harooni's counterclaim fails because there is no evidence of and he cannot prove he suffered damages; (2) Harooni's alleged oral agreements/promises fail for indefiniteness, lack of consideration, and the Membership Agreement's integration clause; (3) termination of Defendants' Best Western membership did not constitute a breach of the Membership Agreement, Best Western's Bylaws and Articles ("Bylaws") or Rules and Regulations ("Rules and Regulations"), (the Membership Agreement, Bylaws, and Rules and Regulations collectively, the "Governing Documents"), or any duty/obligation implied therein; (4) any alleged malfunction of the reservation system did not constitute a breach of the Governing Documents, or any duty/obligation implied therein; (5) any alleged failure to inform Harooni of requests for proposal deadlines for customers did not constitute a breach of the Governing Documents, or any duty/obligation implied therein.

## I.      BACKGROUND

Best Western operates as a membership association of independently owned and operated hotels (i.e., its members).  (Plaintiff's Statement of Facts ("PSOF") ¶ 1.)  The relationship, duties, and obligations of Best Western and its members, including Defendants, are created and governed by the Governing Documents.  (*Id*. ¶ 9.)  The Governing Documents require members to adhere to quality standards with respect to cleanliness of guestrooms and bathrooms and permit the Best Western Board of Directors (the "Board") to terminate a membership for failure to meet cleanliness quality standards.  (*Id*. ¶ 10.)  The quality standards insure that each Best Western member is offering quality products and services to customers and further perpetuating the goodwill attributable to and benefiting all Best Western members.  (*Id*. ¶ 11.)

The Board terminated Defendants' membership with respect to the property formerly known as the Best Western Antelope Valley Inn, located in Lancaster, California and referenced in Best Western's records as property T-05050 (the "Hotel"), based upon Defendants' failure to maintain the level of quality required by the Governing Documents.  (*Id*. ¶¶ 5, 14-18.)  Defendants received two Guest Room and

1   Public Area ("GRPA") inspection scores of less than 800 points on two consecutive

2   inspections on October 25, 2007 and January 31, 2008, thereby subjecting their

3   membership to termination as provided for by the Governing Documents.  (*Id*. ¶¶ 12-

4   15.)   After Defendants received the second GRPA score of less than 800 points, a

5   hearing was held wherein the Board considered termination of Defendants'

6   membership.  (*Id*. ¶ 16.)  Harooni attended that hearing and was given an opportunity to

7   address the Board.  (*Id*. ¶ 17.)   At the hearing, the Board decided to terminate

8   Defendants' Best Western membership.  (*Id*. ¶ 18.)   Subsequent to termination,

9   Defendants failed to pay outstanding amounts owed to Best Western.  (*Id*. ¶ 19.)  Best

10  Western sued Defendants for breach of contract, breach of open account, and breach of

11  stated account to collect the unpaid amounts.  (*Id*. ¶ 20.)

12        When Defendants filed their Answer, Defendants were not represented by

13  counsel.  (*Id*. ¶ 21.)  Before Defendants retained counsel, Defendants sought leave to

14  assert a counterclaim against Best Western styled "BREACH OF CONTRACT,

15  BREACH OF IMPLIED CONTRACT, BREACH OF IMPLIED COVENANT OF

16  GOOD FAITH AND FAIR DEALING."  (*Id*. ¶ 22.)   The Court only permitted the

17  counterclaim to be asserted by Harooni, however, because AV Inn Associates, a

18  corporate entity, was not represented by counsel.  (*Id*. ¶ 23.)

19        Months after Defendants retained counsel, Best Western sought clarification of

20  which parties had pending counterclaims against Best Western.  (*Id*. ¶ 24.)   The Court

21  ruled that AV Inn Associates had no counterclaim and that Harooni was ***the only party***

22  with a counterclaim pending against Best Western.  (*Id*. ¶ 25 (quoting Dkt. # 45 that

23  "[t]he pending counterclaim in this case, therefore, has been asserted only on behalf of

24  Defendant Harooni, not on behalf of Defendant AV Inn [Associates]").).)[2]

25  **II.    DISCUSSION**

26        Summary judgment is proper when "the pleadings, the discovery and disclosure

27  _____

28  [2]    Logically, this same reasoning should apply to the joint answer that Harooni filed on behalf of himself and AV Inn Associates.

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In this case, the undisputed facts demonstrate that Best Western is entitled to judgment as a matter of law, in whole or in part, on (1) its claims against Defendants and (2) Harooni's counterclaim against Best Western.

**A. Summary judgment is proper in favor of Best Western on its claims against Defendants**

Best Western sued Defendants for breaches of contract, open account, and stated account. (PSOF ¶ 20.) The elements of proof for Best Western's breach of contract claim are (1) existence of a contract, (2) breach of that contract, and (3) damages. *See Graham v. Asbury*, 112 Ariz. 184, 185, 540 P.2d 656, 656 (1975) ("To bring an action for the breach of the contract, the plaintiff has the burden of proving the existence of the contract, its breach and the resulting damages.") The elements of proof for Best Western's open account claim are "to prove the correctness of the account and each item thereof." *Holt v. W. Farm Servs.*, 110 Ariz. 276, 278, 517 P.2d 1272, 1274 (1974). Open accounts are accounts "where there are running or concurrent dealings between the parties, which are kept unclosed with the expectation of further transactions." *Krumtum v. Burton*, 111 Ariz. 448, 450, 532 P.2d 510, 513 (1975) (quoting *Connor Livestock Co. v. Fisher*, 32 Ariz. 80, 85, 255 P. 996, 997 (1927)). The elements of proof for Best Western's stated account claim is an agreement by the parties regarding the balance due from Defendants to Best Western. *See, e.g., Holt*, 110 Ariz. at 277-278, 517 P.2d at 1273-72 ("An account stated is an agreed balance between the parties to a settlement; that is, that they have agreed after an investigation of their accounts that a certain balance is due from one to the other.")

