Kira A. Schlesinger (State Bar No. 023450)
**THE SCHLESINGER CONRAD LAW FIRM**
11811 N. Tatum Blvd., Ste. 3037
Phoenix, Arizona 85028
Tel: 602-615-6013
Fax: 602-441-5302
E-Mail: Kira@SchlesingerConrad.com

*Attorney for Defendant/Counterclaimant Hooshang Harooni, and Defendant AV Inn Associates 1, LLC*

The Schlesinger Conrad Law Firm

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BEST WESTERN INTERNATIONAL, INC.<br><br>Plaintiff,<br><br>v.<br><br>HOOSHANG HAROONI AND AV INN ASSOCIATES 1, LLC,,<br><br>Defendants.<br>______________________________<br><br>AND RELATED COUNTERCLAIM<br>______________________________ | No. CV 08 - 2274 - PHX-DGC<br>(Assigned to the Hon. David G. Campbell)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON THE PURELY LEGAL ISSUE OF WRONGFUL TERMINATION OF THE AGREEMENT<br><br>[Filed concurrently with:<br>- Notice of Motion and Motion for Summary Judgment;<br>- Separate Statement of Undisputed Facts;<br>- (Proposed) Judgment]<br><br>**ORAL ARGUMENT REQUESTED** |

Defendants Hooshang ("Harry") Harooni and AV Inn Associates 1, LLC and Crossclaimant Hooshang Harooni hereby submit the following Memorandum of Points and Authorities in Support of their Motion for Summary Judgment.

## I. INTRODUCTION AND BRIEF SUMMARY OF RELEVANT FACTS

In February 2004, Best Western induced Mr. Harooni to enter into its franchise agreement[1] even though he had no experience running a hotel by promising him that it

[1] Mr. Harooni also believes that the "membership" agreement is, in fact, a franchise agreement governed by California law. California Code § 20020 states that "Except as otherwise provided by this chapter, no franchisor may terminate a franchise prior to the expiration of its term, except for good cause. Good cause

SCLF The Schlesinger Conrad Law Firm

would provide ample services to make his hotel a success. *See, e.g., Separate Statement of Facts ("SSOF"),*¶¶ 5, 13, 14, 15, and 26. The hotel was failing and on probation when Mr. Harooni took it over. *SSOF,* ¶ 16. The membership cost Mr. Harooni in excess of $50,000, plus all the money that he put into the hotel for renovations and upgrades. *SSOF.* ¶ 18.

The contract was signed in California and pertained to a California hotel. Under either California or Arizona law, the legislature has mandated that a franchise or membership agreement may only be terminated for "good cause" and in a manner that is fair under the circumstances. *See California Franchise Act, § 20010; Arizona Revised Statute, § 10-3621.* Under Arizona law, a membership agreement mandates that a franchise may only be terminated if such termination is "fair" under all of the circumstances. *See* A.R.S. § § 10-3621. Regardless of which law controls, if a franchise can be cancelled on the basis of an inspector's subjective opinion, the franchisor exercises nearly unfettered control in terminating the agreement. When the franchisor exercises such control subjectively and with no ability for the franchisee to guard against termination, termination is not for good cause. It is most assuredly not fair.

In this case, the Best Western documents, including the Membership Agreement, Bylaws and Rules and Regulations ("Rules") demonstrate that a member will have certain rights, including the right to be assessed by criteria that appear in the documents. The Rules set forth a number of criteria that appear, at first blush, to be specific such that a member can know whether or not he has complied with the requirements. *SSOF, e.g.,* ¶ 8. The Bylaws also state that the member has a right to a conditional membership in lieu of cancellation in the event that Best Western finds that any of the standards that it sets have not been met. *SSOF,* ¶ 11.

---

shall include, but not be limited to, the failure of the franchisee to comply with any lawful requirement of the franchise agreement after being given notice thereof and a reasonable opportunity, which in no event need be more than 30 days, to cure the failure." *Id.* (emphasis added). California Franchise Relations Act, § 20040.5 states that any "provision in a franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state." *Id.*

SC LF The Schlesinger Conrad Law Firm

During the time that Mr. Harooni had the hotel, AAA upgraded the property from a 2-Star to a 3-Star hotel. *SSOF,* ¶ 21. During that same period, Best Western conducted several inspections of the hotel, or what they call "Quality Assurance Assessments." Those inspections went well for Mr. Harooni until the time that he decided to put the property on the market. *SSOF,* ¶ 40, *et seq*. After that, Best Western began making even more demands and using the "Quality Assurance Assessments" to ultimately deprive him of his membership and hotel. *SSOF,* ¶ 41 - 55; 67, 68.

