# EXHIBIT "2"

**Declaration of Hooshang Harooni**

Kira A. Schlesinger (State Bar No. 023450)
**THE SCHLESINGER CONRAD LAW FIRM**
11811 N. Tatum Blvd., Ste. 3037
Phoenix, Arizona 85028
Tel: 602-615-6013
Fax: 602-441-5302
E-Mail: Kira@SchlesingerConrad.com

*Attorney for Defendant/Counterclaimant*
*Hooshang Harooni, and*
*Defendant AV Inn Associates 1, LLC*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BEST WESTERN INTERNATIONAL, INC. | No. CV 08 - 2274 - PHX-DGC |
| Plaintiff, | DECLARATION OF HOOSHANG HAROONI IN SUPPORT OF DEFENDANTS/COUNTERCLAIMANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| HOOSHANG HAROONI AND AV INN ASSOCIATES 1, LLC, | |
| Defendants. | |
| And Related Counterclaim | |

I, Hooshang ("Harry") Harooni, declare as follows:

1.     I am the defendant in the above-captioned action, and have personal knowledge of the following facts and would testify competently thereto if called as a witness.

2.   -  I purchased the hotel in Lancaster, California that is the subject matter of this litigation. I personally contributed all funding for the enterprise.

3.     I was very enthusiastic about the hotel, and viewed it as an opportunity to make money for me and Best Western.

4.     I created AV Inn Associates 1, LLC and AV Operations Group, Inc.  Both enterprises were funded, supported and managed by me, and the accounting records were not kept separately.

5.     At some point after I purchased the hotel, the reservation system required by Best Western failed.  It reflected that there was no capacity at the hotel, even though all rooms were not sold out.  I worked very hard to determine the cause of the problem, and repeatedly notified Best Western, but no resolution was ever reached.  Specifically, I am informed and believe that Best Western speculated that the reservation system was closed out by someone (or some system) with the code "MW", but no one at the hotel had those initials.  I was never informed that Best Western had resolved the problem.

6.     At all times relevant, I was led by Terry Wininger and Best Western that they would assist me with marketing the hotel, and in particular doing the paperwork to place requests with corporate accounts.  No one ever informed me that such contracts needed to be renegotiated.  It was only later that I found out that Best Western did not assist with this.  By that time, my hotel had missed the deadlines for many corporate accounts and, as a result, we lost a great deal of revenue.

7.     Specifically, Ms. Wininger promised me that Best Western would provide a revenue manager, design guidance, marketing services and more so that I could feel comfortable going into the hotel business even though I told her that I had no experience in hotels, and my proposed partners had backed out.  But for this expectation of support created by Ms. Wininger and Best Western, I would not have begun this venture.

8.     I spent approximately $2 million on renovations to the hotel. Notwithstanding the huge capital inputs that I personally made to the hotel, Best Western began finding all sorts of additional things that it insisted needed to be done.  I would no sooner get one item on their list resolved, when they would come up with another requirement.

9.    Finally, due to all of the problems with Best Western and the complications it was causing him related to his Parkinson's Disease, I decided he had to sell the property.

10.   In April 2007, I placed the hotel on the market.

11.   At the time that I put the property on the market, the hotel membership was in good standing.

12.   No one at Best Western informed me prior to buying the hotel that nearly 80% of the hotels with memberships that are terminated are because of the "Quality Assurance Assessments" performed by Best Western regional service managers.

13.   I was never granted a conditional extension due to allegedly failing scores for quality assessments, or any other reason.

I declare under penalty of perjury under the laws of the State of Arizona that the foregoing is true and correct and that this declaration was executed in Los Angeles, California on March 19, 2010.

Hooshang "Harry" Harooni

# EXHIBIT "3"

**Bylaws (2006), Article III, Related Articles of Incorporation**



11/07

*bylaws & articles*







BW1228

Best Western International, Inc.
6201 N. 24th Parkway
Phoenix, Arizona 85016-2023

Bylaws and Articles

June 2006

BW1229

## MEMBERS' BILL OF RIGHTS

### EACH MEMBER OF BEST WESTERN SHALL HAVE THE FOLLOWING RIGHTS:

1. The right to receive an agenda of the annual and regular Board of Directors' meetings prior to each meeting, and to attend such Board meetings and to address the Board at such meetings.

2. The right to receive complete minutes of meetings of the Board of Directors, a detailed annual budget and detailed annual financial statements.

3. The right to set one's own property room rates and the right to vote on implementation of any programs providing for room rate discounts in excess of ten percent (10%) from a member's published rates.

4. The right to vote on any amendment of or additions to the Bylaws of Best Western.

5. The right to vote on any change in Best Western's Rules and Regulations, as defined in these Bylaws.

6. The right to vote on increases in member dues, fees or assessments in excess of the lesser of (a) five percent (5%), and (b) the rate of inflation for the previous year.

7. The right to receive notice of a minimum of 24 hours before any property inspection.

8. The right to request an impact analysis (including an independent analysis of market effect) prior to the approval of a new membership.

9. The right to transfer one's membership to a purchaser of a property in accordance with Article II, Section 7 of the Bylaws.

10. The right to have impartial, standardized and non-discriminatory inspection procedures applied to each member property.

11. The right to continue membership in Best Western except where termination or cancellation is provided for pursuant to the fair application of established Bylaws and Rules and Regulations, which shall provide that cancellation may not occur until after a hearing before the Board of Directors, if requested by the member.

12. The right to receive all member services until membership is cancelled or terminated, except in the following cases, membership services may be restricted; (i) when grounds for cancellation are found by the Board of Directors to exist, after opportunity for a hearing has been provided, and the Board has granted a conditional extension in lieu of cancellation of membership, (ii) when the member scores less than 600 points for guest rooms and public areas, and (iii) when a member's fees, dues or any other account are not paid within the time set by Board policy.

BW1230

# Best Western International, Inc. Bylaws

## ARTICLE I
### Definitions

The following words and terms shall, as used in these Bylaws, have the following meaning except where a different meaning is clearly indicated by context:

**"Advisory Committees"** has the meaning set forth in Article VI, Section 10 of these Bylaws.

**"Affected Qualified Hotel"** has the meaning set forth in Article II, Section 3(B)(3) of these Bylaws.

**"Annual Dues"** means the dues established by the Board pursuant to Article II, Section 6(B) of these Bylaws.

**"Annual Meeting"** means the annual meeting of the Members.

**"Applicant"** means any person or entity who is seeking new Membership, including a person seeking to renew a Membership that was previously cancelled or terminated.

**"Articles of Incorporation"** means the articles of incorporation of the Corporation as the same may be amended or restated from time to time.

**"Best Western Property"** means the Property designated in a Best Western Membership.

**"Board"** means the Board of Directors of the Corporation.

**"Bylaws"** means these bylaws, as the same may be amended or restated from time to time.

**"Chairperson"** has the meaning set forth in Article V, Section 2(A) of these Bylaws.

**"Condominium Property"** means a Property comprised of prospective rental units (including time shares) owned separately by individual persons or entities, who may also own an undivided interest in common areas or common elements.

**"Corporation"** means Best Western International, Inc., an Arizona nonprofit corporation.

**"Designated Accountant"** means the certified public accountant(s) designated by the Board from time to time to receive and supervise the counting of votes cast by Members pursuant to Article III, Section 5 and Article IV, Section 4 of these Bylaws.

**"Director"** means a duly elected member of the Board.

**"District"** means one of the geographic areas created pursuant to Article IV, Section 2 of these Bylaws.

**"District Meeting"** means a meeting called by the Board pursuant to Article III, Section 3 of these Bylaws.

**"Entrance Fees"** means the fees established by the Board pursuant to Article II, Section 6(A) of these Bylaws. Entrance Fees may be comprised of evaluation fees, affiliation fees and any other fees determined by the Board from time to time.

**"Governor"** means a person appointed by a Director to act as a liaison for the Director in the Director's District.

**"Majority of the Board"** means more than half of the total number of Directors authorized by Article IV, Section 1 of these Bylaws.

**"Member"** means a member of the Corporation admitted pursuant to Article II of these Bylaws whose Membership has not been cancelled or terminated.

**"Member with Conditions"** means a new Member whose Property has been activated on the Corporation's reservation system subject to satisfying mutually agreed conditions after activation on the reservation system. Also, this means a Member whose Membership has been continued, rather than terminated after a hearing by the Board, subject to satisfying mutually agreed conditions. Members with Conditions are subject to termination without the right to a hearing or probation if they fail to complete the conditions as mutually agreed.

**"Membership"** means Members collectively or the Corporation or the state of being a Member of the Corporation.

**"Membership Application"** means the membership application and agreement in the form approved by the Board and submitted by an Applicant pursuant to Article II of these Bylaws.

**"Member Market Area"** has the meaning set forth in Article II, Section 3(B)(2) of these Bylaws.

**"Monthly Fees"** means the fees established by the Board pursuant to Article II, Section 6(C) of these Bylaws.

**"Nonprofit Act"** means the Arizona Nonprofit Corporation Act, as amended, or any successor statutes.

**"Officer"** means an officer of the Board or of the Corporation, as applicable, as described in Article V of these Bylaws.

**"Property"** means an establishment or building used, to be used, or under construction for use for accommodation of the traveling public, and shall include a "hotel," "motor hotel," "motel," "motor inn" or "resort."

