**LAW OFFICES**
**SHERMAN & HOWARD L.L.C.**
2800 NORTH CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004-1043
TELEPHONE (602) 240-3000
FACSIMILE (602) 240-6600
(AZ BAR FIRM NO. 00441000)
Arthur W. Pederson (AZ Bar No. 002821)
(apederson@shermanhoward.com)
David W. Garbarino (AZ Bar No. 022452)
(dgarbarino@shermanhoward.com)
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BEST WESTERN INTERNATIONAL, INC., an Arizona non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>AV INN ASSOCIATES 1, LLC, a California limited liability company; HOOSHANG HAROONI,<br><br>Defendants. | No. CIV08-02274-PHX-DGC<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Best Western International, Inc. ("Best Western"), hereby responds to the "Motion for Summary Judgment Re Bad Faith and Breach of Contract" (Dkt. # 61) and "Memorandum of Points and Authorities in Support of Motion for Summary Judgment on the Purely Legal Issue of Wrongful Termination of the Agreement" (Dkt. # 59) (Dkt. ## 59 and 61 collectively, "Defendants' Motion") filed by defendants AV Inn Associates 1, LLC ("AV Inn Associates"), and Hooshang Harooni ("Harooni") (AV Inn Associates and Harooni collectively, "Defendants"). The following memorandum of points and authorities supports this response.

### ***MEMORANDUM OF POINTS AND AUTHORITIES***

Defendants' Motion asks this Court to enter (1) judgment in favor of Defendants on Best Western's claims, and (2) judgment in favor of Harooni on his counterclaim. Nevertheless, Defendants do not meet their summary judgment burden and/or genuine issues of material fact exist that prevent summary judgment in Defendants' favor.

PHOENIX \ 686683.2 \ 015091.009

# BACKGROUND

Best Western hereby incorporates by reference, as though fully set forth herein, the factual and procedural background set forth in Plaintiff's Motion for Summary Judgment Against Defendants (Dkt. # 57), Statement of Facts in Support of Motion for Summary Judgment (Dkt. # 58), and Combined Response to Defendants' Separate Statement of Facts ("PRDSSOF") and Statement of Additional Facts in Support of Plaintiff's Response to Defendants' Motion ("PSOAF") filed herewith.  Facts pertinent to the discussion herein are set forth as such facts become relevant.

# DISCUSSION[1]

Initially, Defendants' Answer (Dkt. # 14) and Harooni's Counterclaim (Dkt. # 26) ***did not plead or allege*** that (i) Best Western violated Arizona Revised Statute ("A.R.S.") § 10-3621, (ii) Defendants were entitled to a conditional extension, (iii) Best Western owed Defendants a fiduciary duty, (iv) Best Western breached a fiduciary duty, (v) cancellation of Defendants membership resulted in a forfeiture, or (vi) Harooni has a tort claim against Best Western.  (PSOAF ¶ 1.) The time to amend pleadings and conduct discovery passed long ago.  (*Id*. ¶ 2.)  The Court should not allow Defendants to expand this litigation beyond Defendants' original pleadings.  *See Brass v. County of L.A.*, 328 F.3d 1192, 1197 (9th Cir. 2003) (affirming a district court's refusal to consider issues raised in a motion for summary judgment, but not originally pled).

## A.   Defendants Fail to Meet the Standard for Summary Judgment

Defendants bear the initial burden to prove they are entitled to summary judgment, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and must demonstrate that there are no genuine issues of material fact that preclude entry of judgment in their favor, *see* Fed. R. Civ. P. 56(c)(2).  Facts should be "viewed in the light most favorable

---

[1]   Defendants incorrectly suggest that Best Western is a franchise subject to California franchise law, but assume for Defendants' Motion that Arizona law applies.  Best Western strongly disagrees, and asserts that it is not a franchise, but rather an Arizona non-profit membership organization, and Arizona law applies.  As Defendants' Motion does not rest on resolution such issues, Best Western does not address such issues further in this response, but reserves the right to do so if such issues are raised for a substantive decision of the Court.

to the non-moving party." *Covell v. Arpaio*, 662 F. Supp. 2d 1146, 1151 (D. Ariz. 2009). The burden shifts to Best Western **<u>only</u>** if Defendants' Motion is properly supported. *See id*. As demonstrated *infra* as well as in PRDSSOF, many of the purported facts relied upon by Defendants simply do not exist and/or are not supported as required by Rule 56, Fed. R. Civ. P. Defendants fail to meet their initial burden. Even if the Court concludes otherwise, PRDSSOF demonstrates that genuine issues of material fact exist that prevent entry of summary judgment in favor of Defendants.