The uncontestable evidence demonstrates that (1) a written contract exists between Defendants and Best Western, (PSOF ¶ 2 & Ex. 2 thereto), (2) Defendants agreed to pay Best Western "fees, dues, charges, and assessments imposed generally on the membership," *(id.* ¶ 91), (3) Defendants agreed to pay the "cost of goods or services

provided by or ordered through Best Western," (*id*.), and (4) Defendants have not paid Best Western for all fees, dues, charges, and assessments imposed on the membership or for all goods and services received by Defendants, (*id*. ¶¶ 19, 93.)

As of December 1, 2008, Defendants owed Best Western $75,219.59 representing certain fees and other charges imposed on Defendants pursuant to the Governing Documents.  (*Id*. ¶ 93.)  All of the charges, fees, dues, and assessments reflected upon the Statements filed with Best Western's Complaint (Dkt. #1-2) are charges, fees, dues, and assessments permitted to be charged to Defendants pursuant to the Governing Documents.  (*Id*. ¶¶ 94-95.)  Interest accrues on past due amounts at the rate of 1.5% per month.  (*Id*. ¶ 91.)  Accordingly, each element of Best Western's breach of contract, open account, and account stated has been demonstrated herein by uncontested and/or uncontestable evidence.  Summary judgment in favor of Best Western against Defendants in the amount of $75,219.59 plus interest at the rate of 1.5% per month from December 1, 2008, until paid by Defendants, is proper.

Defendants may claim that they cannot be held liable to Best Western for charges, fees, dues, and/or assessments imposed after Defendants' membership was terminated.  The Bylaws provide, however, that "[a]ny member may resign from [Best Western] at any time but if the Member resigns or is terminated, fees and dues for ***the remainder of the fiscal year*** will become immediately due and payable."  (*Id*. ¶ 93 (emphasis added).)  Accordingly,  such a claim would be without merit.

Defendants may also claim that they cannot be held liable to Best Western for charges, fees, dues, and/or assessments imposed if Defendants' Best Western membership was wrongfully terminated.  As demonstrated *infra* at 18-20, however, termination of Defendants' Best Western membership conformed with the Governing Documents and covenant of good faith and fair dealing.  Accordingly,  such a claim would be without merit.

Defendants may also claim that they cannot be held liable to Best Western for charges, fees, dues, and/or assessments imposed because Best Western did not

1   satisfactorily provide services to Defendants.   Despite interrogatories to Defendants
2   regarding their basis to contest the amounts owed to Best Western, Defendants could
3   not identify a specific service related to the outstanding balance that was not
4   satisfactorily provided.  (*See id.* ¶ 97.)  Such a claim would be, therefore, without merit.

5       Defendants may also claim that they cannot be held liable to Best Western for
6   charges, fees, dues, and/or assessments imposed because Best Western failed to
7   maintain its reservation system and/or inform Defendants of RFP deadlines.  While Best
8   Western contests such allegations as demonstrated *infra* at 20-22, the alleged issues
9   occurred in 2005 and 2006, and have no relationship to the charges, fees, dues, and/or
10  assessments reflected in the Statements filed with Best Western's Complaint for 2008.
11  (*See id.* ¶ 96.)  Accordingly,  such a claim would be without merit.  Best Western is
12  entitled to summary judgment on its claims against Defendants.

13          **B.    Summary Judgment on Harooni's counterclaim is proper**

14      Harooni's counterclaim sounds in contract, and requires Harooni to prove that a
15  contract existed, was breached, and that ***he*** suffered damages.  *See Graham*, 112 Ariz. at
16  185, 540 P.2d at 656; *United Dairymen of Ariz. v. Schugg*, 212 Ariz. 133, 139 ¶ 21, 128
17  P.3d 756, 762 (App. 2006) (holding that a claim for breach of the covenant of good faith
18  and fair dealing fails absent proof of damages).

19      Harooni's counterclaim fails because (1) Harooni has no admissible evidence to
20  prove the damages element of his counterclaim; (2) Harooni's alleged oral
21  agreements/promises fail for indefiniteness, lack of consideration, and the Membership
22  Agreement's integration clause; (3) termination of Defendants' Best Western
23  membership did not constitute a breach of the Governing Documents, or any
24  duty/obligation implied therein; (4) any alleged malfunction of the reservation system
25  did not constitute a breach of the Governing Documents, or any duty/obligation implied
26  therein; and (5) any alleged failure to inform Harooni of requests for proposal deadlines
27  for customers did not constitute a breach of the Governing Documents, or any
28  duty/obligation implied therein.