Best Western does not hesitate to admit that the "Quality Assessments" performed by its personnel are completely subjective. *SSOF,* ¶ 48. Those assessments ultimately led to Best Western wrongfully terminating Harry Harooni's membership in the hotel chain. *SSOF*, ¶¶ 58 and 67. The regional service managers's ("RSM")determinations of what is, or is not, a deficiency at a hotel property is relied upon by the Best Western Board of Directors in ruling to terminate an owner's membership. *SSOF,* ¶ 64. Thus, continued membership in Best Western is contingent upon the subjective impressions of an individual inspector or RSM.

Under these circumstances, any termination based upon an alleged failure to meet "quality assurance standards," as reflected in the Quality Assurance Assessments conducted by RSM inspectors cannot constitute cause for termination. Therefore, termination by Best Western was breach of contract. Moreover, because Best Western only enforced its arbitrary and subjective standards against Mr. Harooni after it learned that he hoped to sell the property, and ultimately terminated his membership after finding out he had Parkinson's disease, Best Western's conduct was in bad faith.

Thus, not only are the amounts claimed by Best Western not due where Best Western wrongfully terminated the membership, Best Western is liable to Mr. Harooni for its breach of the covenant of good faith and fair dealing.



The Schlesinger Conrad Law Firm

## II. ARGUMENT

### A. The Standard for Summary Judgment Applicable to this Question of Law Favors Mr. Harooni

Summary judgment may be granted if the movant shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2509 - 2510 (1986). Where, as here, the record clearly shows that the Plaintiff/Counterdefendant acted without just cause and contrary to the member franchise agreement, the bad faith is properly demonstrated through the "pleadings and depositions . . . together with the affidavits, if any," that "demonstrate the absence of a genuine issue of material fact," summary judgment should enter in favor of the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986) (internal quotations omitted). Further, in this case Best Western cannot demonstrate "a dispute 'over facts that might affect the outcome of the suit under the governing law' to preclude entry of summary judgment." *Anderson, supra,* at 248, 2510. Therefore, and as will be demonstrated, judgment is proper in favor of Mr. Harooni as a matter of law.

### B. Best Western's Termination of the Agreement was Contrary to Law

While the choice of law provision in the agreement and the nature of Best Western's contract remain disputed by Mr. Harooni, one thing is clear: Whatever Best Western calls itself, and under any jurisdictional structure, Best Western could not terminate the agreement without just cause. Assuming, for the sake of this motion only,

that Arizona's law regarding "non-profit" corporations applies, the termination of Mr. Harooni was unlawful. Arizona Revised Statutes, Chapter 10, governs memberships in non-profit corporations. That chapter, at § 10-3621, states:

> § 10-3621. Termination, expulsion and suspension
>
> A. No member of a corporation may be expelled or suspended, and no membership or memberships in such a corporation may be terminated or suspended, except pursuant to a procedure that is set forth in the articles of incorporation, bylaws or an agreement between the member and the corporation or a procedure that is otherwise appropriate.
>
> B. For purposes of subsection A, a procedure is otherwise appropriate if either:
>
> 1. The following are provided:
>
> (a) A written notice at least fifteen days before the expulsion, suspension or termination and the reasons therefor.
>
> (b) An opportunity for the member to be heard, orally or in writing, at least five days before the effective date of the expulsion, suspension or termination by a person or persons authorized to decide that the proposed expulsion, termination or suspension should not take place.
>
> 2. <u>It is fair and reasonable taking into consideration all of the relevant facts and circumstances</u>. A.R.S. § 10-3621.

This section requires that any termination must be "fair and reasonable." *Id.* Those provisions are incorporated by law into the membership agreement between Mr. Harooni and Best Western. *See, e.g., Maykuth v. Adolph Coors Co.*, 820 F.2d 303, 307 (9th Cir. 1987). In this case, the termination was anything but "fair and reasonable."