**"Qualified Hotel"** has the meaning set forth in Article II, Section 3(B)(1) of these Bylaws.

**"Regular Annual Meeting of the Board"** means the regular meeting of the Board held pursuant to Article IV, Section 6(B) of these Bylaws.

**"Regulatory Documents"** means the Articles of Incorporation, these Bylaws, and the Rules and Regulations; and the Membership Application, guidelines, standards, resolutions and policies adopted by the Board from time to time (including brand identity, quality assurance, customer care, new construction, refurbishment and design manuals and policies); and documents defining terms or rights of Membership; as any of them may be amended from time to time.

**"Rules and Regulations"** means the code of rules which defines certain rights and obligations of the Members and is contained in the most current document entitled "Rules and Regulations," which document may only be adopted, amended or repealed by the Members pursuant to Article III, Section 5 of these Bylaws.

**"Transfer Application"** means the form established by the Board from time to time to be used in connection with a request to transfer a Membership to another designated Property pursuant to Article II, Section 4 of these Bylaws.

**"Vice-Chairperson"** has the meaning set forth in Article V, Section 3 of these Bylaws.

**"Voting Member"** means a Member who meets the requirements of Article III, Section 4 of these Bylaws.

1

BW1231

## ARTICLE II

*Membership*

### Section 1. Qualifications

(A) Membership is restricted to natural persons who either own a Property or Properties, are partners in a partnership owning or operating a Property or Properties, are lessees operating a Property or Properties, are officers of corporations owning and/or operating a Property or Properties or are managers designated by the owner or owners of a Property or Properties.

(B) A Membership shall apply to a single Best Western Property. Only one Membership shall be issued with respect to a Property.

(C) Any person may hold multiple Memberships, each such Membership associated with a separate Best Western Property, provided the person has an Interest in each such Best Western Property as set forth in Article II, Section 1(A) of these Bylaws.

(D) Membership is further restricted to those persons whose Properties meet the standards established in the Regulatory Documents and the established customs and practices of the Corporation.

(E) (1) An authorized representative of a Condominium Property may qualify for Membership, subject to meeting such terms and conditions as may be established by the Board.

(2) The Board shall have sole discretion to determine what Condominium Properties may be considered for Membership and shall set criteria and standards for Condominium Properties. The Board shall set policies establishing the terms and scope of the representative's required authorization from the unit owners and the association of owners controlling common areas and elements in a Condominium Property.

(3) The Regulatory Documents are intended to be applicable to Condominium Properties, including their units and common areas. However, the Board may waive compliance by Condominium Properties with any of the provisions of the Regulatory Documents which it determines not to be applicable or feasible.

(4) Condominium Properties may be associated with an existing Best Western Property. Such an association shall be subject to compliance with the provisions of Rule 500.45 of the Rules and Regulations pertaining generally to unit count increases or decreases to a Best Western Property.

(5) In the event an ambiguity or a conflict exists in the application of the provisions of this paragraph (E), the Board shall have the right to resolve the ambiguity or conflict in its sole and exclusive discretion.

### Section 2. Membership

(A) New Memberships

(1) Applications for Membership shall be made on the Membership Application.

(2) Applications for Membership shall be accompanied by payment in full of the appropriate Entrance Fee as established by the Board.

(3) Applicants shall be elected to Membership only upon the favorable vote of five Directors.

(4) The Board may not reduce, waive or defer Entrance Fees, Monthly Fees, Annual Dues or any other fees, dues or assessments for Applicants.

(B) Continuing Memberships

(1) A schedule of Annual Dues, and any amendments or revisions in the Rules and Regulations shall be mailed to each Member on or before the 1st day of September each year.

(2) A Member desiring to continue Membership for an additional year shall make payment in full of the Annual Dues as determined by the Board for the additional year, prior to the 15th day of September of the current Membership year.

(3) The term of Membership for each Member who has complied with the provisions of Article II, Section 2(B)(2) of these Bylaws, shall be continued automatically for an additional year. The continuation of Membership when grounds exist for cancellation shall not be construed as a waiver of power to cancel said Membership at a subsequent time on the same or different grounds. Nor shall the continuation of Membership be construed as a waiver of the power to cancel the Membership should new grounds for cancellation arise during the continued Membership period.

(4) In the event a Member has not complied with the provisions of Article II, Section 2(B)(2) of these Bylaws, the Membership for the additional year shall only be continued upon a vote of a Majority of the Board.

(C) Notification of Applicants: Impact Studies: Certain Approval Procedures

(1) (a) At least 60 days prior to the Board's consideration of a Membership Application, the Board shall give written notice of the application to Members within a 25 mile radius of the Applicant's Property location if the Property will be in a rural area, and within a 10 mile radius of the Applicant's Property location if the Property will be in a metropolitan area. Each Member entitled to notice shall have the right, within 15 days after the mailing of the notice of the Membership Application, to request that an impact analysis be made concerning the effect of the proposed Applicant's operations on the relevant market. The impact study shall be conducted by an independent nationally recognized consulting firm familiar with and knowledgeable about the hospitality business, which shall not be affiliated with, in any respect, the Corporation or any of its Members. The impact study shall analyze the Applicant's prospect for success, the demand for the Applicant's services in the relevant market and the incremental impact on existing Members within the relevant market, and provide such other information as the Board may request it include. For this purpose, incremental impact means the occupancy and revenue losses (expressed as a percentage) projected to result from the operation of the Property covered by a Membership Application as a Best Western Property, less any occupancy and revenue losses projected to result to existing Members in the relevant market from operation of the Property covered by the Membership Application as a non-Best Western Property.

(b) The Board may review and approve or deny the Membership Application any time 30 or more days after notice of the Membership Application is given to all Members entitled to notice if none of those Members request an impact analysis.

2

BW1232

(2) The Board shall not approve any Membership Application for Membership unless it has:

   (a) Reviewed and analyzed any requested impact study; and

   (b) Determined that granting the Membership Application for a Property will not materially impair the ability of existing Members to compete with Properties or other hospitality services operated by non-members in the relevant market.

(3) No Director shall have the right to participate in the consideration of a Membership Application if such Director has, directly or indirectly, a personal interest in the approval or denial of such Membership Application.

(D) The provisions of Article II, Section 2 shall apply to all Best Western Members regardless of sub-brand or product descriptors.

### Section 3. Member Market Area Considerations

(A) A Membership Application for a Property located within the Member Market Area of a Qualified Hotel will not be accepted. An exception to this will apply only if the Voting Member responsible for each Affected Qualified Hotel advises the Board in writing that the Member has no objection to approval of the Membership Application.

(B) Definitions

(1) "Qualified Hotel" means a Best Western Property, which meets all of the following criteria:

   (a) It is not currently and has not been 60 days past due on any of its Membership dues and fees or assessments twice within the last 12 months;

   (b) Its most recent three quality assurance scores, or such lesser number of scores as are available if the Property has not yet received three quality assurance scores, average at least 50 points higher than the passing level as established by the Rules and Regulations; and

   (c) The Member is not past due in meeting any conditions of Membership which, if past due, would constitute grounds for cancellation of Membership.

(2) (a) "Member Market Area" means a circular area around a Qualified Hotel, whose radius is measured from the center of the main entrance of the lobby and is of a length determined from the following chart, based on the Qualified Hotel's property type and applicable mid-sized hotel market category. If a Membership is transferred to another designated Property in accordance with Article II, Section 4 of these Bylaws, the Member Market Area will be determined by the property type of the newly designated Property regardless of the Member Market Area of the previous Best Western Property.

| Property Type | Primary Market | Secondary Market | Tertiary Market |
|---|---|---|---|
| Airport | 1 mile | 2 miles | 4 miles |
| Intown, Downtown, Urban | 0.25 miles | 1.25 miles | 3 miles |
| Highway | 1.5 miles | 3 miles | 5 miles |
| Resort | 1 mile | 2 miles | 4 miles |
| Suburban | 1.5 miles | 2.5 miles | 4 miles |

The radius of a Member Market Area shall be measured by a global positioning system selected by the Board. Market category criteria will be as determined by Smith Travel Research or such other means as selected by the Board, subject to final approval by the Board. The Board, by an affirmative vote of five Directors, may adjust the Member Market Area radius for each market category and Property type based upon an analysis of data from additional impact studies. Such adjustments shall occur not more frequently than every five years.

   (b) The Member Market Area radius may be altered by a Board policy that fairly and equitably accounts for obstacles or barriers (such as mountains, lakes and major airports) that materially affect the travel time or travel distance between a Member and an Applicant and thereby reduce the likelihood that the Applicant's Property will have an incremental impact on the Member's Property. The Board will consult with the Governors or the appropriate Member Advisory Committees before adopting the policy. This provision shall not affect the Member's right to request an impact analysis in accordance with Article II, Section 2(C) of these Bylaws.

(3) "Affected Qualified Hotel" means a Qualified Hotel whose Member Market Area includes the location of a Property covered by a Membership Application.

(C) In addition to fees, dues and assessments provided in Article II, Section 6, the Board, by an affirmative vote of five Directors, shall establish fees to cover costs of administering Article II, Section 3. It is intended that this will be a self-funding program, not subject to the limitations stated in Article II, Section 6.

(D) In the event an ambiguity, conflict or inadequate data exists in the application of the provisions of this section, the Board shall have the right in its sole discretion to resolve the conflict or ambiguity or to select appropriate data.

(E) The provisions of Article II, Section 3 shall apply to all Best Western Members regardless of sub-brand or product descriptors.