**B.     Cancellation of Defendants' Membership Was Lawful**

Despite not pleading that A.R.S. § 10-3621 entitled Defendants to relief (*see supra* at 2), Defendants incorrectly claim that cancellation of their membership violated section 10-3621. Section 10-3621 requires a non-profit organization to establish a procedure for termination of members. That procedure must **<u>either</u>** (1) include written notice within 15 days before termination and an opportunity for the member to be heard at least five days before termination, **<u>or</u>** (2) be "fair and reasonable taking into consideration all of the relevant facts and circumstances." *Id*. § 10-3621(B)(1), (2). Best Western's procedures for cancellation satisfy both § 10-3621(B)(1) and (2).

The Members' Bill of Rights contained in Best Western's Bylaws and Articles ("Bylaws") provide "that cancellation may not occur until after a hearing before the Board of Directors, if requested by the member." (PSOAF ¶ 3.) Pursuant to the Bylaws, Best Western must give a member written notice that his or her membership is subject to cancellation by the Best Western Board of Directors (the "Board"). (*Id*. ¶ 6.) The member has fifteen days[2] from the date of the written notice from Best Western to request a hearing before the Board at which the member has an opportunity to "show cause why the [m]embership should not be cancelled." (*Id*. ¶ 7.) If a hearing is timely requested, notice of the hearing must be given to the member fifteen days before the

---

[2]     A member may have only ten days in the event the Board determines that "(i) the [m]ember exhibits a gross disregard for the Regulatory Documents, or (ii) delay in cancellation of a [m]embership may cause irreparable injury to [Best Western], a [m]ember or [m]embers, or the public." (PSOAF ¶ 7 n.11.)

date of the hearing. (*Id*. ¶ 8.) Alternatively, a member may submit a written response to the Board within fifteen days before the meeting wherein cancellation will be considered by the Board. (*Id*. ¶ 9.) Once notice of a final a decision has been mailed to a member, the member may request a rehearing. (*Id*. ¶ 10.) Best Western has satisfied the requirements of A.R.S. § 10-3621 by (1) requiring written notice within 15 days before cancellation and an opportunity for the member to be heard at least five days before cancellation, ***and/or*** (2) making its process "fair and reasonable taking into consideration all of the relevant facts and circumstances."

Defendants incorrectly contend that § 10-3621 applies to an individual Board decision, rather than the procedure established to make that decision. Subsection A requires a procedure to be established for cancellation of memberships: "no membership or memberships in such a corporation may be terminated or suspended, except pursuant to ***a procedure*** that is set forth in the articles of incorporation, bylaws or an agreement between the member and the corporation or a ***procedure*** that is otherwise appropriate." (Emphasis added). Subsection B then sets forth the qualities/characteristics that make a cancellation procedure appropriate:

> B.    For purposes of subsection A, ***a procedure*** is otherwise appropriate if ***either***:
>
> 1.    The following are provided:
>
> (a) A written notice at least fifteen days before the expulsion, suspension or termination and the reasons therefor.
>
> (b) An opportunity for the member to be heard, orally or in writing, at least five days before the effective date of the expulsion, suspension or termination by a person or persons authorized to decide that the proposed expulsion,

>       termination or suspension should
>       not take place.
>
>   2.   It is fair and reasonable taking into consideration all of the relevant facts and circumstances.

(Emphasis added).  Section 10-3621 does not apply to a specific cancellation decision. Defendants have not claimed, alleged, or argued that they were denied the procedural benefits set forth in the Bylaws.  Nor have Defendants sought a declaration that the procedural benefits set forth in the Bylaws are unlawful per A.R.S. § 10-3621.  This Court should not grant Defendants' Motion based on § 10-3621.

**C.   Best Western Had No Obligation to Conditionally Extend Defendants' Membership**

Without ever pleading that Best Western was obligated to conditionally extend Defendants' membership (*see supra* at 2), Defendants incorrectly claim that the Bylaws obligated Best Western to do so.  Defendants ignore the distinction between Bylaws Art. II, § 7(A)(7) and Art. II, § 8, and omit any reference and/or analysis of Art. II, § 8. The failure to address Art. II, § 8 is fatal to Defendants attempt to meet their summary judgment burden.  Defendants cannot be permitted to claim in their reply that Best Western did not comply with Bylaws Art. II, § 8.  *See Mink v. State*, CV09-2582-PHX-DGC, Dkt. # 42 at 8 n.2, 2010 U.S. Dist. LEXIS 29307 (D. Ariz. Mar. 26, 2010) (stating that the Court will not consider arguments raised for the first time in a reply brief, and citing *Delgadillo v. Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008)).