1

### 1. *Harooni cannot prove **his** damages*

2       Harooni cannot demonstrate that **he** incurred any damages.   Instead, Harooni

3   appears to claim he is entitled to recover damages allegedly incurred by two separate

4   independent corporate entities, neither of which has a counterclaim pending against Best

5   Western in this case.   AV Inn Associates is a party to this litigation and to the

6   Membership Agreement, but has no counterclaim pending against Best Western.  (*See*

7   PSOF ¶¶ 3-4, 25.)  AV Inn Operations Group, Inc. ("AV Inn Operations") is neither a

8   party to this litigation nor a party to the Membership Agreement, has no counterclaim

9   pending against Best Western, and therefore has no existing cause of action to recover

10  from Best Western.  (*Id*. ¶ 4, 6.)  Harooni testified that AV Inn Associates owned the

11  real property and leaseholds at the Hotel, and that AV Inn Operations owned and

12  operated the businesses located on that property, i.e. the Hotel, restaurant, bar and

13  banquet hall.  (*Id*. ¶¶ 26-27.)  Harooni is a 50% interest holder in AV Inn Associates,

14  and Harooni's spouse, Jila Harooni, who is not a party to this litigation, holds the other

15  50% interest in AV Inn Associates.[3]  (*Id*. ¶ 28.)  Harooni has not pled his counterclaim

16  as a derivative claim on behalf of either entity.  (*See id*. ¶ 49.)  AV Inn Associates

17  attempted to bring its claim directly against Best Western, but failed to do so properly.

18  (*Id*. ¶ 25).   Even after having retained counsel, no effort was made to assert the

19  counterclaim on behalf of AV Inn Associates or AV Inn Operations.  (*Id*.)  Moreover,

20  since AV Inn Operations is not a party to the Membership Agreement (*id*. ¶¶ 3, 6), and

21  has no other cause of action against Best Western, AV Inn Operations could not have

22  asserted a claim against Best Western.  Because Harooni can offer no evidence of his

23  damages, summary judgment on Harooni's counterclaim is proper.

24       Even when an corporation or company is wholly owned by a single individual,

25  that individual has no right to recover for wrongs committed against the corporation.

26  *See Schroeder v. Hudgins*, 142 Ariz. 395, 398, 690 P.2d 114, 117 (App. 1984)

27  (observing that "even where all of the stock in a corporation is owned by a sole

28  _____

[3]       Harooni has not disclosed the ownership of AV Inn Operations.

1   shareholder, he may not maintain an action individually for wrongs against the
2   corporation"); *accord Hidalgo v. McCauley*, 50 Ariz. 178, 182-183, 70 P.2d 443, 445
3   (1937) (observing that "[e]ven when all the stock is owned by a sole shareholder, there
4   seems no adequate reason to depart from the general rule that the corporation and its
5   shareholders are to be treated as distinct legal persons"); *Sutter v. Gen. Petroleum
6   Corp.*, 170 P.2d 898, 900-01 (Cal. 1946) (observation that "[g]enerally, a stockholder
7   may not maintain an action in his own behalf for a wrong done by a third person to the
8   corporation on the theory that such wrong devalued his stock and the stock of the other
9   shareholders, for such an action would authorize multitudinous litigation and ignore the
10  corporate entity.").  This is logical, fair and reasonable in that an individual should not
11  be permitted to use a corporate entity as a shield from personal liability, but also use it
12  as a personal sword to recover for him or herself.   As a matter of law, Harooni cannot
13  recover from Best Western for losses allegedly suffered by AV Inn Associates or AV
14  Inn Operations.  Moreover, AV Inn Operations has no plausible cause of action against
15  Best Western as Best Western owed no duty and/or obligation to AV Inn Operations.

16       Harooni also testified that he has no evidence of alleged damages that he
17  personally incurred.  The ***only*** evidence Harooni can offer with respect to damages is
18  the testimony of an expert witness whose disclosed expert report evaluated alleged
19  damages of ***only AV Inn Operations***, which is not a party to this litigation and is not a
20  party to the Membership Agreement.   Such expert disclosures were also defective.
21  Harooni cannot prove any damages he allegedly incurred, even as such damages would
22  be as limited by the limited by the Membership Agreement.   Summary Judgment in
23  favor of Best Western is therefore proper.

24       Written discovery propounded upon Defendants revealed that Harooni could not
25  produce any evidence of damages.  In response to an interrogatory asking "how much
26  Defendants seek to recover from Best Western in the Litigation," Harooni responded
27  that "Defendants aver that Defendants purchased the Hotel for $8.9 million and sold it
28  for $4.8 million. Mr. Harooni spent close to $2 million in renovations, and defendants

1   are attempting to determine how much money they lost due to the malfunctioning

2   reservation system and after the membership was terminated." (PSOF ¶ 36.) When

3   asked by interrogatory how damages were calculated, Harooni responded "[b]y

4   assessing expenditures." (*Id*. ¶ 37.) When asked for an itemized list of specific

5   amounts sought to be recovered, Harooni responded that "Defendants claim damages

6   due to the malfunctioning reservation system and losses sustained as a result of the

7   Hotel's loss of affiliation with Best Western." (*Id*. ¶ 38.) When asked to identify

8   evidence supporting their claimed damages, Defendants responded as follows:

9   "Defendants are in the process of acquiring and will produce the Escrow Statements for

10  the purchase and sale of the Hotel. Defendants are in the process of obtaining the

11  additional financial records from their accountant and will update this answer at that

12  time." (*Id*. ¶ 39.) At Best Western's request, Defendants supplemented their responses

13  on October 28, 2009, but Defendants still could not quantify the amount of damages

14  sought or adequately describe the measure of their damages. (*Id*. ¶ 35.)