**1. <u>Best Western Failed to Provide Mr. Harooni with a Conditional Extension of the Membership</u>**

Best Western breeched its contractual agreement with Mr. Harooni because it failed to provide him an opportunity to cure the alleged deficiencies at the property in violation of the Bylaws. The contract terms clearly state that termination may only occur after a hearing <u>and</u> after issuance of a conditional extension of the membership.

SC LF The Schlesinger Conrad Law Firm

Where contractual terms are clear and unambiguous, they must be enforced as they are written. “A general principle of contract law is that when parties bind themselves by a lawful contract, the terms of which are clear and unambiguous, a court must give effect to the contract as written.” *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, 218 P.3d 1045, 1050 (Ariz.App. 2009). It is a basic truth of the English language that where a contract provision uses the conjunctive form of "and" both terms must be applied.

Here, Article II, Section 7, A(7) of the Bylaws states that a membership will cancel only if a member has failed to meet the requirements of Best Western and a conditional extension has previously issued in lieu of cancellation:

> (7) A term or condition is not met, after the Board, having provided a Member with an opportunity for a hearing, has found grounds exist for cancellation of the Membership and the Member has been granted a conditional extension in lieu of cancellation. *See SSOF*, ¶ 11.

The plain meaning of this contract provision is that Best Western must have grounds for termination *and* a conditional membership has previously been granted. That did not occur in this case. There was no conditional membership ever granted to Mr. Harooni. Further, and as will be demonstrated, Best Western did not have legitimate grounds to terminate Mr. Harooni's membership. Accordingly, the termination was in breach of contract.

### 2. There were No *Bona Fide* Grounds to Terminate the Membership

Best Western breached the specific terms of the contract by failing to adhere to reasonable standards as set forth in the Membership Agreement and related Bylaws and Regulations. Where a contracting party enforces contract terms that are onerous and beyond the scope of the contemplation of the parties, grounds for termination cannot lie. *See, e.g., Bronx Auto Mall v. American Honda Motor Co., 934 F. Supp. 596, 610 (D.N.Y. 1996).*

There is a paucity of franchise case law in Arizona pertaining to the type of situation before the court. However, the case of *Bronx Auto Mall, supra*, is instructive. In

The Schlesinger Conrad Law Firm SCLF

that case, the franchisor insisted that the dealership upgrade its parts and other departments. At trial, some of the photographs showed some arguably "undesirable conditions" at the dealership. The franchisor sought to force the dealer to change this through a contract addendum. *Id.* However, the franchisor could not demonstrate the reasonableness of these required changes. *Bronx Auto Mall, supra*, 934 F. Supp. at 609 (D.N.Y. 1996). Accordingly, the court found in favor of the dealership, and further found that the franchisor breached a statutory prevision that is analogous to the one here. Cf. NY CLS Veh & Tr § 463 (making it illegal to condition renewal of the franchise on rennovations without a showing of necessity in the marketplace and further prohibiting termination without just cause); A.R.S. § 10-3621 (prohibiting termination that is unfair or unreasonable).

Here, Best Western's practice of terminating franchise agreements without valid cause is a violation of law and public policy. Best Western cannot show that the alleged deficiencies at the hotel were objectively reasonable, or even existed. *See, e.g., SSOF,* ¶ 18, 21 and 55. Indeed, Best Western's own representative, Mitch Van Wormer, agreed that a termination based upon purely subjective criteria would be "unfair." *SSOF,* ¶ 48. Further, Mr. Nygaard, the "person most knowledgeable" for Best Western regarding inspections, stated that all areas except Brand Standards are "subjective." *Id.* In other words, the inspections place "excessive emphasis on [the RSM's] own moods, attitudes, opinions, etc., unduly egocentric," and "relating to properties or specific conditions of the mind as distinguished from general or universal experience."[2] Where a process is subjective, it is unduly dependent upon an individual's whims and idiosyncrasies. *See, e.g., Boddie v. Connecticut,* 401 U.S. 371, 385, 91 S.Ct. 780, 790 (1971) (Douglas, J., concurring) (commenting that process must be regulated so as not to be subjective). Thus, Best Western's process for inspections, based as it is on the subjective impressions of the regional service managers, is not "fair and reasonable." Adding to the conclusion that the

---

[2] *Dictionary.com. Dictionary.com Unabridged. Random House, Inc. http://dictionary.reference.com/browse/subjective (accessed: February 26, 2010).*

The Schlesinger Conrad Law Firm

SC LF The Schlesinger Conrad Law Firm

inspections were pretextural is the fact that AAA increased its rating of the hotel. This is is in stark contrast to the alleged determination by Best Western that conditions at the hotel had, apparently, deteriorated despite the $2,000,000 invested in upgrades by Mr. Harooni.