### Section 4. Transfer of Membership to Another Designated Property

(A) A Membership may be transferred to another designated Property upon such terms, conditions and requirements as may be established by the Board from time to time.

(B) A request to transfer a Membership shall be initiated by a fully completed Transfer Application.

(C) The following terms, conditions and requirements apply to a Transfer Application:

(1) A Transfer Application may be made for another designated Property only in areas where no Member has a right to request an impact study pursuant to Article II, Section 2(C) of these Bylaws or no such Member entitled to notice requests an impact study upon proper notification.

(2) Only one transfer will be permitted within a 10 year period.

(3) Transfers pursuant to this Article II, Section 4 shall not supersede the automatic termination provisions of Article II, Section 7 of these Bylaws as they may apply to the newly designated Property.

3

(4)  The Property to which the Membership is being transferred must, in the opinion of the Board, provide improved representation for the Corporation in the same relevant market. In evaluating this requirement, the Board in its sole discretion may consider the proposed Property's attributes such as, but not limited to: superior facilities to the existing Member Property, better location, stronger access to demand generators and increased visibility.

(D)  The Board shall establish fees to be paid by Members applying for a transfer pursuant to this Article II, Section 4. Such fees may be changed by the Board from time to time, but cannot be waived. If there is a unit count change, all fees will be assessed on the basis of the unit count at the new Property, according to Board policy on unit count increases and decreases.

(E)  In the event that an ambiguity exists in the application of the provisions of this section, the Board shall have the right to resolve the ambiguity in its sole and exclusive discretion.

## Section 5. Duration of Membership

(A)  Unless otherwise herein provided, Membership shall be for one year commencing on the first day of the fiscal year of the Corporation and ending on the last day of such fiscal year. Membership granted during the course of a fiscal year shall end on the last day of the fiscal year in which issued. All Memberships shall be renewed as provided in Article II, Section 2(B), but shall be subject to cancellation or termination as provided in Article II, Sections 7 and 8 of these Bylaws.

(B)  Any Member may resign from the Corporation at any time but if the Member resigns or is terminated, fees and dues for the remainder of the fiscal year will become immediately due and payable.

## Section 6. Entrance Fees and Dues

(A)  The Board shall establish Entrance Fees to be paid by Applicants. Such Entrance Fees may be changed by the Board from time to time, but cannot be waived.

(B)  The Board shall establish Annual Dues to be paid by Members eligible for continuing Memberships. Annual Dues shall be established by the Board during each fiscal year for the succeeding fiscal year.

(C)  The Board shall establish Monthly Fees designed to cover the cost of providing services to the Members.

(D)  Annual Dues, Monthly Fees and assessments may be increased by the Board no more often than once in each fiscal year. No such annual increase shall exceed the lesser of (1) 5%, or (2) the rate of inflation for the previous year, as measured by the United States Bureau of Labor Statistics Consumer Price Index (all items for all urban areas), unless a majority of all Members vote to approve a greater increase, in accordance with rules and procedures for submitting proposals and voting which are set forth in Article III, Section 5 of these Bylaws.

## Section 7. Cancellation or Termination; Exemptions; Automatic Transfers

(A)  Except as provided in Article II, Section 7(B) of these Bylaws, a Membership shall automatically terminate on the date of the occurrence of any one of the following events:

(1)  The Best Western Property is leased or subleased;

(2)  A lease of the Best Western Property terminates;

(3)  If the Best Western Property is not leased, a change occurs of 50% or more of the equitable ownership of the Best Western Property within a 12-month period;

(4)  A change occurs of 50% or more of the equitable ownership of a leasehold interest within a 12-month period;

(5)  If the Best Western Property is not leased, a change occurs of 50% of the equitable ownership of the entity or entities owning the Best Western Property within a 12-month period;

(6)  A change occurs of 50% or more of the equitable ownership of the entity or entities leasing the Best Western Property within a 12-month period.

(7)  A term or condition is not met, after the Board, having provided the Member with an opportunity for a hearing, has found grounds exist for cancellation of the Membership and the Member has been granted a conditional extension in lieu of cancellation.

(8)  A Member or Member with Conditions fails to maintain and provide proof of insurance coverage as required by the Rules and Regulations.

(9)  A term or condition is not met by a Member whose Membership Application was approved by the Board with specific requirements and time frames for compliance prior to final approval of the Membership and has been advised that failure to meet any of these requirements will be grounds for automatic cancellation.

Except for the events specified in Paragraphs (A)(7), (8) and (9) of this Article II, Section 7, a Member may request an opportunity to be heard by submitting to the Board, in writing, at least 30 days prior to the effective date of the occurrence, the reasons, in specific detail, why the automatic termination provisions are inapplicable and the termination should not occur. The Board in its sole discretion may request the Member appear in person and provide oral testimony. The Board shall have sole discretion to determine whether an event of automatic termination will or has occurred.

For the events specified in Paragraphs (A)(7) and (A)(9) of this Article II, Section 7, the termination shall occur immediately, without notice or an opportunity to be heard. For the event specified in Paragraph (A)(8) of this Article II, Section 7, the termination shall occur automatically, without further notice or an opportunity to be heard unless the proof of insurance has been provided within 15 days after notice.

(B)  The transactions listed below in this Article II, Section 7(B) are exempt from all provisions of these Bylaws which would otherwise limit transfer of Membership if all the conditions of this Section 7(B) are met. The transferee, within 30 days following the effective date of the change in equitable ownership or lessee interest, must complete and sign all forms then required by the Corporation, and pay to the Corporation all unpaid dues, fees, assessments, rentals and charges owed to the Corporation by the transferor which are not then paid by the transferor; and within such 30 days, or under such more liberal schedules as may be set by the Board, bring the Property to a condition which meets all Best Western standards, policies and requirements which would have been applicable to the transferor. The Board may establish reasonable fees to cover the Corporation's reasonable costs of a transfer of Membership. Where a change in equitable ownership or lessee interest

4

BW1234

occurs in connection with one of the following transactions, the transferee's rights and obligations as a Member shall be effective as of the date of the change in equitable ownership or lessee interest provided each of the requirements set forth herein is satisfied within the 30 days or other time set by the Board.

 (1) Bona fide financing transactions not involving changes in actual control, such as mortgages, pledges and sale and leasebacks.

 (2) Changes in the legal form of ownership, without an actual change in control, such as a transfer from individual owners to a corporation where the sole owners of the stock of the corporation are the former individual owners.

 (3) A transfer of equitable ownership or lessee interest (including interests transferred in trust) to a parent, spouse, brother, sister, child, stepchild or grandchild of the transferor.

 (4) A transfer to a bona fide lender secured by the Best Western Property occasioned by a bona fide default, such as a mortgage foreclosure, trustee's sale, transfer in lieu of foreclosure or termination of the lease under a sale and leaseback.

 (5) Changes in stock ownership of a corporation whose stock is publicly traded.

 (6) Issuance of new stock in a corporation or new limited partnership interest in a limited partnership occurring prior to commencement of operation as a Best Western Property.

(C) The transactions described below in this Article II, Section 7(C) are exempt from all provisions of these Bylaws which would otherwise limit transfer of Membership:

Any change in ownership where at the time of change (a) the Member has had a passing Property inspection score for the past two regular inspections, or such greater score as approved by the vote of all Members pursuant to Article III of these Bylaws; (b) the Member has provided the Corporation with documentation satisfactory to the Corporation that, prior to the change in ownership, the Member provided the transferee copies of the then current design report and the last three Property inspection reports for the Best Western Property (or the last two if there have only been two inspections), and the transferee certified in writing that such reports were received; (c) the Best Western Property is in compliance with the current design program pursuant to Rule 500.21 of the Rules and Regulations; (d) the Member, who may be a Member with Conditions, is not past due in meeting any conditions of Membership, which, if past due, would constitute grounds for cancellation of Membership; and (e) the transferor is current with respect to all dues, fees and assessments, then in such instance, all requirements, including completion time frames, then applicable to the transferor shall be transferred to and assumed by the transferee without alteration. The Member shall give the Corporation at least 30 days advance written notice of the intended change in ownership. The Board may waive the notice requirement if it determines that the circumstances of the transfer do not or did not permit giving 30 days advance notice to the Corporation.

Where a change in ownership occurs, the transferee's rights and obligations as a Member shall be effective as of the date of the change in equitable ownership or lessee interest provided each of the requirements set forth above was satisfied, and the transferee completes and signs all forms

then required by the Corporation and pays all transfer fees within 20 days following the change or such more liberal schedule as may be set by the Board.

(D) Unless already paid by the transferee, the transferor shall be liable for all sums due to the Corporation, including dues and charges, occurring after a transfer, until 30 days after the member services department of the Corporation is notified in writing of such transfer, return receipt requested, of the transfer.

(E) In the event that an ambiguity exists in the application of the provisions of this section, the Board shall have the right to resolve the ambiguity in its sole and exclusive discretion.

### Section 8. Cancellation of Memberships By Board Action

(A) The Board shall have the right to cancel any Membership under one or more of the following conditions. Failure of the Board to effect cancellation when grounds therefore exist shall not be construed as a waiver of a power to cancel Membership at a subsequent time on the same or different grounds:

 (1) Failure to pay dues or other fees, rentals, charges or assessments within the time set by these Bylaws or by the Corporation.

 (2) Failure to comply with the terms and conditions or to meet the standards as set forth in the Regulatory Documents.

 (3) Failure to operate, manage or maintain the Best Western Property in such a way as to affect credit to the Corporation and the Members.