Bylaws Art. II, § 8 establishes the procedure for cancellation of a membership by Board action. (PSOAF ¶ 4.)  Article II, § 8 and Best Western's Rules and Regulations ("Rules and Regulations") afford a member whose membership is subject to cancellation written notice and opportunities to show cause why his or her membership should not be cancelled.  (*Id.* ¶¶ 5, 9.)  When considering whether to cancel a membership for failure to adhere to Best Western's quality standards, the Board may cancel the membership or grant a conditional extension that imposes additional

requirements upon the membership. (*Id*. ¶ 11.) The Bylaws, Membership Application and Agreement (the "Membership Agreement"), Rules and Regulations, (the Membership Agreement, Bylaws, and Rules and Regulations collectively, the "Governing Documents"), do not mandate the grant of a conditional extension to any member that fails to adhere to Best Western's quality standards. (*Id*. ¶ 12.)[3]

If the Board grants a conditional extension of membership, which it did not in this case, the membership may be conditioned upon additional requirements imposed upon the member beyond those imposed by the Governing Documents. (*Id*. ¶ 14.) Bylaws Art. II, § 7(A)(7) is only triggered when a member whose membership has been conditionally extended, fails to meet one of conditions of continued membership. (*Id*. ¶ 15.)  Article II, § 7(A)(7) provides that a conditional membership is ***automatically*** cancelled in the event a member violates a term or condition previously imposed upon a conditional extension previously granted in lieu of cancellation. (*Id*. ¶ 16 (emphasis added).) Bylaws Art. II, § 8 is not applicable when a member fails to meet a condition imposed by the Board in granting a conditional extension. (*Id*. ¶ 17.) Bylaws Art. II, § 7(A)(7) and Art. II, § 8 are mutually exclusive provisions of the Governing Documents.

In this case, Defendants membership was subject to cancellation pursuant to the Governing Documents due to Defendants' receipt of two Guest Room and Public Area ("GRPA") inspection scores less than 800 points on two consecutive inspections on October 25, 2007 (performed by Best Western Regional Service Manager ("RSM") Mitch Van Wormer ("Van Wormer")) and January 31, 2008 (performed by Best Western RSM Cynthia Bree ("Bree")). (*Id*. ¶ 18.) Defendants' membership was therefore subject to cancellation by Board action pursuant to Bylaws Art. II, § 8, ***not Art. II, § 7(A)(7)***. (*Id*. ¶ 19 (emphasis added).) Defendants' cancellation was not automatic. (*Id*. ¶ 20.) The Board, acting within its authority, cancelled Defendants' membership based upon its proper consideration of relevant facts - deciding not to grant

---

[3]   To the extent Defendants claim Members' Bill of Rights ¶ 12 requires the grant of a conditional extension, Defendants are mistaken. Paragraph 12 states that Best Western may restrict services provided to conditional members. (PSOAF ¶ 13.)

a conditional extension (which it had no obligation to do). (*Id*. ¶ 21.) Bylaws Art. II, § 7(A)(7) never applied in this case; Article II, § 8 is the applicable provision. Defendants' failure to apply the correct provision of the Bylaws is sufficient reason for the Court to conclude that Defendants failed to meet their summary judgment burden.

**D.     Bona Fide Grounds Existed to Cancel Defendants' Membership**

The Governing Documents provide that Defendants' membership was subject to cancellation due to receipt of two GRPA inspection scores of less than 800 points on two consecutive inspections. (*Id*. ¶ 18.) After timely written notice and a hearing, the Board cancelled Defendants' membership. (*Id*. ¶ 21.) Defendants incorrectly suggest that Best Western did not have good cause to cancel Defendants' membership because the point losses resulted from subjective decisions.

There is no dispute that the conditions leading to the point losses of the two inspections existed. In response to discovery, Defendants claimed that the inspections were "capricious" and that Van Wormer, took points off for items previously approved. (*Id*. ¶ 22.) In supplementing their response, Defendants claimed that previously approved items resulted in deductions on the October 25, 2007 inspection, but made no similar claim with respect to the January 31, 2008 inspection performed by Bree. (*Id*. ¶ 23.) In response to interrogatories expressly requesting Defendants to "[i]dentify each and every fact that Defendants rely upon to allege that any inspection score was unjustly issued or given by Best Western with respect to the Hotel,"[4] Defendants disclosed no evidence that the January 31, 2008 inspection score was unjustly issued. (*Id*. ¶ 24.)