15         Concerned that Harooni had not adequately responded to Best Western's

16  discovery requests, Best Western requested a discovery conference with the Court.

17  After the discovery conference, the Court entered an order stating as follows:

18
19         Plaintiff's counsel expressed concern that Defendants have not
           fully disclosed the damages they will be seeking in their
20         counterclaim. Defense counsel agreed that there have been some
           problems in Defendants' disclosures due in part to unforeseen
21         health problems, but stated that ***Defendants will produce a
           complete expert report by the Court's deadline of November 6,***
22         ***2009, that will set forth Defendants' damages claims***. In light
           of that coming disclosure, the Court concluded that ordering
23         additional discovery responses is not warranted. The expert
           reports produced by the parties shall be full and complete expert
24         reports in compliance with Rule 26. The Court stated that if
           Defendants do not produce an expert report by November 6,
25         2009, Defendants will not be permitted to present a damages
           expert.
26
27  (*Id*. ¶ 40 (emphasis added).)

28

On November 6, 2009, Defendants disclosed a report prepared by Elias Aziz Lavi ("Lavi"), a Certified Public Accountant (the "Lavi Report"). (*Id*. ¶ 41.) The Lavi Report revealed that alleged damages sought by Harooni were incurred by ***AV Inn Operations***, an entity that is not a party to this case, and is not a party to the Membership Agreement.[4] (*Id*. ¶¶ 6, 42.) The Lavi Report stated as follows:

> At the request of A.V. Inn Operations Group, Inc., I have reviewed the documentation provided in the above-captioned matter. My findings are as follows:
>
> 1 –    Loss incurred by A.V Inn Operations group, Inc. (A.V. Inn) dues to non-renewal of corporate accounts:
>
> . . . .
>
> 2 –    Loss incurred by A.V. Inn due to malfunctioning of Best Western's reservation system:
>
> . . . .
>
> 3 –    Loss incurred by A.V. Inn due to withdraw of Best Western name, reservation system and computer software:
>
> . . . .
>
> 4 –    Loss on sale of property at lower marker value due to withdrawal of Best Western name

(*Id*. ¶ 43.) ***The Lavi Report makes no reference to losses allegedly incurred by Harooni or AV Inn Associates***. (*Id*. ¶ 44.) Harooni disclosed no other expert witness or report other than Lavi and the Lavi Report. (*Id*. ¶ 45.) During his deposition, Lavi testified that his client was only AV Inn Operations. (*Id*. ¶ 46.) Subsequent to

---

[4]    Article II, § 7(B) of the Bylaws permits certain transfers of ownership where the control does not change if specific procedures are followed. (PSOF ¶ 29.) In this case, however, Best Western learned for the first time that a transfer from AV Inn Associates to AV Inn Operations occurred only upon the deposition of Harooni which took place on December 4, 2009. (*Id*. ¶¶ 26-27.) The procedures outlined in Article II, § 7(B) were not followed in this case (*id*. ¶ 30) and any transfer to AV Inn Operations did not have the effect of transferring the rights and obligations under Governing Documents to AV Inn Operations.

1  disclosure of the Lavi Report, Harooni testified that the only evidence he could offer

2  with respect to damages was the testimony of Lavi.   (*Id*. ¶ 47.)  Yet Harooni, who was

3  then represented by counsel, made no attempt to seek to amend the pleadings to include

4  AV Inn Operations as a party.  (*Id*. ¶ 48.)   Moreover, Harooni has made no attempt to

5  amend his pleadings to allege that he is personally seeking to recover damages incurred

6  by AV Inn Associates or AV Inn Operations.  (*Id*. ¶ 49.)

7          Harooni, the only party with a counterclaim pending, cannot offer any evidence

8  of damages ***he*** allegedly incurred as the Lavi Report only assessed alleged damages of

9  AV Inn Operations.  Harooni's counterclaim fails because it is undisputed that Harooni

10 can offer no evidence of damages.   *See Lemon v. Harlem Globetrotters Int'l, Inc.*, 437

11 F. Supp. 2d 1089, 1104 (D. Ariz. 2006) (observing that if "evidence does not create a

12 triable issue with respect to the damages suffered," summary judgment is proper).

13         Moreover, Lavi should be precluded from testifying because he can offer no

14 testimony relevant to Harooni's claims.  As demonstrated *supra*, Lavi only reported on

15 the losses allegedly incurred by AV Inn Operations, not losses allegedly incurred by

16 Harooni.  The trial testimony of Lavi will be limited solely to damages incurred by AV

17 Inn Operations, i.e. the scope of the Lavi Report, an entity that is not a party to this case

18 and not a party to the Membership Agreement.  Lavi's testimony will have no relevancy

19 to Harooni's counterclaim.  *See* Fed. R. Evid. 403.

20         Lavi should also be precluded from testifying based upon Harooni's failure to

21 properly disclose Lavi as an expert witness as required by Rule 26(a)(2)(B), Fed. R.