**3. <u>Mr. Harooni had a Reasonable Expectation that Best Western Would Not Terminate his Agreement Based Upon the Subjective Determinations of the Inspectors</u>**

Best Western's failure to use reasonable and objective assessment standards is contrary to the reasonable expectations of its member/owners. The Arizona Supreme Court explained the doctrine of reasonable expectations in *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co*., 140 Ariz. 383, 682 P.2d 388 (1984). The *Darner* court adopted the Restatement (Second) of Contract as a formulation of the doctrine as it relates to standardized contracts:

> (1) Except as stated in Subsection (3), where a party to an agreement signs or otherwise manifests assent to a writing and has reason to believe that like writings are regularly used to embody terms of agreements of the same type, he adopts the writing as an integrated agreement with respect to the terms included in the writing.
>
> (2) Such a writing is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.
>
> (3) Where the other party has reason to believe that the party manifesting such assent would not do so if he knew that the writing contained a particular term, the term is not part of the agreement.

Restatement (Second) of Contracts § 211 (1981) (quoted in *Darner*, 140 Ariz. at 391, 682 P.2d at 396). (finding party estopped from enforcing boilerplate contract as written where it created an impression contrary to the contract and adverse party had a reasonable expectation of other terms). Further, even if the contract terms were ambiguous - which they are not - the reasonable expectations engendered by Ms. Wininger and Best Western's promises and inducements would override such terms. *See, e.g. Services Holding Co., Inc. v. Transamerica Occidental Life Ins. Co.,* 180 Ariz. 198, 206, 883 P.2d 435, 443 (App. 1994). The elements required to apply the doctrine are all met here.

First, Best Western had a far superior bargaining position compared to Mr. Harooni. *Id.* at 399, 404; *See also* 35 AM. BUS. L.J. 559, 645 (citing, *inter alia,* Robert W. Emerson, *Franchise Contract Clauses and the Franchisor's Duty of Care Toward Its Franchisees,* 72 N.C. L. Rev. 905, 964 (1994) (stating, "a franchise relationship is much more than a written agreement").

Second, the terms of the contract were sufficient to lead Mr. Harooni to believe that objective criteria would be used such that he could reasonably calculate what needed to be done to continue his membership. Specifically, the agreement set forth very specific items that would be required within the hotel. *SSOF, e.g.*, ¶ 8. Moreover, the agreement stated clearly that members would be provided with a conditional extension prior to having their memberships terminated. *SSOF,* ¶ 5, *supra (conditional membership in lieu of termination).*

Finally, but critically, Ms. Wininger represented on behalf of Best Western that Best Western was there to help the members. She stated that there would be revenue managers, marketing and design help. She specifically stated that Best Western would supply the assistance that Mr. Harooni needed to overcome his inexperience in the hotel industry. These were specific, concrete promises that reasonably led Mr. Harooni to believe that the membership would be continued and he would have assistance. *See, e.g., SSOF* ¶¶ 5, 10, 13, 14, 15, 25, 26, 30 and 31.

Putting these elements together with the specific contract provisions that stated that a member was entitled to a conditional membership in lieu of termination prior to a membership being canceled, the clear implication was that even if Mr. Harooni erred and failed to meet Best Western requirements, his membership would not be terminated because of scratched thresholds and incorrect logo sizes on telephone face plates. *SSOF,* ¶ 56. In the end, Mr. Harooni could not bargain around the terms of the agreement, but pursuant to Arizona law, it should have been fairly enforced.

SC LF The Schlesinger Conrad Law Firm

### 4. Best Western owed a Fiduciary-like Duty to Mr. Harooni

Where one party to a contract reasonably relies upon the promised special assistance of the other, a fiduciary duty arises. "The essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, since the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 881 (9th Cir. 2007) (citations omitted); *Pension Trust Fund for Operating Engineers v. Federal Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002) (fiduciary relationship where the financial dependence or personal security of damaged party has been entrusted to the other); Among the special relationships in which such tort damages for breach of contract may be available are those undertaken for something more than or other than commercial advantage, such as the procurement of service, professional help, security, or other intangibles. *Burkons v. Ticor Title Ins. Co. of California*, 168 Ariz. 345, 355, 813 P.2d 710, 720 (1991).