(B) No Membership shall be cancelled under Paragraph (A) of this Article II, Section 3, except by a vote of a Majority of the Board.

(C) Prior to cancellation of a Membership pursuant to this Article II, Section 8, the Corporation shall notify the Member, by using a traceable, expedited courier service, that the Board is considering cancellation of the Membership. Within 15 days after mailing such notification, the Member may demand, by written notice, mailed by certified mail, return receipt requested, to the membership services department of the Corporation, that a hearing be held to permit the Member to show cause why the Membership should not be cancelled. If such a request is timely made, the Board shall cause a hearing to be held and notice of the place, date and time of such hearing shall be mailed to the Member by using a traceable, expedited courier service, at least 15 days before the date set for the hearing. If a hearing is not timely requested, the Board may cancel the Membership as provided in sub-section (B) of this Article II, Section 8. The Member shall be advised of the decision of the Board in writing.

(D) Notwithstanding any notice and hearing rights otherwise provided by this Article II, Section 8 or the Rules and Regulations, the Board may provide a lesser notice and opportunity to be heard prior to cancellation of a Membership if it, in its sole and exclusive judgment, believes: (i) the Member exhibits a gross disregard for the Regulatory Documents, or (ii) delay in cancellation of a Membership may cause irreparable injury to the Corporation, a Member or Members, or the public. In such event, the Board shall provide at least 15 days notice of the intent to cancel the Membership. The Member shall have an opportunity to be heard by submitting to the Board, in writing, within 10 days of the date of mailing the notice, the reasons why the cancellation should not take place. Upon receipt of the

5

BW1235

Member's response, the Board shall set a hearing at which the Member may provide oral testimony. If no response is received, the Board may act without a hearing.

(E)   Notwithstanding any notice and hearing rights otherwise provided by this Article II, Section 6 or the Rules and Regulations, a Member whose Membership terminates pursuant to Article II, Section 7(A) of these Bylaws may only have an opportunity to be heard as provided in Article II, Section 7(A) of these Bylaws.

## ARTICLE III

### Meetings of Membership and Elections

#### Section 1. Annual Meeting

The Annual Meeting of the Membership shall be held on a date designated by the Board during the period from September 15th through November 15th of each year. Such meeting shall be held at the location designated by the Board. The purposes of the Annual Meeting shall be to announce the newly-elected Directors, if any, to present to the Members information regarding industry developments and other matters of interest to Members, and to hold a forum for Members to raise, for discussion only, any relevant questions about the Corporation's operations.

#### Section 2. Special Meetings

Special meetings of the Membership may be called by the Chairperson, by four Directors or by at least 10% of the Voting Members who sign, date and deliver to the Chairperson, the Vice-Chairperson or the Secretary-Treasurer of the Board one or more written demands for the meeting describing the purpose or purposes for which the special meeting is to be held. The Corporation may conduct only those matters at a special meeting of the Members that are within the purpose or purposes described in the notice of the special meeting. Special meetings of the Members shall be held in the City of Phoenix, Arizona, or at the Annual Meeting, and shall commence on a Monday.

#### Section 3. Notice of Meetings

Written or printed notice stating the date, time, place and the purpose or purposes of each annual and special Members' meeting shall be mailed by the President and Chief Executive Officer to each Voting Member not less than 30 nor more than 60 days before the date of the meeting.

#### Section 4. Eligibility to Vote

(A)   All voting shall be restricted to those Members who hold a current, valid Membership (but not those whose Best Western Properties have never been activated on the Corporation's reservation system) and who have paid in full the Annual Dues for a continuing Membership as required by Article II, Section 2(B) of these Bylaws for the year in which the voting is conducted.

(B)   Each Member who meets the requirements of Article III, Section 4(A) of these Bylaws and has on file with the Corporation a current voter registration card prior to the mailing date of the ballot shall be entitled to one vote on each matter submitted to the Membership for voting pursuant to Article III, Section 5 of these Bylaws. The Member or the Member's designee, as stated on the voter registration card, shall be the Voting Member.

#### Section 5. Presenting Matters for Vote by Written Petition or the Board

(A)   Any matter upon which the Members are to vote, except for the election of the Board, shall be proposed by either a written motion approved by a majority of the then

serving Directors or a written petition signed by at least 150 Voting Members. The petition shall set forth in detail the matter to be voted upon.

(1)   The motion or petition shall be presented to the President and Chief Executive Officer who shall, within 30 days, mail to each Voting Member, a ballot, a copy of the current voter registration card on file with the Corporation, a plain ballot envelope, a self-addressed mailer addressed to the Designated Accountant for ballot return and voting instructions. The President and Chief Executive Officer may also provide factual background and/or explanatory information regarding the matter to be voted upon. The ballot shall be written, shall set forth each proposed action and shall provide for an opportunity to vote for or against each proposed action. The voting instructions shall indicate the number of responses needed to meet the quorum requirements, state the percentage of approvals necessary to approve each matter and specify the deadline, as provided in Article III, Section 5(C) of these Bylaws for returning the ballot.

(2)   The provisions of Article VIII, Paragraph (D)(2) or (D)(3) of the Articles of Incorporation, regarding required legal opinions, shall be complied with by the proponents before the matter is presented to the President and Chief Executive Officer.

(3)   Matters presented for vote pursuant to this Article III, Section 5 shall reflect the vote of each Director on each proposed change. The Board may include a majority and minority opinion on each proposed change, not to exceed 250 words.

(B)   Each Member receiving the ballot materials shall cast his/her vote, seal his/her unsigned ballot in the plain ballot envelope and return it using the self-addressed mailer. On the back of the mailer shall be placed the name and address of the Member's Best Western Property. The Member shall type or print in ink his/her name on the back of the mailer and shall sign his/her name in ink above the typed or printed name substantially the same as it appears on the voter registration card. Such mailer shall either be addressed to the Designated Accountant or placed in another mailing envelope marked "Ballot Enclosed" addressed to the Designated Accountant.

(C)   At 2:00 p.m., Phoenix, Arizona time, on the first Wednesday (which is not a holiday observed by the Corporation) on or after the 30th day following the mailing of the ballots, which time and date shall be the deadline for returning the ballots, the Designated Accountant shall gather all matters then in the Designated Accountant's possession, certify the validity of each signature, open each mailer and deposit the plain ballot envelopes in a box or in one of seven boxes labeled by District number to receive the ballots cast from that District. The Designated Accountant shall then open the plain ballot envelopes and tally the votes. On the same day the Designated Accountant shall certify the results of the vote to the Corporation.

(D)   All Members voting shall have the right to be present at the certification and counting of the ballots and may challenge any procedure or certification. The Designated Accountant shall rule upon each challenge in writing and the ruling of the Designated Accountant shall be final, as shall the Designated Accountant's certification of the voting results.

(E)   The President and Chief Executive Officer shall, within five days of receipt of the certification of the voting results, send a written report of the voting results to all Members.

6

(F)   The Corporation may implement electronic or online voting as an alternative to the manual voting process described in Article III, Section 5 of these Bylaws, when and if the Board (after consultation with the Governors or the appropriate Member Advisory Committees) has determined that the system should:

    (1)   be confidential, auditable and secure;

    (2)   provide voter anonymity; and

    (3)   produce accurate vote counts.

Each Voting Member must be able to choose to vote manually as provided in Article III, Section 5 of these Bylaws.

### Section 6. Quorum/Votes Required for Passage

(A)   Unless otherwise required by the Nonprofit Act or the Articles of Incorporation, a quorum shall be: (i) for any Annual Meeting, or any regular or special meeting of the Members, 10% of the Voting Members; (ii) for any ballot, except for the election of Directors, the timely return of ballots meeting the requirements of this Article III of 10% of the Voting Members, and (iii) for the election of Directors, 10% of the Voting Members whose Best Western Properties are located in the respective District.

(B)   Unless otherwise required by the Nonprofit Act, the Articles of Incorporation, or Article II, Section 6(D) of these Bylaws for all matters upon which Members are entitled to vote, except: (i) the Election of Directors, (ii) amendment or repeal of the Bylaws and (iii) amendment or restatement of the Articles of Incorporation, an affirmative vote of a majority of the votes cast shall result in passage of the matter proposed provided at least 33 1/3% of all Voting Members vote in favor of the proposal.

(C)   The adoption, amendment or repeal of any Bylaw provision requires the affirmative vote of the Members as set forth in the Articles of Incorporation.

(D)   The amendment or restatement of the Articles of Incorporation or any provision thereof shall require the affirmative vote of the Members as set forth in the Articles of Incorporation.

### Section 7. Proxy and Cumulative Voting Prohibited

(A)   Proxy and cumulative voting by Members is expressly prohibited.

(B)   No Member or Members may create a voting trust conferring on one or more trustees the right to vote or otherwise act for the Member or Members.

### Section 8. District Meetings

(A)   Except as otherwise provided in the Articles of Incorporation and these Bylaws, the Board may call individual District Meetings or combined District Meetings at such times and places as it may determine.

(B)   The nomination of Directors under Article IV, Section 3 of these Bylaws shall be conducted at a District Meeting convened at the location of the Annual Meeting no more than two days prior to the Annual Meeting and no later than the adjournment of the Annual Meeting. The election of Directors who are uncontested for election may be conducted at this District Meeting as provided in Article IV, Section 4(A) of these Bylaws.