Testimony of the Hotel's employees present at the inspections differed from Defendants' discovery responses. The Hotel's Head Housekeeper, Lina Eseltine ("Eseltine"), who was present for each of the two failing inspections, as well as many of the Hotel's previous inspections, testified that Van Wormer's inspections were consistent and that he deducted points whenever he identified a problem. (*Id*. ¶ 25.)

---

[4]     As used in this response, the term "Hotel" means the property formerly known as the Best Western Antelope Valley Inn, located in Lancaster, California and referenced in Best Western's records as property T-05050.

The Hotel's General Manager, Cheryl Duggan ("Duggan"), who also observed several inspections performed by Van Wormer, testified that Van Wormer would not overlook problems, and that he would deduct points for deficiencies he saw. (*Id*. ¶ 26.) The existence of the conditions leading to the failing scores is undisputed. Eseltine verified the existence of numerous physical conditions giving rise to each of the failing scores. (*Id*. ¶ 27.) Harooni also verified the existence of numerous physical conditions leading to point deductions. (*Id*. ¶ 28.) Defendants cannot contest the consistency of the inspections or the existence of the conditions leading to the point deductions.

Defendants question the decisions of Van Wormer or Bree to deduct points based upon a subjective/objective distinction. (*See* Defs'. Mot. at 6-8.) The subjective/objective distinction, however, has no relevance or legal significance absent evidence of bad faith committed by Van Wormer and/or Bree. As this Court has previously stated in the context of a cancellation of a Best Western membership, "[t]he fact that Defendants strongly disagree with [Best Western]'s decision does not constitute evidence that Best Western acted in bad faith." *Best W. Int'l, Inc. v. Sharda, LLC*, CV-08-1219-PHX-DGC Dkt. # 34 at 5, 2008 U.S. Dist. LEXIS 66536 (D. Ariz. Aug. 20, 2008). Subjective decision-making is not per se unlawful. *Cf. Turner v. Pub. Serv. Co.*, 563 F.3d 1136, 1145 (10th Cir. 2009) (observing that in the employment context, subjectivity is a characteristic of "any interview-based selection process," citation omitted); *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1187 (7th Cir. 1996) (observing that subjective decision-making authorized by a contract is only limited by an obligation to act in good faith). In the context of the implied covenant of good faith and fair dealing, the Arizona Supreme Court has expressly held as follows:

> The good faith performance doctrine may be said to permit the exercise of discretion for any purpose--including ordinary business purposes--reasonably within the contemplation of the parties. A contract thus would be breached by a failure to perform in good faith if a party uses its discretion for a reason outside the contemplated range--a reason beyond the risks assumed by the party claiming a breach.

*Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 492 ¶ 66, 38 P.3d 12, 30 (2002) (citations omitted). The true question for this Court to decide, and which is addressed *infra* at 13-17, is whether Defendants have offered any evidence that Best Western inspectors and/or the Board acted in bad faith.[5]  In the absence of such evidence, Defendants' subjective characterization of the decisions made by the Best Western inspectors and Board is insufficient to meet Defendants' summary judgment burden.

Defendants' citation to *Bronx Auto Mall, Inc. v. American Honda Motor Co.*, 934 F. Supp. 596 (S.D.N.Y. 1996) ("*Bronx Auto Mall*"), offers little guidance.  In *Bronx Auto Mall*, the question was whether American Honda Motor Company could legally require a distributor to make certain renovations to its dealership facilities.  Defendants have not raised a similar issue in this case.  The statute at issue in *Bronx Auto Mall* applied to requests for "substantial renovations" whereas A.R.S. § 10-3621, incorrectly relied upon by Defendants, relates to established procedures for termination of a non-profit organization's member.  There is no link whatsoever between *Bronx Auto Mall* and this case.  Similarly, Defendants' citation to a statement in a concurring opinion in *Boddie v. Connecticut*, 401 U.S. 371 (1971), regarding the subjective legal question of whether a right is one "of the very essences of a scheme of ordered liberty" when deciding whether a fee for a divorce was constitutional is also misplaced.  Neither *Bronx Auto Mall* nor *Boddie* help Defendants.

**C.  Defendants Did Not Have a Reasonable Expectation that Best Western Would Not Cancel Defendants' Membership Based upon Decisions Made by Best Western's Inspectors[6]**

---

[5]   Defendants cite paragraph 48 of Defendants Separate Statement of Facts (Dkt. # 60) ("DSSOF") for the propositions that Van Wormer testified that subjective criteria are unfair, and that Loyd Nygaard testified that all areas except brand standards are subjective. (Defs.' Mot. at 7.)  DSSOF ¶ 48 contains no such alleged facts.