22 Civ. P.  Rule 26(a)(2)(B)(ii), (iv), (v), Fed. R. Civ. P., requires the following disclosures

23 with an expert's written report:

24                    (ii) the data or other information considered by the witness
25           in forming them;

26                 . . . .

27                    (iv)  the  witness's  qualifications,  including  a  list  of  all
28           publications authored in the previous ten years;

1

2        (v) a list of all other cases in which, during the previous

3        four years, the witness testified as an expert at trial or by deposition.

4  Harooni disclosed the Lavi Report, but not Lavi's qualifications or a list of other cases

5  in which Lavi has testified at trial or by deposition during the last four years.  (PSOF ¶

6  50.)  Moreover, the Lavi Report only stated that Lavi considered "the documentation

7  provided in the above-captioned matter" and "general ledgers" without describing with

8  any specificity of what Lavi actually considered.  (*Id*. ¶ 51.)

9       When Best Western deposed Lavi on December 11, 2009, Lavi testified that he

10  had not provided counsel for Defendants a curriculum vitae or a list of recent litigation.

11  (*Id*. ¶ 52.)  Lavi testified, however, that he was most recently deposed as an expert

12  witness 2-3 years earlier.  (*Id*. ¶ 53.)  Moreover, when Lavi produced the documents he

13  considered in response to Best Western's subpoena, the documents included more than

14  2200 pages of tax returns and other documents and records disclosed to Best Western

15  for the first time on December 4, 2009, almost one month after disclosure of Lavi as an

16  expert witness.  (*Id*. ¶ 54.)  Despite the Court's express order that the Harooni produced

17  expert report "shall be full and complete expert reports in compliance with Rule 26,"

18  Harooni did not comply with the disclosure requirements, and Lavi should be precluded

19  from testifying.  *See, e.g., Elgas v. Colo. Belle Corp.*, 179 F.R.D. 296, 300 (D. Nev.

20  1998) (precluding an expert from testifying for failure to disclose "other cases in which

21  he has testified as an expert at trial or by deposition within the preceding four years");

22  *accord Pell v. E.I. Dupont De Nemours & Co.*, 231 F.R.D. 186 (D. Del. 2005)

23  (requiring a litigant to supplement its expert reports, submit the expert to a further

24  deposition, or face preclusion of the expert's testimony for failure to disclose the

25  expert's qualifications and other cases wherein the expert testified*); Pomales v.*

26  *Bridgestone Firestone*, Inc., 217 F.R.D. 290, 293 (D.P.R. 2003) (striking expert

27  testimony for failure to disclose an expert's qualifications).

28       Lavi should also be precluded from testifying regarding any loss in value of the

Hotel because of his lack of qualification.  Despite the fact AV Inn Associates owned the real property under the Hotel, Lavi reported as to AV Inn Operations as follows:

> The company sold the property in July, 2009, to avoid incurring additional loss on the operations of the hotel.  The property was not sold on the basis of its best use which is a hotel property as a result of the withdrawal of Best Western name but was sold to a medical college.   Lost income on the sale of the property amounted to $1,300,000.00.

(*Id*. ¶ 55.)  Lavi calculated the $1,300,000.00 loss of AV Inn Operations as follows:

**<u>Loss on sale of property at lower market value due to withdrawal of Best Western name</u>**

| | | |
|---|---|---|
| Previous buyer's offer for the property 6/15/08 | $ | 6,100,000 |
| Actual selling price (sold to medical college) | | 4,800,000 |
| | $ | 1,300,000 |

(*Id*. ¶ 56.)

Defendants' Best Western membership was cancelled, however, on or about April 8, 2008 (*id*. ¶ 57), **<u>*before*</u>** the offer to purchase the Hotel on June 15, 2008, **<u>*which Harooni testified he rejected because it was too low*</u>**.  (*Id*. ¶ 58.)  The Hotel was not sold until July of 2009.  (*Id*. ¶ 59.)  Defendants have offered no evidence of any reduction in value of the Hotel as a result of the termination at the time of the termination.  During his deposition, Lavi testified that he had no specific qualification to testify as an expert regarding the value of real property.  (*Id*. ¶ 60.)  Accordingly, testimony from Lavi should be precluded to the extent that it is offered as to the value of the Hotel at the time of the termination with and without the Best Western membership. *See United States v. Chang*, 207 F.3d 1169, 1172 (9th Cir. 2000) ("To qualify as an expert, a witness must have 'knowledge, skill, experience, training, or education' relevant to such evidence or fact in issue.")  As demonstrated *supra*, without Lavi's testimony, Harooni has absolutely no evidence of damages to offer and cannot, as a matter of law, recover from Best Western.

Finally, the Membership Agreement contains a limitation of damages provision:

> Applicant agrees that Applicant shall be limited to actual damages for any breach or default by Best Western of any obligation or duty owed to Applicant, and Applicant further agrees that Best Western's liability for any damages shall be limited to the amount of the membership fees actual paid by Applicant in connection with the Hotel, during a single fiscal year in which the breach or default occurred.

(*Id*. ¶ 61.)  Despite the foregoing provision, Harooni has disclosed no evidence that he paid membership fees in connection with the Hotel.  Accordingly, Harooni cannot demonstrate he is entitled to a return of the membership fees paid.