Here, Mr. Harooni specifically told Best Western that he lacked experience, the promises to assist Mr. Harooni, together with the purported "non-profit membership" nature of the agreement, created a special relationship. That special relationship imputed to Best Western fiduciary-like duties. Arizona courts have held that a fiduciary duty exists when there is a "great intimacy, disclosure of secrets, intrusting of power, and superiority of position in the case of the representative," and that "to establish a fiduciary (confidential) relationship there must be something approximating business agency, professional relationship, or family tie." *SEC v. Rauscher Pierce Refsnes, Inc.*, 17 F. Supp. 2d 985, 992 (D. Ariz. 1998) (citing *Rhoads v. Harvey Publications, Inc.*, 145 Ariz. 142, 700 P.2d 840, 847 (Ariz. Ct. App. 1984)). A confidential relationship can exist between a client and his or her financial adviser when there is an imbalance of knowledge so that the client relies heavily on the adviser for advice. *Id.* (citing *Stewart v. Phoenix Nat'l Bank*, 49 Ariz. 34, 64 P.2d 101, 106 (Ariz. 1937) (holding that a confidential relationship existed when the bank had acted as the plaintiff's financial adviser for many

years and he relied upon the bank's advice)). Generally, whether a fiduciary duty exists is a question of fact. *Id.* However, in this case, the "membership" and "non-profit" aspects asserted by Best Western, and the undisputed fact that Mr. Harooni told Ms. Wininger (and thus, Best Western) that he was not knowledgeable about hotels, is sufficient to find a fiduciary relationship as a matter of law. This is particularly true because it is equally undisputed that Best Western promoted its services, including marketing and revenue managers, to Mr. Harooni in order to induce his agreement to the contract. *See SSOF, e.g.,* ¶ 15, 25; *see also* Robert W. Emerson, FRANCHISE CONTRACT CLAUSES AND THE FRANCHISOR'S DUTY OF CARE TOWARD ITS FRANCHISEES, 72 N.C. L. Rev. 905, 964 (1994) (stating, "a franchise relationship is much more than a written agreement"). Mr. Harooni had a right to rely on Best Western's promises and assurances. Emerson, *supra* note 24, at 967 (noting that a 1993 survey of 100 current franchise agreements shows that 100% provide for franchisor training of the franchisee, albeit often at the expense of the franchisee). The fact that franchisors normally train the franchisee in the proper running of the franchise is echoed by Arizona's landmark case, *Darner Motor Sales, Inc*., supra:

> We are a nation which also prides itself on a tradition of allowing a person to rely upon the words of another who, because of special knowledge, undertakes to act as an advisor. If an agent has an economic self-interest in imparting information, sound policy does require that the agent's duty to speak without negligence be reinforced by basic tort principles inherent in the common law. *See Restatement (Second) of Torts*, § 552 (1977). *Darner Motor Sales, Inc.* 140 Ariz. at 398, 682 P.2d at 403.

Thus, under the circumstances here, Best Western breached its duties and contractual obligations to Mr. Harooni. It cannot now claim that Mr. Harooni breached the contract.

**5. Allowing Best Western to Prevail Would Cause a Forfeiture that is Disfavored under the Law**

It is well-established that equity abhors a forfeiture. But the law does not favor forfeitures and if a party would avail himself of a contractual provision providing for such a forfeiture, he must comply strictly with all the requirements of the contract. *Glad*

SC LF The Schlesinger Conrad Law Firm

*Tidings Church of America v. Hinkley*, 71 Ariz. 306, 311, 226 P.2d 1016, 1020 (Ariz.1951); see also *Nash v. Craigco., Inc*., Utah, 585 P.2d 775, 780 (1978). "When the forfeiture would be so grossly excessive as to be entirely disproportionate to any possible loss that might have been contemplated, so that to enforce it would shock the conscience, a court of equity will refuse to enforce the provision." *Call v. Timber Lakes Corp*., Utah, 567 P.2d 1108, 1109 (1977). Indeed, enforcing the terms of the contract as urged by Best Western would be unconscionable and contravene public policy. *Consumers Int'l v. Sysco Corp*., 191 Ariz. 32, 34 (Ariz. Ct. App. 1997) (citing *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 710 P.2d 1025 (1985)).