### Section 9. Record Date

In order that the Corporation may determine the Members entitled to notice of a Members' meeting, to demand a special meeting, to vote or to take any other action, the Board may fix a record date, which shall not be more than 70 days before the date of the meeting or action requiring a

determination of the Voting Members. In the event the Board does not fix a record date: (i) the Members entitled to vote at the meeting or to demand a special meeting shall be determined as of 1:00 o'clock in the afternoon on the day before notice of the meeting is sent; and (ii) the Members entitled to take action without a meeting shall be determined as of 1:00 o'clock in the afternoon on the day before the ballot is sent. A determination of Members entitled to notice of or to vote at a Membership meeting is effective for any adjournment of the meeting unless the Board fixes a new date for determining the right to notice or the right to vote. The Board shall fix a new date for determining the right to notice or the right to vote if the meeting is adjourned to a date that is more than 70 days after the record date for determining Members entitled to notice of the original meeting.

### Section 10. Action by Written Consent

The Members may approve any action required or permitted by the Nonprofit Act that requires the Members' approval without a meeting of the Members if the action is approved by the affirmative vote of a majority of the voting power unless the Articles of Incorporation, these Bylaws or the Nonprofit Act, as amended, requires the action be approved by a different percentage. The action shall be evidenced by one or more identical written consents describing the action taken, signed by Members representing at least the requisite amount of the voting power required for approval of the action, and delivered to the Corporation for inclusion in the minutes or filing with the corporate records.

## ARTICLE IV

### Board

### Section 1. Number and Qualifications

The affairs, business and concerns of the Corporation shall be conducted by a Board of seven Directors. In order to remain eligible to serve as a Director, each Director must have and maintain at least a 10% equity interest in a Best Western Property in the District the Director represents, must be the Voting Member for that Property and must reside in the District. The Directors shall be classified in such a manner that each Director shall serve a term of three years, except as set forth in Article IV, Section 8 of these Bylaws, and in such manner that the terms of approximately one-third of the whole number of Directors shall expire annually. Notwithstanding the foregoing, each Director shall hold office until the Director's successor is elected and qualified, or until the Director's earlier resignation or removal.

### Section 2. Districts

(A)   The Board shall divide the geographic area of the Membership into seven Districts, comprised of whole states, territories, provinces and/or possessions (the District of Columbia is considered to be a state for purposes of this Article).

(B)   A Majority of the Board may, if it deems such action is in the best interest of the Corporation, alter, change or amend the boundaries of the Districts by resolution of the Board without the requirement of amending this Bylaw.

### Section 3. Nominations for Directors

No more than two days prior to the date of the first general business session for all Members at the Annual Meeting, nominations for Directors shall be made from the floor at a District Meeting of the District for which a Director is to be elected held pursuant to Article III, Section 8(B) of these Bylaws; provided, however, that except in the case of a

7

BW1237

vacancy occurring on the Board as described in Article IV, Section 3, a candidate's name may not be placed in nomination unless there shall have been filed with the President and Chief Executive Officer or his designee at least 15 days prior to the calling of the District Meeting to order,

(A)  a written statement signed by the proposed candidate:

(1)  Agreeing to accept the nomination, and

(2)  Certifying that

(a)  The candidate is the Voting Member for a named Best Western Property within the District in which the Member is a candidate, has a minimum of 10% equity ownership of such Best Western Property, and resides within that District, and

(b)  There is neither a presently serving Director whose term does not expire during that year nor a candidate in any District who is affiliated, directly or indirectly, with the Best Western Property which the certifying candidate represents, and

(B)  documentation supporting the candidate's certification of at least 10% equity ownership of such Best Western Property.

The President and Chief Executive Officer of the Corporation may request and the candidate must provide any additional information the President and Chief Executive Officer reasonably requires to support the certification of ownership and of the Voting Member status. If not then satisfied that the information provided supports the certification, the President and Chief Executive Officer must promptly make a full report with detailed explanation to the Board. The candidate will not be eligible to be nominated unless at least five Directors vote in favor of accepting the information as supporting the certification.

### Section 4. Election of Directors

(A)  On or before the second Monday following the date of the first general business session for all Members at the Annual Meeting, the President and Chief Executive Officer shall mail to each Voting Member in the District for which a Director is to be elected, the following: (i) a written ballot showing the names of all qualified nominees for Director from that District; (ii) a copy of the current voter registration card on file with the Corporation; (iii) a plain ballot envelope; (iv) a self-addressed mailer for ballot return addressed to the Designated Accountant; and (v) voting instructions indicating the number of responses needed to meet the quorum requirements, stating the percentage of approval necessary to elect a Director and specifying the time, as provided in Article IV, Section 4(C) of these Bylaws, by which the ballot must be returned in order to be counted; provided, however, if there is only one qualified nominee for Director from that District, the Voting Members of that District that are present at the District Meeting at which nominations for Director were made shall hold a voice vote on election of the nominee.

(B)  Except in circumstances where a voice vote is held, each Voting Member may vote for one Director for the District in which the Member's Best Western Property is located and for which candidates have been nominated on the ballot provided pursuant to Article IV, Section 4(A) of these Bylaws. The Member shall cast his/her vote, seal his/her unsigned ballot in the plain ballot envelope and return it using the self-addressed mailer. On the back of the mailer shall be placed the name and address of the Member's Best Western Property. The Member shall type or print in ink his/her name on the back of the mailer and shall sign his/her name in ink above the typed or printed name

substantially the same as it appears on the voter registration card. Such mailer shall either be addressed to the Designated Accountant or placed in another mailing envelope marked "Ballot Enclosed" addressed to the Designated Accountant.

(C)  At 2:00 p.m., Phoenix, Arizona time, on the 16th day following the mailing of the election ballots to the Members, which time and date shall be the deadline for returning the ballots, the Designated Accountant shall gather all mailers then in the Designated Accountant's possession, certify the validity of each signature, open each certified mailer and deposit the plain ballot envelopes in a box labeled for the District from which the ballot originated. The Designated Accountant shall then open each plain ballot envelope and tally the votes for each District. On the same day the Designated Accountant shall certify the results of the vote to the Corporation.

(D)  All Members shall have the right to be present at the certification and counting of the election ballots and may challenge any procedure or certification. The Designated Accountant shall rule upon each challenge in writing and the ruling of the Designated Accountant shall be final, as shall the Designated Accountant's certification of the voting results.

(E)  The President and Chief Executive Officer, immediately upon receiving the certification of the results of the election, shall send each candidate a copy of the certification and within five days thereafter send a written report of the election results to all Members.

(F)  When a voice vote is held, each Member of the District for which such voice vote is held may, upon being asked by the chairperson of the District Meeting, respond by voice either for or against the sole qualified nominee for Director. The chairperson of the District Meeting shall then determine the outcome of the voice vote, which determination shall be final.

(G)  The nominee in each District who receives the highest number of votes cast from Members in that District shall be elected. Where a voice vote is authorized by these Bylaws, a nominee who receives a voice vote in favor of such nominee's election as a Director shall be elected.

(H)  Directors elected shall take office at the regular meeting of the Board immediately following the Annual Meeting in the year elected or upon certification of the election by the Designated Accountant, whichever occurs later.

(I)  Directors shall be elected for a term of three years except as set forth in Article IV, Section 8 of these Bylaws.

### Section 5. Quorum; Voting and Waiver of Notice

(A)  A Majority of the Board shall constitute a quorum for the transaction of business. Except as expressly provided otherwise in these Bylaws, the act of the majority of the Directors present at a meeting at which a quorum is present shall be the act of the Board.

(B)  If at any meeting of the Board, there shall be less than a quorum present, a majority of those present may adjourn the meeting, from time to time, until a quorum is obtained, and no further notice thereof need be given other than by announcement at the adjourned meeting.

(C)  Proxy voting by a Director or Directors is expressly prohibited.

(D)  A Director may waive any notice required by the Nonprofit Act, the Articles of Incorporation or these Bylaws by executing a written notice of waiver before or after the date and time of the meeting. A Director's attendance at or participation in a meeting waives any required notice to the

8

Director of the meeting unless the Director: (i) at the beginning of the meeting or promptly upon the Director's arrival objects to holding the meeting or transacting business at the meeting; and (ii) does not thereafter vote for or assent to action taken at the meeting.

### Section 6. Regular Annual Meeting of the Board

(A)  There shall be one Regular Annual Meeting of the Board each year and such other meetings as fixed by the Board. Each meeting may extend over a period of consecutive days without being adjourned.

(B)  The Regular Annual Meeting of the Board shall be held each year without further notice, at the principal office of the Corporation at 8:00 A.M. local time on the fifth Monday following the date of the first general business session for all Members at the Annual Meeting of the Members, for the purpose of electing Officers of the Board designated in Article V, Section 1, and conducting such other business as may be brought before the meeting.

### Section 7. Special Meetings of the Board

Special meetings of the Board may be called by the Chairperson upon the written request of any three Directors (which three Directors may include the Chairperson). Notice of any such special meeting setting forth the date, time and place of the meeting shall be in writing and given at least five days before the meeting personally, by facsimile, by wire or wireless communication, by private carrier, or by overnight courier. The notice shall describe the purpose of the special meeting.