[6]   Defendants raise the subjective/objective issue in the context of Defendants' expectations.  The subjective/objective issue is meaningless absent evidence of bad faith. (*See supra* 7-11.)  Defendants again allege that Best Western was obligated to conditionally extend Defendants' membership.  Best Western has no obligation to conditionally extend a membership that has failed its last two assessments. (*See supra* 5-7.)

Defendants received the Governing Documents before executing the Membership Agreement. (PSOAF ¶ 29). Defendants were members of Best Western for more than two years before the two inspections took place that resulted in cancellation. (*Id*. ¶ 30). During those two years, Defendants experienced five other inspections prior to the last two inspections. (*Id*. ¶ 31). The Governing Documents unambiguously state that once a hotel receives two inspection scores less than 800, that hotel's membership may be cancelled by the Board. (*Id*. ¶ 18). Defendants' claim to have had no expectation that their membership could be cancelled for failing two consecutive inspections is unreasonable and contrary to the Governing Documents.

Defendants' Motion claims that the Governing Documents led Harooni to believe only objective criteria applied to inspections. Yet, in DSSOF ¶ 9, Defendants admit that the Governing Documents contain numerous quality standards that are not purely objective. Most importantly, despite having offered the Declaration of Harooni to the Court (Dkt. # 59-3 at 1-3), ***Harooni does not make even a single declaration regarding his expectations with respect to the assessment standards***. Defendants instead offer the comments of their counsel regarding Harooni's expectations, factual issues of which she has no personal first-hand knowledge. Such comments are not appropriate for summary judgment purposes or consideration by the Court.

Defendants suggest that promises allegedly made by Terry Wininger ("Wininger"), Best Western District Manager, affected Defendants' expectations regarding quality assessment decisions. Nevertheless, Defendants offer no evidence of any link between such allegations and no explanation as to why Defendants would expect that cancellation of their membership was not possible based upon poor inspection scores. Defendants do not demonstrate any conflict between the alleged promises and the Governing Documents with respect to quality assessments.

Defendants fail to demonstrate how the law of reasonable expectations affords Defendants any relief. Accordingly, Defendants have not met their summary judgment

1  burden, and cannot be allowed to attempt to do so in their reply brief.  *See Mink*, CV09-
2  2582-PHX-DGC, Dkt. # 42 at 8 n.2, 2010 U.S. Dist. LEXIS 29307.

3  **D.     Best Western Cannot be Held Liable for Breach of Fiduciary Duty**

4  Harooni has not pled a breach of fiduciary duty claim and Defendants have not
5  pled a fiduciary duty affirmative defense. (PSOAF ¶ 1.) Defendants cannot now claim
6  that Best Western breached a fiduciary duty, and the Court cannot grant summary
7  judgment that Best Western breached a fiduciary duty.  (*See supra* at 2.)

8  Best Western did not have a fiduciary duty to Defendants.  The Membership
9  Agreement expressly states that the relationship between Best Western and Defendants
10 is an independent contractor relationship.  "A commercial contract creates a fiduciary
11 relationship ***only when one party agrees to serve in a fiduciary capacity***."  *Urias v.*
12 *PCS Health Sys.*, 211 Ariz. 81, 87 ¶ 32, 118 P.3d 29, 35 (App. 2005) (emphasis added).
13 When an agreement such as the Membership Agreement expressly states that the
14 relationship is one of independent contractor, no fiduciary relationship is created.  *Id*.
15 As a matter of law, Best Western has no fiduciary relationship with Defendants.

16 Defendants' do not identify how Best Western allegedly breached its purported
17 fiduciary duty.  Defendants cannot prevail on summary judgment on a breach of
18 fiduciary duty claim without demonstrating that Best Western was in a fiduciary
19 relationship and "did something" to breach its duty.  Defendants have not met their
20 summary judgment burden with respect to their fiduciary duty argument, and cannot be
21 allowed to attempt to do so in their reply.  *See Mink*, CV09-2582-PHX-DGC, Dkt. # 42
22 at 8 n.2, 2010 U.S. Dist. LEXIS 29307.

23 **E.     Judgment in Favor of Best Western Does Not Cause a Forfeiture**

24 Despite not pleading forfeiture as an affirmative defense, or claim for relief (*see*
25 *supra* at 2), Defendants claim that the cancellation results in forfeiture, but do not
26 identify what or what amounts were or will be forfeited.  According to Black's Law
27 Dictionary, forfeiture includes (1) "[t]he divesture of property without compensation"
28 and (2) "[t]he loss of a right, privilege, or property because of a crime, breach of

obligation, or neglect of duty."  Black's Law Dictionary at 296-97 (3d Pocket Ed. 2006).  In the context of *Glad Tidings Church of America v. Hinckley*, 71 Ariz. 306, 226 P.2d 1016 (1951),[7] and *Call v. Timber Lakes Corp.*, 567 P.2d 1108 (Utah 1977), cited by Defendants, forfeiture related to the loss of monthly installment payments and/or down payment made by a purchaser of real property for the purchaser's failure to pay the remainder of the purchase price when it became due.