> 2.  *Harooni's alleged oral agreements/promises fail for indefiniteness, lack of consideration, and the Membership Agreement's integration clause*

Harooni claims that Terry Wininger, Best Western District Manager, "induced Mr. Harooni to purchase the hotel after 2 other buyers backed out," and "promised to provide support because of his inexperience in the hotel business."  (*Id*. ¶ 62.)  Harooni claims that "[s]ome of the services that Plaintiffs promised Defendants were pursuant to oral agreement."  (*Id*. ¶ 63.)  In supplemental responses to Best Western's discovery, Harooni stated as follows:

> Ms. Wininger stated Best Western had various support that would be available to Mr. Harooni to aid him in running the hotel, including money management, account management, design help. These representations were made orally during the initial interview and there are no documents containing these promises.
>
> . . . .
>
> The oral agreement was between Terry Wininger and Hooshang Harooni made on the day of the initial interview for the membership. Ms. Wininger promised various support to help Mr. Harooni in running the hotel if he was to purchase the hotel. Those promises included money management, account management, design help, and general help with day to day operations of the hotel.

(*Id.* ¶ 64.)

Assuming for purposes of this motion only that the alleged oral agreements/promises were made before Harooni executed the Membership Agreement,[5] the parol evidence rule applies.  The Membership Agreement unambiguously states that "[i]f the application is approved in writing by Best Western, the Membership Agreement and License Agreement sections will control the relationship between Applicant and Best Western."  (*Id.* ¶ 66.)  The Membership Agreement further states as follows:

> This Membership Application and Agreement embodies the whole agreement of the parties.  There are no promises, terms, conditions or obligations other than those contained herein.  This Membership Application and Agreement shall supersede all previous communications, representations, or agreements, either verbal or written, between the parties hereto.

(*Id.* ¶ 67.)  "The parol evidence rule, as traditionally stated, renders inadmissible any evidence of prior or contemporaneous oral understandings and of prior written understandings, which would contradict, vary or add to a written contract which was intended as the final and complete statement or integration of the parties' agreement."  *Pinnacle Peak Developers v. TRW Inv. Corp.*, 129 Ariz. 385, 389, 631 P.2d 540, 544 (App. 1980).  While an integration clause cannot shield a contracting party from claims of fraud and misrepresentation, *see Wagner v. Rao*, 180 Ariz. 486, 885 P.2d 174 (App. 1994), Harooni has not asserted such claims against Best Western.  Instead, Harooni claims that Best Western breached oral agreements/promises, and has only set forth claims for breach of contract, breach of implied contract, and breach of the covenant of good faith and fair dealing in his complaint.  The parol evidence rule and the integration clause of the Membership Agreement bar Harooni from making such claims.  Summary judgment in favor of Best Western is therefore appropriate.

---

[5]   Harooni testified that the alleged oral agreements/promises were made before Harooni executed the Membership Agreement.  (PSOF ¶ 65.)  Best Western disagrees, but for purposes of this Motion for Summary Judgment only, assumes Harooni's recollection is accurate.

1    Regardless of when the alleged oral agreements and/or promises were made, the

2    alleged oral agreements and/or promises fail for indefiniteness and/or lack of

3    consideration.  A party attempting to prove the existence of an agreement must establish

4    each of the elements of a contract: "offer, acceptance, consideration, a sufficiently

5    specific statement of the parties' obligations, and mutual assent."  *Muchesko v.*

6    *Muchesko*, 191 Ariz. 265, 268, 955 P.2d 21, 24 (App. 1997); *accord K-Line Builders v.*

7    *First Fed. Sav. & Loan Ass'n*, 139 Ariz. 209, 212, 677 P.2d 1317, 1320 (App. 1983)

8    (stating that "[a]n offer cannot be accepted so as to form a contract unless there is

9    sufficient specification of terms so that the obligations involved can be ascertained,"

10   and citing Restatement (Second) of Contracts § 33).  "Consideration is a benefit to the

11   promisor or a loss or detriment to the promise," *Fed. Rubber Co. v. Pruett*, 55 Ariz. 76,

12   79, 98 P.2d 849, 850 (1940), and can consist merely of a "[a] promise for a promise."

13   *Muchesko*, 191 Ariz. at 269, 955 P.2d at 25.

14        When asked to identify the terms of the alleged oral agreements and promises,

15   Harooni could only testify in vague indefinite terms:

16        BY MR. GARBARINO:

17

18        Q.   So, specifically, what support did Terri Wininger tell you
          Best Western would provide?

19

20        A.   Specifically, what I recall was three items.  She said three
          or four items.  She said we have design people standards.  She
21        showed me all of the room, design room, and people working on
          design and stuff.  That wasn't part of her sales pitch.  And she
22        said we have money manager who monitor your accounts at all
          times.  That was good just in case anything goes wrong.  They
23        are there to help you.  And like Mitch type of a person that
          comes there all the time.  And she said we give you -- all the
24        help we can give you, we will give you.

25   (*Id.* ¶ 68.)  When asked what the terms of the oral agreements/promises were, Harooni

26   responded as follows:

27

28        A.   Having the two major diseases and working for 30 years
          and not even -- I didn't even have one time defeat, so I wasn't

going to make a mistake, so I went for interview with Terry Wininger to qualify me, and she assured me that "Don't worry, everything is going to be okay, we have money manager, we have people that come in to monitor your revenue for you, we have a field officer, anytime you want, he'll be there to help you with any questions that you have."  And the other chain -- and at that time, I said, "I like Best Western name myself too," so I thought it would be a good name for that location, so I went for it.