Here, Best Western revoked Mr. Harooni's membership despite the fact that Mr. Harooni had worked tirelessly and invested more than $2 million in renovating the hotel property. The membership agreement purported to give Mr. Harooni a "second chance" in lieu of forfeiture of his membership. In equity, Mr. Harooni should not now be forced to pay Best Western for the privilege of having his membership terminated contrary to the contractual provisions.

**6. Breach by Best Western is Bad Faith**

Every contract contains an implied covenant of fair dealing such that neither party is entitled to destroy the other party's right to the fruits of the contract. *See, e.g., Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (Ariz.,1986) (citing *Wagenseller supra*, 147 Ariz. at 383, 710 P.2d at 1038; *see also* RESTATEMENT (SECOND) OF CONTRACTS § 205 (1981); 5 WILLISTON ON CONTRACTS § 670 at 159 (3rd ed., Jaeger ed. 1961)). A failure to inquire as to someone's knowledge regarding property can constitute bad faith certain circumstances. *Stewart v. Thornton*, 116 Ariz. 107, 110, 568 P.2d 414, 417 (Ariz. 1977) (citations omitted). "Where one party exercises discretion retained or unforeclosed under a contract in such a way as to deny the other a reasonably expected benefit of the bargain," bad faith exists. *Southwest Sav. and Loan Ass'n v. SunAmp Systems, Inc.*, 172 Ariz. 553, 558, 838 P.2d 1314, 1319 (1992); *see also* RESTATEMENT (SECOND) OF CONTRACTS, § 205 cmt. a (1981) .

SC LF The Schlesinger Conrad Law Firm

The Schlesinger Conrad Law Firm

Bad faith in this case will be found because Best Western misused the inspection process and failed to provide the services it had promised and that Mr. Harooni reasonably relied upon. As an initial matter, an agreement may not be terminated without cause, particularly where the agreement specifically sets forth criteria for termination. *See, e.g., In re Vylene Enterprises, Inc*. 90 F.3d 1472 (9th Cir. 1996) (franchisor breached its contract with debtor by failing to negotiate in good faith for extension or renewal of franchise agreement); *see also* 15 U.S.C.A. § 45 (The franchisor must establish the existence of a sufficient business justification for its actions). "[S]pecifically, [the franchisor] must demonstrate the existence of a well founded objective ground for the termination based upon compelling business reasons." *American Mart Corp. v. Joseph E. Seagram & Sons, Inc.* 824 F.2d 733, 734 (9th Cir. 1987).

Where an agreement is based upon unequal bargaining powers of the parties and does not contain an explicit provision allowing termination without cause, termination of such an agreement without an objective reason for doing so is wrongful. *See, e.g., Consumers Intern., Inc. v. Sysco Corp.* 191 Ariz. 32, 35, 951 P.2d 897, 900 (App. 1997); *See also, e.g.,* A.R.S. § 44-1554 (prohibiting the termination of petroleum franchises without good cause).

In *Consumers Intern., Inc. v. Sysco Corp*. 191 Ariz. 32, 36, 951 P.2d 897, 901 (App. Div. 1,1997), the Arizona Court of Appeals noted that a franchisee had a reasonable expectation that the franchise relationship would continue where the franchise agreement contained an express "no-cause" termination clause. *Id.* Specifically, the court found that:

> Where there is no explicit termination clause ..., a franchisee indeed has a reasonable expectation that the relationship will not be terminated arbitrarily without cause.

Here, not only did the agreement provide criteria that appeared to be specific and objective, the applicable statute modified the termination provisions of the agreement and the statute's "fair and reasonable" requirement supersedes that arrangement. A "good-

SC LF The Schlesinger Conrad Law Firm

cause" requirement is, therefore, imposed on Best Western's decision. *See* A.R.S. § 10-3621; AMJUR PRIVATEFRC § 345.