### Section 8. Vacancies

A vacancy on the Board occurring prior to 90 days before the next Annual Meeting shall be filled by special election according to the procedures established in this Article IV, Section 8, and in accordance with Article IV, Section 4 of these Bylaws. Notice of the vacancy shall be mailed to the Voting Members in the District for which there is a vacancy within 10 days of receipt of notice by any Director or the President and Chief Executive Officer of the occurrence of an event that has caused a vacancy. Members may nominate candidates by presenting to the President and Chief Executive Officer, within 30 days of the mailing of the notice, a nominating petition signed by at least five Voting Members in the District. The proposed candidate shall submit to the President and Chief Executive Officer the statement required of proposed candidates by Article IV, Section 3 of these Bylaws prior to mailing of the ballots in a contested election, or within 60 days of the mailing of the notice of the vacancy in an uncontested election. Voting in a contested election shall be conducted by mail by secret ballot, in accordance with Article IV, Sections 4 and 8 of these Bylaws. The President and Chief Executive Officer shall mail ballots on the 30th day following the mailing of the notice of the vacancy, and voting shall be concluded within 60 days of the mailing of the notice of the vacancy. At 2:00 p.m., Phoenix, Arizona time, on the final day, of such 60-day period, which time and date shall be the deadline for returning the ballots, all ballots shall be counted by the Designated Accountant pursuant to Article IV, Section 4 of these Bylaws. The candidate receiving the highest number of votes shall serve the remainder of the term for such Board position. In the event only one candidate is eligible for election, on the 30th day following the mailing of the notice of vacancy, the President and Chief Executive Officer shall declare, upon the affirmative vote of a majority of the then serving Directors at a meeting of the Board, that the candidate is elected to serve the remainder of the term for

such Board position. The vote by the Board may be by telephone conference call participated in by a majority of the then serving Directors.

### Section 9. Compensation of Members of the Board of Directors

Directors shall serve as such without salary or other compensation, except as provided in this Article IV, Section 9.

(A)  For each day a Director (i) is away from both the Director's principal place of business and the Director's primary personal residence and (ii) is performing services on behalf of the Corporation, the Director may request payment of a fee of $400 per day.

(B)  For each day a Director (i) is away from both the Director's principal place of business and the Director's primary personal residence and (ii) is performing services on behalf of the Corporation, the Director may request reimbursement of reasonable business and travel expenses. Reimbursement of the expenses shall be according to the then Board policy regarding the reimbursement of business and travel expenses. If a Director stays in a private secondary residence, other than his/her legal residence, while in Phoenix, Arizona, performing services on behalf of the Corporation, the Director may request payment equal to or less than the average amount of the hotel costs paid by Directors staying at Best Western Properties.

(C)  For each $400 fee requested pursuant to Article IV, Section 9(A) of these Bylaws and for the reimbursement of allowed business and travel expenses, the Director must provide the Corporation with a summary of activities and services performed on behalf of the Corporation and documentation, acceptable for federal income tax purposes, of the expenses incurred. The Board may adopt on an annual basis a policy regarding the reimbursement of business and travel expenses. If the policy differs from that of the prior year, the Board shall provide each Member with a notification of the changes.

### Section 10. Specific Powers of Board

Without in any way limiting the general and other powers of the Board as established by statute, by the Articles of Incorporation, and elsewhere in these Bylaws, the Board shall have the following powers:

(A)  To employ and discharge the President and Chief Executive Officer.

(B)  To work with the President and Chief Executive Officer to carry out the plans, as described in Article V, Section 4 of these Bylaws, and meet the budget approved by the Board.

(C)  To manage the operations of the Corporation that affect the financial affairs of the Members, including but not limited to: Membership development, Property standards and evaluations, hearings and Member meetings and communications.

(D)  To work with the Advisory Committees to develop strategic direction of the Corporation.

(E)  To set policies for the strategic direction of the Corporation.

Upon written request to the President and Chief Executive Officer, a Director shall be provided all records of the Corporation, including individual employee payroll information. Except for individual employee payroll information, information contained within employee personnel files, as maintained by the director of human resources, shall not be provided. Subject to the provisions of A.R.S. § 10-11602(A), and prior to the disclosure of

9

information received by Directors to third parties, the Director shall notify the Board in writing as to the party requesting information and the purpose of such disclosure. It is the duty of the Director to ensure the information remains confidential and is not disclosed by the third party. The Board may designate other information as confidential. This additional confidential information shall be subject to the notification provisions applicable to individual employee payroll information.

### Section 11. Removal of Directors

Upon delivery to the President and Chief Executive Officer of a written petition proposing the removal of a particular Director, signed by at least one-third of all Voting Members in such Director's District, a special election shall be held according to procedures established in Article IV, Section 8 of these Bylaws. Notice of the election shall be mailed to the Voting Members in the District within 10 days of receipt of the petition. The incumbent Director shall automatically appear on the election ballot unless the Director has notified the Board and the President and Chief Executive Officer in writing of the Director's desire not to be placed on the ballot. In the event the Director resigns before ballots are printed, election of a Director for the then vacant position shall be as provided in this Article IV, Section 11. Other candidates may be nominated by presenting to the President and Chief Executive Officer, within 30 days of the submission of the petition, a nominating petition signed by at least five Voting Members in the District. Each proposed candidate shall submit to the President and Chief Executive Officer a written statement that the candidate meets the requirements of Article IV, Section 3 of these Bylaws prior to the mailing of the ballots. Voting in contested elections shall be conducted by mail and by secret ballot, in accordance with Article IV, Sections 4 and 11 of these Bylaws. The President and Chief Executive Officer shall mail ballots on the 30th day following the receipt of the petition, and voting shall be conducted within 60 days of receipt of the petition proposing removal. At 2:00 p.m., Phoenix, Arizona time, on the final day of such 60-day period, which time and date shall be the deadline for returning the ballots, all ballots shall be counted by the Designated Accountant pursuant to Article IV, Section 4 of these Bylaws. The candidate receiving the highest number of votes shall serve the remainder of the term of the existing Director.

### Section 12. Maximum Term of Directors

No person who shall have served two or more elected terms, whether or not consecutive, shall be eligible to be appointed or elected as a Director. For purposes of this Article IV, Section 12, "elected term" shall not include an unexpired term to which a Director is elected to fill a vacant Director position pursuant to Article IV, Section 8 of these Bylaws, or to replace a removed Director pursuant to Article IV, Section 11 of these Bylaws.

### Section 13. Conduct of Board Meetings

At least 10 days prior to each regular Board meeting, a written agenda setting forth each item to be presented at the meeting shall be prepared and made available to each Director and to any Member upon request. Action at Board meetings shall be limited to action on those items set forth in the agenda, except for such matters as the Chairperson and at least two other Directors certify in writing to involve a bona fide emergency requiring immediate action of the Board. All meetings of the Board shall be open to any Member except that the Board may convene a closed executive session for the purpose of considering personnel matters, considering confidential issues dealing with specific

Members, receiving legal advice or for any other matter which, to avoid legal liability, may require confidential treatment. The Board may convene an executive session only upon the roll-call vote of at least 60% of the seven then serving members of the Board. Action of the Board may only be taken by recorded roll-call vote and the vote of each Director on each issue must be recorded. The Board shall keep detailed minutes of all meetings, including minutes of the general nature of discussions in executive sessions, which minutes shall be made available to all Members upon request. The Board may keep detailed minutes of proceedings in executive session which shall be considered privileged and not subject to disclosure except upon proper legal authority or court order. An executive session may only occur within a regular or special Board meeting.

### Section 14. Limitation on Employment of Directors During and Following Term

During the period of time an individual serves on the Board, and for a period of five years thereafter (commencing from the date the individual no longer is serving on the Board, whether or not the former Director completes the entire term), such individual shall not be employed by the Corporation in any capacity without the approval of the Members. In addition, during such period of time, such Director, and any corporation, partnership, proprietorship, trust or other business entity in which such individual has an equity or beneficial interest of more than 5%, shall not in any way be employed or engaged by the Corporation, or contract with the Corporation, in any manner, without the approval of the Members. The approval of the Members required in this Article IV, Section 14 shall be determined pursuant to Article III of these Bylaws.

## ARTICLE V
### Officers

### Section 1. Designation of Officers

The Board shall annually, at its Regular Meeting of the Board, name the Officers of the Board who shall consist of a Chairperson of the Board, Vice-Chairperson of the Board and Secretary-Treasurer of the Board, all of whom shall be Directors. The Board shall have the power to confer such titles as it deems appropriate on any Officer or employee of the Corporation.

### Section 2. Chairperson

(A)  The Chairperson, who shall serve for a one year term, shall preside at Board meetings and official meetings of the Members. The Chairperson shall have such powers as the Board may assign. The Chairperson shall have the right to serve as an ex officio member of any committee appointed by the Board. No person shall serve more than one year as Chairperson unless elected to an additional term by the unanimous vote of the Board.

(B)  In the absence of the Chairperson, or in the event of the Chairperson's inability or refusal to act, the Vice-Chairperson, or a Director elected by the Board for the term and purpose stated in the resolution of election shall perform the duties of the Chairperson, and when so doing, shall have all the powers of, and be subject to, all the restrictions upon the Chairperson.

### Section 3. Vice-Chairperson

A Vice-Chairperson shall be named by the Board and shall perform such duties and have such authority as determined by resolution of the Board.

10

BW1240

### Section 4. President and Chief Executive Officer

The President and Chief Executive Officer shall be named by the Board, shall be the chief administrative officer of the Corporation and shall have such powers and duties as the Board may assign. The President and Chief Executive Officer shall have such duties, responsibilities and powers as are incident to a chief executive officer, but shall at all times be responsible to the Board and shall carry out and conform to the orders and directions issued from time to time by the Board. The President and Chief Executive Officer shall be responsible for managing the affairs of the Corporation in order to meet the objectives of the Board in the strategic direction, updated strategic plan, yearly business plan and yearly budget or amendments thereto approved by the Board. The President and Chief Executive Officer shall be responsible for the hiring and discharging of all Vice-Presidents and other employees. Prior to the discharge of a Vice-President, the President and Chief Executive Officer shall notify the Board members and allow discussion.