To the extent Defendants claim that the purchase price paid for the Hotel, or the investments therein were forfeited, Defendants claim is incorrect.  Regardless of whether Defendants' membership was cancelled, the Hotel and its improvements did not vanish and Best Western makes no claim to recover such items.  To the extent Defendants claim that amounts already paid to Best Western were forfeited, Defendants ignore that while they were Best Western members Defendants received the benefits of membership, i.e. rights to use the Best Western name, marks, reservation system, etc.  To the extent Defendants claim that the unpaid balance owed to Best Western constitutes a forfeiture, Defendants are mistaken.  Defendants may claim in their reply, which they should not be permitted to do, *see Mink*, CV09-2582-PHX-DGC, Dkt. # 42 at 8 n.2, 2010 U.S. Dist. LEXIS 29307, that they cannot be held liable to Best Western for charges, fees, dues, and/or assessments imposed after Defendants' membership was cancelled.[8]  The Bylaws provide, however, that "[a]ny member may resign from [Best Western] at any time but if the Member resigns or is terminated, fees and dues for ***the remainder of the fiscal year*** will become immediately due and payable."  (PSOAF ¶ 32 (emphasis added).)  Best Western establishes dues and fees to cover costs of providing services to members based upon an annual budget that assumed Defendants would be

---

[7] Defendants also cite the dissenting opinion of *Nash v. Craigco, Inc.*, 585 P.2d 775 (Utah 1978), without so designating their citation to a dissenting opinion. (Defs.' Mot. at 11-12.)  The *Nash* dissenting opinion offers no substantive guidance on the forfeiture issue. Defendants also cite *Consumers Int'l v. Sysco Corp.*, 191 Ariz. 32, 951 P.2d 897 (App. 1997), but that case does not mention forfeiture.

[8] Many of the amounts Best Western seeks to recover from Defendants listed on Dkt. # 1-2 are for goods and services received by Defendants before cancellation.  (PSOAF ¶ 34.)

members of Best Western throughout the 2008 fiscal year. (*Id*. ¶ 33.) Accordingly, a member that fails to pay for the entire fiscal year results in an shortfall that damages Best Western and the membership as a whole. Accordingly, the unpaid amounts do not result in an unlawful forfeiture. *See Gary Outdoor Advertising Co. v. Sun Lodge*, 133 Ariz. 240, 244, 650 P.2d 1222, 1226 (1982) (observing that proof of actual damages eliminates the possibility of forfeiture).

### F.     Best Western Did Not Act in Bad Faith

Defendants cite a plethora of cases in support of its "bad faith" argument, many of which have no application to this case, e.g., cases that interpret and apply nonbinding, non-Arizona law. Best Western does not contest that the covenant of good faith and faith fair dealing is implied in the Governing Documents and applies to the Board's decision to cancel a membership. For example, the Board cannot cancel a membership because of a member's race, gender, height, weight, etc. The Governing Documents and the implied covenant of good faith and fair dealing do permit the Board to cancel a membership when a member fails to adhere to Best Western's quality standards. *See, e.g., Best W. Int'l, Inc.*, CV-08-1219-PHX-DGC Dkt. # 34 at 5, 2008 U.S. Dist. LEXIS 66536. Not one of the cases Defendants cite holds otherwise. The question for this Court to decide is whether Defendants have offered any evidence that the Best Western inspectors and/or Board acted in bad faith. *See id.; Consumers Int'l v. Sysco Corp.*, 191 Ariz. 32, 38, 951 P.2d 897, 903 (App. 1997*)* (holding that "absent any evidence of bad faith or violation of public policy in enforcing the termination clause, we conclude that [defendant] was entitled to summary judgment in its favor on the wrongful termination claim").

Defendants take a shotgun approach, throwing as many facts as possible at the Court in hopes that the Court finds one or more of the facts legally significant for summary judgment purposes. Nevertheless, as demonstrated in PRDSSOF, such facts are either (1) not properly supported by Defendants, (2) not legally relevant or material, and/or (3) properly disputed by Best Western.

Defendants claim that Best Western misused the inspection process. (Defs.' Mot. at 13.) Defendants offer no evidence, however, how the inspection process was misused or even unfair. (*See generally* PRDSSOF.) Defendants fail to meet their summary judgment burden that Best Western misused the inspection process.