Q.   So what are the terms of the actual oral agreement that you just discussed?

A.   I didn't know it was supposed to be a term.  What do you mean by that?

Q.   What obligation did Best Western have to you under the agreement that you just set forth?

A.   To help me with the account.

(*Id*. ¶ 69.)  Kamyar Refoua ("Refoua"),[6] Harooni's assistant, who was present at the initial meeting between Harooni and Best Western, testified that Wininger explained the services "[v]ery vaguely" stating that Wininger was simply explaining the services Best Western offered members, "[it] was not specific for us," but rather "service they provided to all the members."  (*Id*. ¶ 70.)   Refoua also testified that the account monitoring was not specific for the Hotel, but was a service offered to all Best Western members.  (*Id*. ¶ 71.)  When asked whether he paid additional amounts for the support to be provided above and beyond that guaranteed by the Governing Documents, Harooni testified that he had no idea and could not remember.  (*Id*. ¶ 72.)  During the time Defendants were Best Western members, Best Western neither assessed nor charged Defendants, nor received payment from Defendants above and beyond the amounts permitted to be assessed and/or charged to Defendants as a Best Western member per the Governing Documents.  (*Id*. ¶ 73.)  Accordingly, there is no genuine issue of material fact in dispute that the alleged oral agreements/promises fail for

---

[6]     Refoua also goes by the name Kevin.

indefiniteness and/or lack of consideration.

> 3. *Termination of Defendants' Best Western membership did not constitute a breach of the Governing Documents, or any duty/obligation implied therein*

In a previous case, this Court made the following observations with respect to termination of a Best Western membership based upon poor inspection scores:

> Best Western's rules and regulations provide that members will be subjected to twice-annual inspections of their properties. These inspections begin with a total of 1,000 points; deductions are then made for specific deficiencies found at the properties. The minimum acceptable inspection score is 800. Properties receiving a score below 800 are placed on probation. Best Western's Board of Directors may cancel the membership agreement with respect to any property that receives two consecutive scores below 800 or a single inspection score below 600. Before cancelling a membership agreement, the rules and regulations require that Best Western grant a hearing before its Board of Directors.

*Best Western Int'l, Inc. v. Sharda*, 2009 U.S. Dist. LEXIS 52502 (D. Ariz. June 22, 2009).[7]   A former member's strong disagreement with the Board's decision is not evidence that Best Western acted in bad faith. *Best Western Int'l, Inc. v. Sharda*, LLC, 2008 U.S. Dist. LEXIS 66536 (D. Ariz. Aug. 20, 2008).

In this case, Defendants received two consecutive inspection scores below 800 points, but claimed, in response to an interrogatory, that the inspections were "capricious" and that the Best Western inspector, Mitch Van Wormer ("Van Wormer"), took points off for items previously approved.  (*Id*. ¶ 74.)  In supplementing their response, Defendants claimed that previously approved items resulted in deductions on the October 25, 2007 inspection, but made no similar claim with respect to the January 31, 2008 inspection.  (*Id*. ¶ 75.)  In response to interrogatories expressly requesting Defendants to "[i]dentify each and every fact that Defendants rely upon to allege that

---

[7]   The Governing Documents in the *Best Western Int'l, Inc. v. Sharda* matter are substantively the same Governing Documents at issue in this case with the exception of the parties to the Membership Agreement.

any inspection score was unjustly issued or given by Best Western with respect to the Hotel, Defendants disclosed no evidence that the January 31, 2008 inspection score was unjustly issued.  (*Id.* ¶ 76.)

Defendants' own head housekeeper, Lina Eseltine ("Eseltine"), testified, however, that Van Wormer's inspections were consistent:

> [BY MR. GARBARINO]
>
> Q.   Is it fair to say that, when Mitch saw a problem, he deducted a point?
>
> A.   Yes.  Yes, he did deduct points.
>
> Q.   Did Mitch ever see problems when he didn't deduct points?
>
> A.   If it was something little -- if it was something little, he would say, you know, this doesn't make any sense.  He would say like if he would find a little stain on a chair or something like that.  But he would always take a picture of it.
>
> Q.  But it would have to be a very small problem?
>
> A.   Very little, very small.  I would say, please don't take any points off.

(*Id.* ¶ 77.)  Similarly, the General Manager of the Hotel, Cheryl Duggan who also observed several inspections performed by Van Wormer testified that Van Wormer would not overlook problems, and that he would mark down deficiencies he saw and deduct points for such deficiencies.  (*Id.* ¶ 78.)

Moreover, the existence of the conditions leading to the failing scores are undisputed.  Eseltine, who was present for each of the two failing inspections, as well as previous inspections, verified the existence of numerous physical conditions giving rise to each of the failing scores.  (*Id.* ¶ 79.)  Harooni also verified the existence of numerous physical conditions leading to point deductions as well.  (*Id.* ¶¶ 80-81.)  Accordingly, the existence of the conditions leading to the point deductions is not contested.