Best Western's failure to disclose the known limitations on promised assistance further supports Mr. Harooni's claim of bad faith. Franchise disclosure documents that fail to provide material information demonstrate that the franchisor acts in bad faith. For example, where a franchisor failed to disclose the names and business experiences of current directors and officers, failed to disclose names, addresses and phone numbers of other business ventures, and failed to include or provide a reasonable basis for earnings claims made to prospective purchasers, the franchisor can be found in violation of the Federal Anti-Trust laws. *See, e.g., F.T.C. v. Transnet Wireless Corp.*, 506 F.Supp.2d 1247 (S.D.Fla.2007); *see also F.T.C. v. Medical Billers Network, Inc.*, 543 F.Supp.2d 283 (S.D.N.Y.2008) (finding failure to disclose fees a violation of federal antitrust laws). In failing to disclose that the services it promised, and which were outlined in the Rules and Bylaws, were not actually available, Best Western has "impair[ed] the right of [Mr. Harooni] to receive the benefits which flow from" the contract. *See Rawlings, supra* 726 P.2d at 569.

The Best Western agreement purported to set forth objective criteria for any termination. In reality, Best Western acted capriciously and with the intent and purpose of terminating Mr. Harooni's membership. Under these circumstances, and in light of the evidence set forth in the Separate Statement of Facts, it is clear that Best Western acted in bad faith by applying subjective, arbitrary inspection requirements. Moreover, by failing to provide the conditional extension and only terminating the membership when they found out Mr. Harooni needed to downsize or sell due to his Parkinson's disease, Best Western breached its duties of good faith and fair dealing. At a minimum, Best Western's bad faith conduct acted to terminate Mr. Harooni's obligations to it.

"[A] breach of contract is a failure, without legal excuse, to perform any promise which forms the whole or part of a contract." *Snow v. Western Sav. & Loan Ass'n* 152 Ariz. 27, 32, 730 P.2d 204, 210 (Ariz.,1986) (citing 11 S. WILLISTON, WILLISTON ON

SCLF The Schlesinger Conrad Law Firm

CONTRACTS § 1290, at 2 (3d ed. 1968)). A breach of contract giving rise to a claim for damages and also excusing the necessity for the non-breaching party to tender performance. *See Restatement (Second) of Contracts* § 277 (1981); 4 *Corbin on Contracts* § 977 (1951). A repudiating party is not entitled to demand performance from the innocent party or use the latter's failure to tender as a defense to the claimant. *United California Bank v. Prudential Ins. Co. of America*, 140 Ariz. 238, 283-284, 681 P.2d 390, 435 - 436 (App.,1983).

Here, while Mr. Harooni was willing and able to meet all reasonable criteria for hotel standards, it became clear that nothing he could do would be sufficient to meet the subjective whim of the Best Western. *See Woliansky v. Miller,* 135 Ariz. 444, 661 P.2d 1145 (App.1983); *See also SSOF,* ¶ 38. Best Western failed to use reasonable standards for hotel evaluation, failed to provide promised services to assist Mr. Harooni, and terminated the membership without just cause. This is bad faith, particularly for a "non-profit membership" that purports to act only in the interests of its members. Accordingly, judgment should enter for Mr. Harooni on his bad faith claim.

## III. <u>CONCLUSION</u>

Best Western made promises to Mr. Harooni. Mr. Harooni believed in those promises, and in the chance that BestWestern presented. There can be no denying the fact that the assessments by Best Western's regional service managers were arbitrary and subjective. Best Western saw an opportunity to terminate Mr. Harooni's membership before he sold or downsized, causing a loss of revenue to Best Western. Ignoring Mr. Harooni's substantial investment and all of his hard work, they began to systematically destroy him and his hotel. Best Western never intended to provide the support and services it promised, and it drafted a one-sided contract to let it terminate the members at will. Indeed, 80% of the members are terminated under the spurious "quality assurance provisions." *SSOF,* ¶ 63. Best Western's bad faith and failure to provide the support that Mr. Harooni reasonable believed was offered is bad faith. Under these circumstances,



there can be no question that Mr. Harooni did not breach the contract. Judgment should enter in favor of Mr. Harooni on all causes of action.

Respectfully submitted,

Dated: March 19, 2010 **THE SCHLESINGER CONRAD LAW FIRM**

By: ________________________________

Kira A. Schlesinger
Attorney for Defendant/Counterclaimant *Hooshang Harooni* and Defendant *AV Inn Associates I, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of March 2010, I caused to be transmitted by the CM/ECF e-file system a true and correct copy of the foregoing **Motion for Summary Judgment** to counsel registered as filers on that system. To the best of my knowledge, no additional parties require notification.

By ____/s/ Kira Schlesinger _________