### Section 5. Vice-Presidents

Vice-Presidents named by the President and Chief Executive Officer shall perform such duties and have such authority as determined by the President and Chief Executive Officer.

### Section 6. Secretary-Treasurer

The Secretary-Treasurer of the Board shall perform such duties as determined by the Board.

## ARTICLE VI
### Miscellaneous Provisions
### Section 1. Corporate Seal

The corporate seal of the Corporation shall be circular in form and shall contain the name of the Corporation, the date of its creation and the words "Incorporated in Arizona." Said seal may be used by causing it or a facsimile thereof to be impressed, affixed, reproduced on, or otherwise applied to any document, paper or other receiving surface.

### Section 2. Fiscal Year

The fiscal year of the Corporation shall be such as shall from time to time be determined by the Board.

### Section 3. Checks, Drafts, Notes

All checks, drafts or other orders for payment of money, notes or other evidences of indebtedness issued in the name of the Corporation, shall be signed by such Officers, or agent or agents, of the Corporation, and in such a manner, as shall from time to time be determined by the Board.

### Section 4. Loans

No loans shall be contracted on behalf of the Corporation, and no evidence of indebtedness shall be issued in its name, unless authorized by the Board. Such authority may be general or confined to specific instances.

### Section 5. Annual Financial Statement

Within 90 days after the close of the fiscal year of the Corporation, a financial statement, including the balance sheet and profit and loss statement for the preceding fiscal year, shall be furnished to each Member. This financial statement shall be certified by an independent certified public accountant.

### Section 6. Annual Budget

At least 30 days prior to the beginning of each fiscal year, the Board shall have approved a final, detailed annual budget showing proposed receipts and expenditures for the upcoming fiscal year. The annual budget shall be distributed to all Members who make written request therefore, and who acknowledge, on a form prescribed by the Corporation, that, except as may be required by law, the Member will maintain and protect the confidential nature of the documents provided, except that it may be disclosed to Voting Members. Members receiving the annual budget shall reimburse the Corporation for reasonable photocopy charges (which shall not include employee or overhead expenses of the Corporation).

### Section 7. Patronize Best Western Hotels

The Board shall adopt policies designed to maximize the business use of Best Western Properties by Members, the Board, Officers, employees and agents. The policy shall provide that a Best Western Property should be patronized, subject to reasonable availability, anytime that the Corporation pays for motel or hotel rooms or services. Such policy may provide for exceptions, however, where Best Western Properties are not reasonably available for the Annual Meeting or for District Meetings, and for trade shows held at other facilities where it is beneficial for attendees to be staying on premises at such non-Best Western facilities.

### Section 8. Limitations on Inspections

A Member shall be given a minimum of 24 hours notice before any inspection of such Member's Best Western Property. No inspection of a Member's Property shall occur while such Member is attending any official meeting of the Corporation, including (without limitation) annual conventions and meetings of the Board, or within close proximity to the death of a family member of the particular Member, or on a recognized holiday. No points shall be deducted from an inspection score with respect to work on or improvements to a Property designed to correct the matter in issue and pursued with reasonable diligence, (i) which has been commenced prior to receipt by the Member of the notice of inspection, but which has not yet been completed, and which was not indicated to need correction on the next previous inspection, or (ii) which has been commenced in response to and within a reasonable time after the last inspection of the Property, but has not yet been completed at the time of the current inspection. If the same defects are noted in the next following inspection, points may be deducted at that time.

### Section 9. Marketing/Pricing Programs

(A)  The Board shall not establish any mandatory marketing or discount programs involving a discount from published rack rates of Members in excess of 10%, without an affirmative vote of the Members pursuant to Article III of these Bylaws.

(B)  Only mandatory programs, and voluntary marketing programs that have been agreed to in writing by the Member, may be loaded into the reservation system in an "open" status.

### Section 10. Advisory Committees

(A)  To provide for appropriate Membership input into decisions of specific concern to Best Western Property owners, and to assist the Board and the management team in maintaining proper insight into company matters, the following Advisory Committees are hereby created: Cultural Diversity Committee, Education & Training Committee, Marketing Committee, Membership Development Committee, Quality Assurance Committee, Reservations & Technology Committee and Supply Committee.

11

BW1241

(B) The role of the Advisory Committees is to provide the benefit of Property perspective and to act as an advisory group to the Board, enhancing the Corporation's ability to provide Member services. The role of the Advisory Committees is not to provide direction to or supervision of the Corporation's staff. Any direction of the Corporation's staff in relation to Advisory Committee functions may be undertaken by the Board upon recommendation of the Advisory Committee. Advisory Committee members will follow the Corporation's ethics policies.

(C) Each District shall be represented by the same number of Members on each Advisory Committee. Directors shall appoint Advisory Committee members whose Best Western Property is within the Director's District. All appointments shall automatically expire concurrently with the term of the appointing Director. Advisory Committee members may be replaced at the discretion of the Director of that District. Advisory Committee members shall be eligible to serve a maximum of six consecutive years, at which time they must leave the Advisory Committee for a minimum of three years before being eligible for reappointment to that Advisory Committee. Currently serving Advisory Committee members may continue to serve beyond six years until the expiration of the current term of the appointing Director. No Member may serve simultaneously on more than one Advisory Committee.

(D) At the beginning of each fiscal year, the Board, with the recommendations of the Advisory Committees, shall establish the anticipated program of work for each Advisory Committee. The Board shall determine the amount of funds necessary for each Advisory Committee to complete its assigned tasks in a comprehensive and reasonable manner. Such budget shall provide funding sufficient for a minimum of two meetings per year, which all Advisory Committee members may attend in person.

(E) The Board shall ensure that each Advisory Committee is provided with timely, comprehensive and pertinent information reasonably necessary to carry out well-informed deliberations. Advisory Committee action will take the form of recommendations reported to the Board no later than the second regular Board meeting following each Advisory Committee meeting. In addition, the chairperson of the Advisory Committee and the appropriate member of staff are responsible for accurately reporting the Advisory Committee findings to the Board, and to be available in person or via telephone to discuss and answer any questions the Board may have regarding the Advisory Committee recommendations.

(F) The recommendations and actions of any Advisory Committee shall not be binding on the Board or the Corporation and shall not constitute an act of the Corporation.

### Section 11. Conflict of Interest

No employee of the Corporation shall directly or indirectly, as a proprietor, partner, shareholder, employee, lender or in any other capacity, acquire or retain any interest in a Best Western Property.

### Section 12. Information to Members

Except as specifically provided otherwise in the Nonprofit Act, the Articles of Incorporation or Article II, Section 8 of these Bylaws, whenever these Bylaws require the Board or the Corporation to notify, advise or provide information or material in writing or by mail, the notice, advice, information or material may be provided by letter, facsimile, e-mail, the

Corporation's website for Members, or other appropriate means calculated to provide such information or material to the intended recipient.

## ARTICLE VII
### Indemnification of Directors, Officers, Governors and Committee Members

### Section 1. Persons Indemnified

The terms "Corporation," "Director," "Expenses," "Liability," "Officer," "Party," and "Proceeding" when used in this Article VII, Indemnification of Directors, Governors and Committee Members, shall have the same meanings as set forth in A.R.S. § 10-3850, as amended.

(A) Directors. To the extent the Nonprofit Act, as amended, permits a Corporation to indemnify a person who is or was a party to a Proceeding because he is a Director, this Corporation shall indemnify said person, as more fully provided in the Articles of Incorporation.

(B) Officers. To the extent the Nonprofit Act, as amended, permits a Corporation to indemnify a person who is a Party to a Proceeding because the person is or was an Officer of the Corporation, this Corporation shall indemnify said person to the same extent as a Director. In addition, this Corporation shall indemnify said person to the extent permitted in the Articles of Incorporation.

(C) Governors. To the extent the Nonprofit Act, as amended, permits a Corporation to indemnify a person who is a Party to a Proceeding because the person is or was a Governor of the Corporation, this Corporation shall indemnify said person to the same extent as a Director. In addition, this Corporation shall indemnify said person to the extent permitted in the Articles of Incorporation.

(D) Standing Committee Member. To the extent the Nonprofit Act, as amended, permits a Corporation to indemnify a person who is a Party to a Proceeding because the person is or was a standing committee member of the Corporation, this Corporation shall indemnify said person to the same extent as a Director. In addition, this Corporation shall indemnify said person to the extent permitted in the Articles of Incorporation.

(E) Ad Hoc Committee Member. To the extent the Nonprofit Act, as amended, permits a Corporation to indemnify a person who is a Party to a Proceeding because the person is or was an Ad Hoc committee member of the Corporation, this Corporation shall indemnify said person to the same extent as a Director. In addition, this Corporation shall indemnify said person to the extent permitted in the Articles of Incorporation.

### Section 2. Advance of Expenses

This Corporation may pay for or reimburse the reasonable Expenses incurred by a Director, Officer, current or former Governor or current or former Standing Committee member who is a Party to a Proceeding in advance of final disposition of the Proceeding in accordance with A.R.S. § 10-3853, as amended.