Defendants claim that Best Western failed to provide services allegedly promised to Defendants. (Defs.' Mot. at 13.) All of the services available to all Best Western members were available to Defendants. (PSOAF ¶ 35.) The alleged promises were nothing more than descriptions of the services available to all Best Western members. (*Id*. ¶ 36.) When asked to identify the terms of the alleged oral promises, Harooni could only testify in vague indefinite terms. (*Id*. ¶ 37.) Kamyar Refoua, Harooni's assistant, who was present at the initial meeting between Harooni and Best Western, testified that Wininger explained the services "[v]ery vaguely" stating that Wininger was simply explaining the services Best Western offered members, "[it] was not specific for us," but rather "service they provided to all the members." (*Id*. ¶ 38.) Moreover, the Membership Agreement contained an integration clause stating that the Membership Agreement "embodies the whole agreement of the parties," that "[t]here are no promises, terms, conditions or obligations other than those contained herein," and that the Membership Agreement "shall supersede all previous communications, representations, or agreements, either verbal or written, between the parties hereto." (*Id*. ¶ 39.) Defendants claim that Best Western broke its promises is contrary to the evidence in the record that promises existed, or that Best Western broke such promises.

Defendants imply that Best Western canceled Defendants' membership without cause. (Defs.' Mot. at 13.) Defendants offer no evidence that Best Western lacked cause to cancel Defendants' membership. (*See generally* PRDSSOF.) Best Western cancelled Defendants' membership for cause and in compliance with the Governing Documents and implied covenant of good faith and fair dealing. (*Supra* 7-9.)

Defendants claim that Best Western failed to inform Defendants of limitations placed upon its ability to provide services. (Defs.' Mot. at 14.) Defendants offer no

1  evidence to prove such an allegation (*see generally* PRDSSOF), and fail to meet their
2  summary judgment burden.

3  Defendants claim that the objective/subjective distinction warrants a fining of
4  bad faith. (Defs.' Mot. at 14.) As established *supra* at 7-9, Defendants' argument fails
5  without actual evidence of bad faith.

6  Defendants claim Best Western had an obligation to grant a conditional
7  extension. (Defs.' Mot. at 14.) As established *supra* at 5-7, Best Western had no
8  obligation to grant Defendants a conditional extension of their membership. Defendants
9  fail to meet their summary judgment burden.

10  Defendants claim Best Western considered Harooni's proposal to downsize in
11  deciding to cancel Defendants' membership. (Defs.' Mot. at 14.) Van Wormer and
12  Bree certify that Defendants' proposal to reduce the size of the Hotel did not affect their
13  assessments of the Hotel. (PSOAF ¶ 40.) Defendants' offer no evidence that the
14  proposed reduction in size was a concern for Best Western. (*See generally* PRDSSOF.)
15  Such allegations cannot support entry of summary judgment in favor of Defendants.

16  Defendants claim that Best Western considered Harooni's Parkinson's in
17  deciding to cancel Defendants' membership. (Defs.' Mot. at 14.) Best Western was
18  aware of Harooni's health issues before he even became a member of Best Western.
19  (PSOAF ¶¶ 41.) Van Wormer and Bree certify that Harooni's health condition did not
20  affect their assessments of the Hotel. (*Id*. ¶ 42.) Defendants have identified no
21  evidence to suggest that Van Wormer, Bree, and/or the Board considered Harooni's
22  health condition as a factor to be considered in deducting points and/or cancelling
23  Defendants' membership. (*Id*. ¶ 43.) Defendants' suggestion that Harooni's health was
24  an issue of concern for Best Western without any evidence supporting such an
25  allegation cannot support entry of summary judgment in favor of either Defendant.

26  Defendants may suggest that Best Western (1) issued substandard inspection
27  scores and (2) terminated Defendants membership because Defendants listed the Hotel
28  for sale, and then ask this Court to infer that because a substandard inspection score