When asked about the Board meeting when the Board considered whether Defendants' membership should be terminated, Harooni failed to identify any conduct that would demonstrate bad faith by the Board.  (*Id*. ¶ 82.)  Simply put, Harooni disagreed with the Board's decision, but even his strong disagreement does not give rise to bad faith.   Accordingly, Best Western is entitled to summary judgment that termination of Defendants' membership did not constitute a breach of the Governing Documents or of the covenant of good faith and fair dealing as there are no material facts in dispute that the termination of Defendants' membership was consistent with the Governing Documents and the covenant of good faith and fair dealing.

> 4.      *Any alleged malfunction of the reservation system did not constitute a breach of the Governing Documents, or any duty/obligation implied therein*

Harooni alleges that in late 2005 and early 2006, Best Western's reservation system malfunctioned thereby entitling Harooni to relief pursuant to a claim of relief sounding in contract.  Best Western contests such allegations and, should this issue go to trial, will offer evidence demonstrating that the alleged issues with the reservation system were a direct result of operator error by employees or agents of the Hotel.  As a legal matter for summary judgment, Best Western had no legal obligation to provide an error free system all of the time, and Defendants cannot dispute that the issue was quickly resolved satisfying any obligation Best Western had under the Governing Documents to address the alleged issue.

The Governing Documents include provisions relating to Best Western's reservation system.  (*Id*. ¶ 83.)  The Governing Documents do not guarantee that Best Western's reservation system, including the software and hardware used at the hotel level, will be free of errors and malfunctions at all times.  (*Id*. ¶ 84.)  While Best Western would like to be able to make such a guarantee, such a guarantee is unreasonable and unrealistic.  The Membership Agreement even recognizes that errors and malfunctions are bound to occur when it states that the member shall "participate in

the troubleshooting process" should a failure or interruption occur, and that "[i]t shall be the sole responsibility of Best Western to make final problem determination and dispatch technical resources as needed to achieve problem resolution," thereby eliminating any unrealistic expectation that Best Western's reservation system shall be error proof all of the time. (*Id*. ¶ 85.) As a matter of law, therefore, Best Western cannot be held liable in contract for a, obligation and/or duty that is not included in the Governing Documents and/or constitutes a unrealistic, unreasonable expectation expressly disclaimed in the Governing Documents.

Moreover, Best Western's obligations under the Governing Documents were satisfied when the issue was quickly resolved. The Hotel's Director of Sales testified that the issue was resolved by Best Western's Regional Service Manager within a week of Defendants notifying Best Western of the issue. (*Id*. ¶ 86.) The General Manager testified that the issue was actually resolved within a day or less. (*Id*. ¶ 88.) Accordingly, to the extent Best Western had an obligation to resolve the issue, that obligation was satisfied promptly upon notifying Best Western.

To the extent the issue constituted a breach of contract, which it did not, the breach was not material. Restatement (Second) of Contracts § 241 provides that the Court should consider the following factors in determining whether a breach is material:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>
> (e) the extent to which the behavior of the party

> failing to perform or to offer to perform comports with
> standards of good faith and fair dealing.

*See Mining Inv. Group, LLC v. Roberts*, 217 Ariz. 635, 638 ¶ 11, 177 P.3d 1207, 1210 (App. 2008) (recognizing that the Arizona Supreme Court has adopted the Restatement (Second) of Contracts § 241 in "determining the materiality of a breach of contract").

In this case, there was no reasonable expectation of an error free reservation system given the language of the Membership Agreement.   (*See* PSOF ¶¶ 83-85.)   As demonstrated *supra* at 7-14, Harooni has no evidence to present regarding **_his_** losses. The issue was quickly resolved, and Best Western's conduct resolving the alleged stale issue comports with the covenant of good faith and fair dealing.   The alleged issue with respect to the reservation system does not constitute a material breach.

> 5.   *Any alleged failure to inform Harooni of requests for proposal deadlines for customers did not constitute a breach of the Governing Documents, or any duty/obligation implied therein*

Harooni alleges in part that he is entitled to relief under a contract based claim because Best Western allegedly had a duty to inform Harooni of deadlines to renew corporate accounts through a request for proposal ("RFP") process, and that Best Western allegedly failed to do so in 2005.  Harooni did not retain professional sales staff until early 2006 believing that he could do it himself.  (*Id*. ¶ 89.)  The Governing Documents contain no provision obligating Best Western is to inform its members of deadlines to submit RFP's to potential customers.  (*Id*. ¶ 90.)  Harooni's expectations to the contrary are not supported by the Governing Documents.  Best Western cannot be held liable for Harooni's own lack of success in participant in the RFP process.

## III.   CONCLUSION

Based upon the foregoing, Best Western requests summary judgment, in whole or in part, on (1) Best Western's claim against Defendants and/or (2) Harooni's counterclaim.

///

///

1

**DATED** this 19th day of March 2010.

2

SHERMAN & HOWARD L.L.C.

3

4

By /s/ David W. Garbarino

5

Arthur W. Pederson
David W. Garbarino
2800 North Central Avenue, Suite 1100
Phoenix, AZ 85004-1043
Attorneys for Plaintiff

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2010, the foregoing was electronically transmitted to the Clerk's Office of the U.S. District Court for the District of Arizona using the CM/ECF System for filing and service upon the following individual via email:

Kira A. Schlesinger
The Schlesinger Conrad Law firm
11811 N. Tatum Blvd., Ste. 3037
Phoenix, AZ 85028
kira@schlesingerconrad.com

/s/ David W. Garbarino