### Section 3. Power to Indemnify

(A) Subject to the provisions of paragraph (B) of this Section 3, to the extent permitted by Arizona law, the Board shall have the power to indemnify persons who are not Officers, Directors, Governors, Standing Committee members and Ad Hoc Committee members and the power to pay for or reimburse reasonable expenses incurred by any such person who is a Party to a Proceeding.

12

(B)  No other person or entity than those specifically named in the Articles of Incorporation shall be indemnified unless by specific Resolution of the Board identifying the indemnitee and the specific scope and conditions of the indemnity.

(C)  Except as provided above in paragraph (B) of this Section 3, no indemnity shall be extended, by grant whether express or implied, to a Member, actual or apparent agents or independent contractors.

## ARTICLE VII
*Amendments*

These Bylaws may be amended as provided in the Articles of Incorporation.

# Best Western International, Inc.
# Restated Articles of Incorporation

## As Amended Through
## August 30, 2000
*Amendments*

1.  June 7, 1966 – Article VII
2.  August 12, 1968 – Articles VI & VII
3.  November 21, 1975 – Article I
4.  October 14, 1976 – Articles IV & VI
5.  January 19, 1978 – Article V
6.  December 19, 1978 – Article I
7.  July 21, 1987 – Article VII
8.  September 20, 1989 – Article VII
9.  August 30, 2000
10. June 14, 2006 – Article VI

ALL PROVISIONS OF THE EXISTING ARTICLES OF INCORPORATION NOT INCLUDED IN THESE RESTATED ARTICLES ARE EXPRESSLY REPEALED UPON ADOPTION OF THESE RESTATED ARTICLES.

## ARTICLE I
The name of the Corporation shall be:
BEST WESTERN INTERNATIONAL, INC.

## ARTICLE II
The principal meeting place of the Corporation shall be in Phoenix, Arizona, but the Corporation may establish other meeting places and other offices elsewhere within and without the State of Arizona.

## ARTICLE III
The general nature of the Corporation shall be for the following purposes:

(A)  To foster the interest of its members and those which are in any way related to the motel industry by common business interest;

(B)  To encourage high business standards and fair and honest treatment of the general traveling public, and specifically in providing for their convenience and comfort, and in the dissemination of highway and travel information and other aids;

(C)  To establish and maintain uniformity and equity in the customs of the motel trade;

(D)  To acquire, preserve and disseminate valuable information and to encourage closer relationships among those engaged in the industry;

(E)  To stimulate and cultivate close and lasting friendships and fellowships among those engaged in the industry;

(F)  To sue and to be sued;

(G)  To make, execute, deliver and assume the obligations of contracts;

(H)  To receive property by devise or bequest, subject to laws regulating the transfer of property by Will;

(I)  To convey, exchange, lease, mortgage, encumber, transfer upon trust or otherwise to dispose of all property, real or personal;

(J)  To own, buy, lease and operate office buildings, storerooms, garages, club houses and other edifices;

(K)  To do any and all things necessary, suitable and proper for the accomplishment of its affairs and the accomplishment of any of the purposes or for the attainment of any of the objectives or for the exercises of any of the powers herein set forth or which may be recognized as proper and lawful objectives of a trade association, all of which shall be constituted with the public interest of this trade and industry.

(L)  Best Western International, Inc. or its subsidiaries are prohibited from operating, managing or otherwise participating in a hotel or motel except on a site associated with the Best Western International Headquarters.

## ARTICLE IV
The known place of business for the Corporation is 6201 N. 24th Parkway, Phoenix, Arizona 85016.

## ARTICLE V
The Corporation shall be a member nonprofit corporation.

## ARTICLE VI
There shall be no capital stock issued by this nonprofit Corporation. Memberships in the Corporation shall not be assigned except in accordance with the terms and conditions set forth in the Bylaws and none of the members of the Corporation shall receive pecuniary gain or profit. In the event of the dissolution of this Corporation after adequately taking care of all debts and obligations, any remaining assets of the Corporation shall be distributed to a nonprofit educational or charitable organization.

## ARTICLE VII
The time of the commencement of this Corporation shall be the date upon which the Arizona Corporation Commission shall issue its certificate. The Corporation shall have perpetual existence as provided for by law.

## ARTICLE VIII
(A)  The Annual Meeting of the membership shall be held during the period from September 15th through November 15th of each year on a date to be designated by the Board of Directors and such meeting shall be held at a location designated by the Board of Directors.

(B)  The affairs of the Corporation shall be conducted by a Board of Directors comprised of seven (7) Directors who shall be members of the Corporation.

(C)  The annual election of Directors hereafter shall be as set forth in the Bylaws.

13

(D)  1.   The members of the Corporation may propose the adoption, amendment or repeal of any Article of Incorporation or Bylaw or part thereof without the prior action of the Board of Directors. A proposal to adopt, amend or repeal any Article of Incorporation or Bylaw, or part thereof, may be initiated upon the written request of at least one hundred fifty (150) members who meet the requirements of Article III, Section 4 of the Bylaws, which request shall be delivered to the Secretary of the Corporation at its known place of business.

2.   Before a proposal to adopt, amend or repeal any Article or Bylaw is distributed for member signatures, the proposal shall be submitted to the Board and, at the Board's discretion, the proposal may be reviewed by Best Western's legal counsel. Counsel shall render an opinion within thirty (30) days whether the proposal violates any local, state or federal laws or whether the proposal requires the repeal or modification, in whole or in part, of any current Articles, Bylaws or Rules and Regulations. Counsel shall render to the Board and the proponents of the proposal an opinion stating what modifications, if any, are recommended to be made to the proposal and to current Articles, Bylaws or Rules and Regulations to avoid conflict or inconsistency or to provide clarity.

3.   In the alternative to D(2) above, the proponents may, in lieu of submitting the proposal to the Board prior to distribution for member signatures, submit the proposal with the required member signatures, along with a legal opinion of a licensed Arizona attorney. The opinion must state that the proposal does not violate any local, state or federal laws, does not require the repeal or modification, in whole or in part, of any current Articles, Bylaws or Rules and Regulations unless such repeal or modifications are included in the proposal.

4.   Proposals to adopt, amend or repeal the Articles of Incorporation or Bylaws shall reflect the vote of each Director on each proposed change. The Board may include a majority and minority opinion on each proposed change, not to exceed 250 words.

(E)  The Board of Directors may also propose the adoption, amendment or repeal of any Article of Incorporation or Bylaw or part thereof without the prior action of the members. The Board of Directors must also comply with the applicable provisions of Paragraph D(2).

(F)  The power to adopt, amend or repeal the Bylaws of this Corporation shall be vested solely in the members of the Corporation. The adoption, amendment, or repeal of any Bylaw provision shall require the affirmative vote of the lesser of two-thirds (2/3) of the votes cast or a majority of the voting power, unless the Arizona Nonprofit Corporation Act, as amended, or the body proposing the provision requires a greater vote; provided, at least thirty-three and one-third percent (33 1/3%) of the voting power vote in favor.

(G)  Subject to A.R.S. § 10-11002(A), as it now exists or may hereafter be amended, the power to amend or restate these Articles of Incorporation shall be vested in the members of the Corporation. The amendment or restatement of the Articles shall require the affirmative vote of the lesser of two-thirds (2/3) of the votes cast or a majority of the voting power, unless the Arizona Nonprofit Corporation Act, as amended, or the body proposing the provision requires a greater vote; provided, at least thirty-three and one-third percent (33 1/3%) of the voting power vote in favor. The Board of Directors may restate the Articles of Incorporation without member vote if no amendment is included.

(H)  Board of Directors' initiated amendments to the Articles and Bylaws shall comply with the provisions of A.R.S. § 10-11003, as may be amended.

## ARTICLE IX

The private property of each and every member of the Corporation, officer and Director shall, at all times, be exempt from all debts and liabilities of the Corporation.

## ARTICLE X

To the fullest extent that the law of the State of Arizona, as it now exists or as it may hereafter be amended, permits the elimination of or limitation on the liability of Directors and Officers, no Director or Officer of the Corporation shall be liable to the Corporation or its members for monetary damages for any action taken or any failure to take any action as a Director or an Officer. Any repeal or modification of this Article shall be prospective only and shall not adversely affect any elimination or limitation on the personal liability of a Director or Officer of the Corporation existing at the time of such repeal or modification.

## ARTICLE XI

Pursuant to A.R.S. § 10-3202(B)(2) and to the fullest extent that the Arizona Nonprofit Corporation Act, as amended, permits a nonprofit corporation to indemnify a Director, Officer, Governor and Standing Committee member for, from and against liability as defined in A.R.S. § 10-3850, as amended, to any person for any action taken, or any failure to take action as a Director, Officer, Governor, Standing Committee member and Ad Hoc Committee members, the Corporation shall provide indemnification for, from and against any such liability to the Directors, Officers, Governors, Standing Committee members and Ad Hoc Committee members.

## ARTICLE XII

The members of the Corporation may adopt or amend Bylaws in accordance with Article VIII of these Articles of Incorporation to fix a greater quorum or voting requirements for members than is required by the Arizona Nonprofit Corporation Act, as it now exists or as it may hereafter be amended.

14

BW1244

BW1245



**THE WORLD'S LARGEST
HOTEL CHAIN**

Best Western and the Best Western marks are service marks or registered service marks of Best Western International, Inc.
© 2000, Best Western International, Inc. All rights reserved. Printed in U.S.A. Hotel_Ref_303107 (5-00)