1  and/or cancellation may require a purchaser of the Hotel to pay Best Western more to
2  maintain the membership, Best Western was motivated to issue substandard inspection
3  scores and/or cancel Defendants' membership.  Best Western became aware that the
4  Hotel had been listed for sale in April of 2007 (PRDSSOF ¶ 38).  Duggan and Eseltine
5  both agreed that Van Wormer assessed the Hotel consistently and always deducted
6  points when he found problems.  (PSOAF ¶¶ 25-26.)  Van Wormer, who performed all
7  of the inspections except the January 31, 2008 inspection, certifies that the fact that
8  Hotel had been listed for sale (1) did not change or alter the way he performed his
9  inspections of the Hotel and (2) did not result in more point deductions as compared to
10 prior inspections.  (*Id*. ¶ 44.)  Bree, the Best Western inspector who performed the
11 January 31, 2008 inspection, testified that she was not even aware that the Hotel was for
12 sale at the time of her inspection, and certifies under penalty of perjury that the fact that
13 the Hotel had been listed for sale (1) did not change or alter the way she performed her
14 inspection of the Hotel and (2) did not result more point deductions as compared to her
15 prior inspections of other hotels.  (*Id*. ¶ 45.)  Finally, Loyd Nygaard, Best Western
16 Managing Director of Regional Services, testified at his deposition that inspection
17 procedures are not "changed or altered in any way when a hotel is put on the market for
18 sale and potential transfer to another owner."  (*Id*. ¶ 46.)  Defendants fail to meet their
19 burden of persuasion to demonstrate any link between the low inspection scores and the
20 proposed sale of the Hotel.  At a minimum, a genuine issue of material fact exists that
21 precludes summary judgment on this issue.

22         Defendants presented no evidence that the alleged inquires of the Board at the
23 hearing about the sale of the Hotel constituted bad faith.  Questions about the status of
24 the sale of the Hotel are benign questions regarding the future of the Hotel.  While
25 Defendants argue that such inquiries inferentially demonstrate bad faith, it is equally
26 likely that such inquires demonstrate the Board's good faith in assessing all of the
27 circumstances related to the status of the Hotel.  Under the summary judgment
28 standards, all inferences are to be viewed in favor of the non-moving party.  *Matsushita*

1  *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).  Defendants fail to
2  meet their burden of persuasion to demonstrate any link between the Board's decision
3  and its inquiries about the status of the sale of the Hotel.  At a minimum, a genuine issue
4  of material fact exists that would preclude summary judgment on this issue.

5  Defendants claim that the Hotel's AAA rating and moneys spent in renovations
6  are relevant to the condition of the Hotel on the date of the inspections leading to
7  Defendants' cancellation.  Yet, Defendants offer no explanation or description of any
8  correlation between AAA rating, moneys spent in renovations, and the actual condition
9  of the Hotel, including its cleanliness, on the date of the inspections.  Defendants do not
10 explain to the Court what factors are considered in AAA rating or what renovations
11 were made to the Hotel that would preclude a poor inspection score.  Defendants'
12 simply have not met their summary judgment burden, and should not be permitted to
13 raise such issues in their reply brief.  *See Mink*, CV09-2582-PHX-DGC, Dkt. # 42 at 8
14 n.2, 2010 U.S. Dist. LEXIS 29307.  The Court should deny Defendants' Motion.

15 **G.    Harooni cannot prove damages**

16 As raised and extensively briefed in Plaintiff's Motion for Summary Judgment
17 (Dkt. # 57), Harooni's counterclaim fails because he cannot demonstrate or offer any
18 evidence that he incurred damages.  *See Graham v. Asbury*, 112 Ariz. 184, 185, 540
19 P.2d 656, 656 (1975) (observing that the elements of a breach of contract claim are (1)
20 existence of a contract, (2) breach of that contract, and (3) damages); *United Dairymen*
21 *of Ariz. v. Schugg*, 212 Ariz. 133, 139 ¶ 21, 128 P.3d 756, 762 (App. 2006) (holding that
22 a claim for breach of the covenant of good faith and fair dealing fails absent proof of
23 damages).  Defendants' Motion and supporting statement of facts contain no relevant,
24 admissible evidence of Harooni's damages.  Harooni cannot prevail on his
25 counterclaim, and cannot meet his summary judgment burden.

26 **CONCLUSION**

27 Based upon the foregoing, Best Western requests that the Court deny
28 Defendants' Motion for Summary Judgment.

1    **DATED** this 27th day of April 2010.

2                                    SHERMAN & HOWARD L.L.C.

3

4                                    By /s/ David W. Garbarino
                                        Arthur W. Pederson
                                        David W. Garbarino
5                                       2800 North Central Avenue, Suite 1100
                                        Phoenix, AZ 85004-1043
6                                       Attorneys for Plaintiff

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2010, the foregoing was electronically transmitted to the Clerk's Office of the U.S. District Court for the District of Arizona using the CM/ECF System for filing and service upon the following individual via email:

Kira A. Schlesinger
The Schlesinger Conrad Law firm
11811 N. Tatum Blvd., Ste. 3037
Phoenix, AZ 85028
kira@schlesingerconrad.com

/s/ David W. Garbarino