

Kira A. Schlesinger (State Bar No. 023450)
**THE SCHLESINGER CONRAD LAW FIRM**
11811 N. Tatum Blvd., Ste. 3037
Phoenix, Arizona 85028
Tel: 602-615-6013
Fax: 602-441-5302
E-Mail: Kira@SchlesingerConrad.com

*Attorney for Defendant/Counterclaimant*
*Hooshang Harooni, and Defendant AV Inn Associates 1, LLC*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BEST WESTERN INTERNATIONAL, INC.<br><br>Plaintiff,<br><br>v.<br><br>HOOSHANG HAROONI AND AV INN ASSOCIATES 1, LLC,<br><br>Defendants.<br><br>And Related Counterclaim | No. CV 08 - 2274 - PHX-DGC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO BEST WESTERN'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Filed concurrently with:<br>- Controverting Separate Statement of Facts;] |

Defendants/Counterclaimant hereby respectfully submit this Memorandum of Points and Authorities in Opposition to Best Western's Motion for Summary Judgment:

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. **INTRODUCTION**

Since the agreement was signed in 2004, Best Western has consistently been on notice that the hotel that is the subject of this action was principally a venture by Hooshang Harooni but operated through business entities.[1] Mr. Harooni has at all times been the responsible party, and the party that has been damaged by the actions of Best Western. The

---

[1] Mr. Harooni disputes that Best Western is properly regarded as a "non-profit membership" rather than a franchise. However, for purposes of this motion only, it will be referred to as such. Further, Mr. Harooni



wrongful termination of the agreement forced Mr. Harooni to dissolve the business entities that he had set up to handle the complex operations of the hotel.  The losses of those business entities, both as a matter of law and as a matter of fact, were suffered personally by Mr. Harooni.  To the degree that the business entities would otherwise have been the real parties in interest, Mr. Harooni, as the principal for each entity, is now the representative of those interests.   Alternatively, Rule 19 permits amending to allow the real parties in interest to proceed. As such, Best Western's central argument fails.

Before and after the agreement was signed, Best Western promised services and support.  The representations are specific and confirmed by uncontroverted evidence. Moreover, because these clear representations were inducement to enter into the contract with Best Western, and were affirmed after the contract was signed, the integration clause does not relieve Best Western for its breach of the agreement.  Mr. Harooni reasonably relied upon those representations and Best Western's failure to provide them after affirmation constitutes breach of contract.  There is no contention that the promised services were for Mr. Harooni, alone.    Best Western has not, and cannot, contend that the fees at issue in this case were solely for the use of the Best Western standard. *See SSCF,* § II, ¶ 70. Best Western wrongfully terminated the agreement, frustrated the purpose of the contract, and engaged in litigation tactics to prevent Mr. Harooni from pursuing legitimate claims. The factual support for these and the following arguments are set forth in the concurrently filed Separate Statement of Controverting Facts, and is incorporated herein.

II.   ARGUMENT

A. <u>Application of the Appropriate Summary Judgment Standard Mandates Denial of Best Western's Motion</u>

It is black letter law that the party moving for summary judgment bears the burden of showing that there is no material issue of fact for trial.  *See, e.g.,* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

---

believes that California law should govern as subject matter is most closely related to California.

1  242, 255 (1986). "The evidence of the non-movant is to be believed, and all justifiable
2  inferences are to be drawn in his favor." *Id.*
3     Here, Best Western argues that Mr. Harooni cannot show damages. That is
4  inaccurate; Best Western has all underlying documents, has acknowledged through
5  discovery and deposition that money invested into the hotel that came from Mr. Harooni's
6  personal accounts. Moreover, as will be demonstrated, losses of the corporation pass
7  through to Mr. Harooni. Mr. Harooni can, and has, substantiated that he personally suffered
8  damages. The amount is a question of fact. Even if breach of contract damages are
9  limited by the agreement - which is disputed here - bad faith damages are not. Best Western
10 wrongfully terminated the agreement, failed to provide services promised and reaffirmed,
11 and failed to honor the conditional extension provision in its own contract. Best Western
12 cannot prevail on summary judgment.
13     B.   **Mr. Harooni's Damages are Adequately Shown as a Matter of Law**
14     Mr. Harooni personally suffered losses as a result of the corporation's losses, both
15 through direct investment, loans and pass-through losses. Losses suffered by a closely held
16 subchapter S Corporation such as AV Operations Group, Inc. are passed through to Mr.
17 Harooni as the shareholder. *See* 26 USCS § 1366; *SSCF,* § I, ¶ 19. They are personal
18 damages.
19     AV Operations Group, Inc. was a subchapter S corporation ("S Corp") organized
20 under the laws of the State of California. *Id.* Shareholders in an S corporation are taxed on
21 their share of the S corporation's income regardless of whether the corporation makes any
22 distributions. *Heller v. Franchise Tax Bd*., 21 Cal. App. 4th 1730, 1734 (Cal. Ct. App. 1994)
23 (citing 2 Plant & Eager, CAL. TAXATION (2d ed. 1993) § 45.40, at p. IV-1704.2.); *see also*
24 BITTKER & EUSTICE, FEDERAL INCOME TAXATION OF CORPORATIONS AND SHAREHOLDERS
25 (5th ed. 1987) P 6.08, p. 6-25.)). As with income, losses from an S Corp are also passed
26 through to the individual shareholder. 26 USCS § 1366; *Durando v. United States*, 70 F.3d
27 548, 550 (9th Cir. 1995). For all relevant purposes, "S Corps" are essentially like
28 partnerships: income is passed through to the shareholders, who report their pro rata shares

on their individual income tax returns. *Durando, supra.* (citing I.R.C. §§ 1363(a), 1366(a), 1371(a)(1)). There is, and can be, no dispute that the losses of a partnership would be considered the partners' losses. 26 USCS § 465. As reflected on the tax returns and documents produced in this case, Mr. Harooni's losses are properly measured by the losses of the corporation.

Best Western argues that "Harooni cannot demonstrate that ***he*** incurred any damages. Instead, Harooni appears to claim he is entitled to recover damages allegedly incurred by two separate independent corporate entities, neither of which has a counterclaim pending against Best Western in this case." *See Motion for Summary Judgment,* Dkt. 57, 7:1-5. As stated above, for accounting purposes and as to losses, the corporation is not a "separate independent corporate entity." *See Durando, supra;* 26 USCS § 465. Election as an S corporation enables the corporation to be treated essentially as a non-taxable pass-through entity allowing each shareholder to report as part of his or her gross income the shareholder's pro rata share of the corporation's income, losses, deductions, and credits, regardless whether the corporate net income is actually distributed to the shareholders. *See* 26 U.S.C. § 1366 (1995); *accord* A.R.S. § 43-1126(A) and (B).

The case of *U.S. v. Bishop*, 291 F.3d 1100, 1105 (9th Cir. 2002), is instructive as to the handling of profit and loss in a closely held corporation. In that case the court noted that "profits and losses passed through to the shareholders without first being taxed to the corporation. It was undisputed at trial that: (1) some S-corporations commonly designate interim payments to their shareholders as "officer loans" until the end of an accounting period because the classification of profit and loss is uncertain, (2) an S corporation shareholder who is at personal risk may apply the corporate loss against compensation on his or her personal tax return, and (3) an at-risk shareholder may carry losses forward or back to other tax years as may be appropriate under existing regulations." *Id.; see* also 26 U.S.C.A. §§ 1371 *et seq.*, 1372(e), (e)(1, 3). The case of *Durando, supra,* 70 F.3d at 550, is in accord. In that case, the Court stated that "[a]n S corporation is a small business

1  corporation . . . Although treated like ordinary 'C' corporations in many respects, S
2  corporations are taxed like partnerships." *Id.* (citing I.R.C. §§ 1363(a), 1366(a), 1371(a)(1)).
3    Here, AV Operations Group, Inc. was an S corporation. *See SSCF,* § I, ¶ 19.
4  Therefore, the profits and losses passed through to the only shareholder: Hooshang Harooni.
5  Accordingly, Mr. Harooni has standing to assert the corporate losses as his personal losses.
6  Moreover, should Best Western succeed on this argument, it would obtain a windfall. The
7  losses are Mr. Harooni's, the corporation is dissolved, and the harm inflicted by Best
8  Western fell on its voting member, Mr. Hooshang Harooni.
9    In asserting that there is no evidence regarding damages incurred by Mr. Harooni,
10 Best Western chooses to overlook the testimony of its own expert, John Gorman. Mr.
11 Gorman testified that there is no clear delineation between the entities, AV Inn Associates I,
12 LLC, AV Operations Group, Inc., and Harry Harooni. *SSCF,* § I, ¶ 17. Importantly, Mr.
13 Gorman stated clearly that the $2,000,000 in renovations performed by Mr. Harooni was not
14 attributed to either business entity in the accountings. *Id.* The reason is simple: Mr.
15 Harooni financed those amounts himself. *See Declaration of Harry Harooni, supra; See*
16 *also Declaration of Scott Evans, attached hereto as Exhibit 3.* This is consistent with Mr.
17 Gorman's testimony that there was at least $1.1 million not accounted for by the various tax
18 returns for AV Inn Associates 1, LLC and AV Operations Group, Inc. *SSCF,* § I, ¶¶ 5, 18.
19 Of particular note, Best Western's expert, John Gorman, made no effort to determine where
20 the $2 million was spent, or to which entity it was properly credited. *See SSCF,* § I, ¶ 5,
21 *supra.* Further, Best Western has admitted that it was aware that Mr. Harooni put
22 approximately $ 2 million into the hotel. Indeed, Terry Wininger stated that she knew that
23 some of that money was spent before Best Western embarked on its five-year mission to
24 elevate the standards for Best Western hotels. *SSCF,* § I, ¶ 12. This comports with Mr.
25 Harooni's testimony that he invested cash into the hotel. *SSCF,* § I, ¶ 5. Under these
26 circumstances, there may be a question as to the amount of damages that Mr. Harooni
27 personally incurred, but there is no question that he can show personal losses sufficient to
28

proceed with his counterclaim. Accordingly, Best Western's central argument fails as a matter of law.

### 1. **Mr. Harooni has a Right to Bring the Counterclaim Individually**

It is well-established that where the individual has suffered an individual loss, no derivative suit is required. *See Denevi v. LGCC, LLC,* 121 Cal. App. 4th 1211, 1221 (2004) (one who has suffered injury both as an owner of a corporate entity and in an individual capacity is entitled to pursue remedies in both capacities); *see also Albers v. Edelson Tech. Partners, L.P.,* 201 Ariz. 47, 52 (Ariz. Ct. App. 2001) (citations omitted). In the case of *Denevi,* the court considered whether the plaintiff had a right to bring a direct suit on claims of fraud against defendants. The shareholder plaintiff brought an individual action having already brought a separate derivative action. *Id.* at 1216. Defendants moved for summary judgment alleging, *inter alia,* that the individual suit represented an attempt at double recovery. The trial court agreed that the plaintiff could not sue in his personal capacity. *Id.*

On appeal the court found that the loss to the corporation was neither necessary nor sufficient to show the losses to plaintiff individually. *Id.* at 1219. "In the absence of a cogent demonstration to the contrary, we must presume that each claimant was entitled to pursue his or its own remedies, even if the underlying rights to relief arose from a single act or course of conduct on the part of defendants." *Id.* Citing to *Jones v. H. F. Ahmanson & Co.*, 1 Cal. 3d 93, 107 (Cal. 1969), the court found that the individual wrong necessary to support a suit by a shareholder need not be unique to that plaintiff. The same injury may affect a substantial number of shareholders. "If the injury is not incidental to an injury to the corporation, an individual cause of action exists." *Id.* at 1221. The *Denevi* defendants' argument that the plaintiff's ownership interest in a limited liability company somehow magically erased the harm that plaintiff suffered personally was untenable. Such ownership "cannot categorically bar [plaintiff's] personal claim for damages for that harm." *Id.* at 1223. Accordingly, the individual claims were permitted to go forward.

Of note, the court in *Denevi* also noted that a primary reason for a derivative suit is to prevent successive litigation with potentially contradictory results. *Id.* In that case,

1  defendants had resisted the ability of plaintiff to join the individual and derivative cases.
2  Therefore, the appellate court found that "any harm flowing from their successive
3  prosecution is attributable directly to defendants, who successfully resisted plaintiff's
4  repeated efforts to present all claims in a single proceeding. Defendants cannot now be
5  heard to insist that plaintiff be barred from the courthouse to shield them from the natural
6  consequences of their own litigation strategy." *Id.* at 1222.  Indeed, the orders necessitating
7  separate actions were only made at defendants' instance.  Therefore, Defendants were
8  estopped from arguing that a separate action could not go forward.  *Id.*
9       A similar situation exists in this case.  First, Mr. Harooni is not barred from pursuing
10 an action for his individual losses.  Those losses are readily calculated from the
11 documentation produced during discovery.  *SSCF, e.g., ¶ 5, supra, including the*
12 *Declaration of Scott Evans; Declaration of Azia-Lavi.*  Moreover, the counterclaim by the
13 limited liability company was specifically cut off when Defendant's argued that no such
14 claim should be permitted. Best Western's "Motion for Clarification" makes it clear that
15 there was some confusion as to the parties that had a viable counterclaim. (Dkt. 37).  In
16 truth, Best Western had already answered the counterclaim by AV Inn Associates, LLC.
17 (Dkt. 24).    Therefore, Best Western's legal tactics should not be permitted to now bar Mr.
18 Harooni his personal claims.
19      There is, and can be, no real dispute that Mr. Harooni had a personal relationship
20 with Best Western.  Best Western is suing Mr. Harooni for more than $75,000.  He was the
21 voting member at the hotel, as well as the controlling shareholder and managing member.
22 Best Western's citation to *Schroeder v. Hudgins*, 142 Ariz.  395, 690 P.2d 114 (App. 1984)
23 is, therefore, easily distinguished.  In fact, that case specifically states that "[t]o obtain a
24 personal right of action, there must be relations between the individual and the tortfeasor
25 independent of those which the shareholder derives through his interest in the corporate
26 assets and business." *Schroeder* 142 Ariz. at 398.  Best Western chooses to ignore the fact
27 that the plaintiff in *Schroder,* unlike Mr. Harooni in this case, did not have that personal
28 relationship with defendant.  The plaintiff in that case was a guarantor of a loan, but had no

The Schlesinger Conrad Law Firm

relationship with the third party defendant. *Id.* (appellant was an attempted assignee of a legal malpractice claim and guarantor of a third party loan). Clearly, that case in inapposite to the facts at issue here.

Equally unavailing is Best Western's citation to *Hidalgo v. McCauley,* 50 Ariz. 178, 182-183, 70 P.2d 443, 445 (1937). That case specifically sets forth the premise that where the defendant set out to damage the corporation, the individual shareholder has no personal cause of action when the right that is invaded is "trespass upon or conversion of the corporation's property." *Id.* at 183. First, Best Western dealt with Mr. Harooni, personally. Second, the line of cases following from *Hidalgo* make it clear that every claim of damage to a corporation is not necessarily reserved solely to the corporation:

> Generally, a stockholder may not maintain an action in his own behalf for a wrong done by a third person to the corporation **on the theory that such wrong devalued his stock** and the stock of the other shareholders, for **such an action would authorize multitudinous litigation** and ignore the corporate entity. . . . But 'if the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, **as where the action is based on a contract to which he is a party**, **or on a right belonging severally to him,** or on a fraud affecting him directly, **it is an individual action**. . . . And **a stockholder may sue as an individual where he is directly and individually injured although the corporation may also have a cause of action for the same wrong.**
> *Funk v. Spalding*, 74 Ariz. 219, 223 (Ariz. 1952) (emphasis added).

Here, Mr. Harooni was a party to the contract, and the damage felt by Best Western's actions falls squarely on Mr. Harooni in the same manner it would have been felt by the S corporation. *See* 1 Willis et al., PARTNERSHIP TAXATION (4th ed. 1993) § 2.03, p. 2-8 ["[t]he most noteworthy aspect of S corporations is the pass-through characteristic they share with partnerships, under which the character of income, deduction, loss, and credit passes through unchanged to the shareholders of S corporations"); *see also  SSCF,* § I, ¶ 19. Further, Best Western is suing Mr. Harooni for joint and several liability on the contract, which clearly evidences that Mr. Harooni is personally damaged by the conduct of Best Western. He has lost almost everything, including the business entities, his credit and millions of dollars that he personally spent on the hotel. That loss is reflected in the tax returns and by affidavit. *See SSCF,* § I, ¶ 5. Therefore, Best Western's argument that there

**1**  is no personal right to Mr. Harooni's counterclaim fails as a matter of law.  At a minimum,

**2**  the extent of losses suffered by Mr. Harooni is a question of fact inappropriate for

**3**  determination on summary judgment.

**4**     2.  **No Attempted Transfer Terminated the Agreement**

**5**  Best Western argues that the agreement was terminated due to Mr. Harooni's use of

**6**  business entities to operate the hotel.  In the first instance, this novel theory has not been

**7**  asserted or disclosed previously.  More importantly, however, if Best Western failed to

**8**  provide consent for such a transfer, the transfer would be void as a matter of law.  *See, e.g.,*

**9**  *Cibran Enters. v. BP Prods. N. Am., Inc.,* 365 F. Supp. 2d 1241, 1251 (S.D. Fla. 2005).

**10** The case of *Cibran* is very similar to the facts here.  In that case, Mr. Cibran entered

**11** into a transaction with BP for petroleum.  BP continued to raise its prices on gas until Mr.

**12** Cibran was unable to compete in the local market.  When he incurred several charges due to

**13** insufficient funds, BP sought to cancel the agreement.  On summary judgment, BP argued,

**14** *inter alia,* that Mr. Cibran had no standing to claim because of an attempted transfer of the

**15** business interests from Mr. Cibran individually to his closely held corporation, Cibran, Inc.

**16** The contract prohibited any transfer without approval by BP.   After noting that contract

**17** rights can generally be assigned, the court rejected BP's claim that Mr. Cibran could not

**18** enforce the agreement.  The attempted transfer was ineffective due to BP's lack of consent

**19** to that transfer.  *Id.* (citing *New Holland, Inc. v. Trunk*, 579 So. 2d 215, 217 (Fla. 5th DCA

**20** 1991)).

**21** After finding that the transfer was ineffective, the court permitted a substitution of

**22** parties in the case that had been filed solely in the name of the corporation.  In so doing, the

**23** court recognized that the Federal Rules of Civil Procedure provide:

**24**
**25**
**26**
**27**
> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest. *Id.* at  1251 (citing FRCP 17(a)).

**28** The court went on to find that where "[t]he complaint's only pertinent flaw was the

1  identity of the party pursuing those claims, substitution of parties is appropriate." *Id.* at
2  1252 (citing *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir.
3  1997) (internal quotes omitted)).  Specifically, the court stated that "Mr. Cibran should be
4  allowed to join the suit as a party-plaintiff because the pertinent flaw in Cibran's Verified
5  Second Amended Complaint (as it pertains to this issue) is merely the identity of the party
6  pursuing the claims." *Id.*

7  *Cibran* demonstrates at least two distinct points that are applicable to this case: (1)
8  Best Western cannot argue that Mr. Harooni breached the agreement due to any purported
9  transfer of interests to his corporations because without Best Western's approval, such
10 transfers would be ineffective; and (2) to the degree that any transfer to AV Operations
11 Group, Inc. is deemed effective, any viable corporation would be properly substituted in as
12 the real party in interest.  Further, even if substitution is not deemed appropriate, assignment
13 makes Mr. Harooni the real party in interest.[2]  *See, e.g.,* CA Corp. Code § 2100, *et seq.*
14 Accordingly, assignment of the causes of action to Mr. Harooni obviates any need for a
15 claim in the name of the business entities.

16              3.  **Mr. Harooni is Entitled to Represent the Dissolved Corporations**

17       Best Western overlooks the fact that Mr. Harooni is the proper party to bring the
18 claims that would have been AV Inn's were that limited liability corporation still viable. The
19 Secretary of State records reflect a cancellation has been filed, and the company has not
20 been viable since October 2009.  "There is no doubt that upon termination of the corporate
21 existence by dissolution and while the statutory trustees are in charge for the purpose of
22 winding up the corporate business, a shareholder in the defunct corporation may commence
23 and maintain suit upon a claim of that corporation." *Castner v. First Nat'l Bank*, 278 F.2d

---

[2] The corporation/third-party beneficiary is dissolved.  Mr. Harooni is the successor and/or representative of the corporation.  A corporate shell is not an indispensable, or even a proper, party to an action. *See, e.g.,* Avlon v. 829-31 Restaurant Corp., 1993 U.S. Dist. LEXIS 14043 (D.N.Y. 1993).  Moreover, under Federal Rule of Civil Procedure 19, if this Court believes that the corporation is the real party in interest, then the Court has the power to determine that AV Operations Group, Inc. is a proper counterclaimant and amend the pleadings.

376, 382 (9th Cir. 1960).  This is the law in Arizona and, more specifically, it is the law in California where the company was domiciled.  *See Thomas v. Harper*, 481 P.2d 510, 511 (Ariz. Ct. App. 1971) ("on dissolution the legal title to the property of the corporation passes to the stockholders subject to payment of the debts of the corporation") (citing *Gardiner v. Automatic Arms Co.,;* 275 F. 697 (N.D. N.Y. 1921; 19 C.J.S. CORPORATIONS § 1730, p. 1489, *et seq*); *Cf. Capuccio v. Caire*, 189 Cal. 514, 519-520 (Cal. 1922) (""It is plain, in view of our decisions, that upon the death of this corporation . . . those who were its stockholders at the time of its death were <u>immediately</u> vested with the right to have its affairs settled . . . . Such former stockholders immediately became the beneficiaries of a statutory trust created solely for that purpose" (emphasis added)).

Section 2001 of the California Corporations Code sets forth the powers and duties of directors and officers in relation to dissolved corporations.  Specifically, that section states that the director or officer is empowered to "carry out contracts and collect, pay, compromise and settle debts and claims for or against the corporation."  He is further authorized to "defend suits brought against the corporation."  *Id.* at 2001(d).   A chose in action, therefore, is a claim that transfers to the director.  *Id.*

Here, because the companies were dissolved following Best Western's bad faith termination of the membership agreement, Mr. Harooni is the appropriate representative for the companies.  As acknowledged by Best Western, Mr. Harooni stands as the only shareholder for the corporation and the managing member of the limited liability company. Therefore, the claims asserted by Mr. Harooni appropriately include the sums due to the corporation and limited liability company.

### 4.  The LLC and Harooni are Considered a Single Entity

Best Western makes much of the allegedly separate nature of AV Inn and Mr. Harooni.  However, the analysis is flawed and, because Mr. Harooni is the principal member of the LLC, they are actually considered a single entity.  Mr. Harooni was managing member of the LLC.  *See SSCF,* § I, ¶ 21.

Current tax regulations allow a limited liability company that is properly formed under state law to be taxed as a partnership without regard its corporate characteristics. This tax treatment allows an LLC to operate as informally and flexibly as a partnership, and still possess all the structural advantages of a corporation in terms of limited liability, centralized management, continuity of life, and free transferability of interests. *See* Matthew Bender & Company, Inc., 1-2 TAX PLANNING FOR PARTNERS, PARTNERSHIPS, AND LLCS § 2.02. "If the sole member is an individual, the venture is taxed as a sole proprietorship (*i.e.*, the entity is disregarded)." *Id.* Here, Mr. Harooni is the sole member of the LLC. Therefore, the venture is disregarded. For all practical purposes, Mr. Harooni *is* AV Inn.

This is outcome also supported by the general notions of conversions of a business entity into another form. For example, in *C & J Builders & Remodelers, LLC v. Geisenheimer*, 249 Conn. 415, 421 (Conn. 1999), the court found that "upon conversion of a general or limited partnership to a limited liability company, 'all property owned by the converting general or limited partnership remains vested in the converted entity . . . [and] . . . all obligations of the converting general or limited partnership continue as obligations of the converted entity . . . .'" *Id.* Thus, all of the converting partnership's property and obligations are transferred to the newly converted entity by operation of law. The new entity is, in effect, the "successor in interest" to the converted business. *Id.*; *see also Rosenfeld, Meyer & Susman v. Cohen*, 146 Cal. App. 3d 200, 217, 194 Cal. Rptr. 180 (1983).

A similar analysis applies to the dissolved corporation of AV Operations. As discussed above, where a corporation is dissolved, the sole shareholder is the identity that is responsible for winding up the business. Indeed, every item of loss claimed by AV Operations would be considered part of a joint, consolidated return by AV Operations and Mr. Harooni because the operation of the property at issue in this litigation was by and between Mr. Harooni and the two companies. Inasmuch as Mr. Harooni is the sole member of the affiliated group, the profits and losses, including the claims against Best Western,

would be part of a consolidated return. *See American Pacific Whaling Co. v. Commissioner*, 74 F.2d 613, 616 (9th Cir. 1935). Therefore, in this case, there is no proper entity to pursue the claims against Best Western except Mr. Harooni, the sole shareholder of the corporation. To the degree that the business entities suffered losses, under the circumstances of this case losses are recoverable by Mr. Harooni, and no other.

### C. Best Western's Claims are Barred

#### 1. **Best Western Materially Breached the Contract**

Mr. Harooni is not obligated to Best Western under its contract because Best Western materially and wrongfully breached the terms of the contract. First, the contract does not allow for termination without cause. *SSCF,* § II, ¶ 15. That provision is consistent with California Franchise Relations Act ("CFRA"), which states that a franchisee may not terminate a franchise except for good cause. See Cal. Bus. & Prof. Code ("B&P") § 20020 ("[N]o franchisor may terminate a franchise prior to the expiration of its term, except for good cause."). That Best Western is, in fact, a franchise rather than a "non-profit membership," cannot seriously be debated. *See SSOF,* Exhibit 17 (Total assets of Best Western in 2007 equaled $89,774,162); *see also* B&P § 20001, *et seq.* Whether good cause exists to terminate a contract is a matter of fact not appropriate for summary judgment.

A trier of fact reviewing all evidence in this case will find that there was no good cause to terminate the agreement. Regardless of which law is followed, the contract at issue required "impartial, standardized and nondiscriminatory inspection procedures." *SSCF,* ¶ 16. It further required the "fair application" of the rules and bylaws. *Id.* The contract also required that Best Western provide a conditional membership in lieu of termination. *Id.: see also* Bylaws, Art. II, § 7(A)(7); *see Defendant's/Counterclaimant's Motion for Summary Judgment, incorporated by reference.*

In this case, there was no good cause for termination. Wrongful termination, coupled with the failure to provide specific services promised to Mr. Harooni and referenced in the agreement are most assuredly material because the hotel owner was deprived of the essence of the contract - his right to be a Best Western hotel. Indeed, Best Western's breach led

1  directly to the forfeiture of the right vested in Mr. Harooni.  The law abhors forfeitures.
2  *See, e.g., Nasir v. Sacramento County Off. of the Dist. Atty.*, 11 Cal. App. 4th 976, 986 (Cal.
3  Ct. App. 1992).

4        This stands in stark contrast to the case cited by Best Western, *Best Western Int.'l v.
5  Sharda,* 2009 U.S. Dist. LEXIS 52502 (D. Ariz. June 22, 2009).  First, in *Sharda,* this Court
6  was forced to rule solely on Best Western's Motion for Summary Judgment as counsel for
7  Sharda did not file a sufficient response to the Motion for Summary Judgment.  *Id.* at *16.
8  Best Western, therefore, was never put to the test of whether they had "good cause" to
9  terminate the membership of defendants in that case, and forfeiture of membership after
10 failure to defend was not unreasonable.  Second, the finding that the Best Western rules
11 allow for point losses is only the most general of premises; it says nothing about the
12 egregiously subjective inspections that go into the point loss in this case.  *Def.'s SSOF, e.g.,*
13 ¶ 56. Mr. Harooni has demonstrated that the problem in this case is not his "strong
14 disagreement" with the inspections, but rather the change in Best Western's standards after
15 he had invested millions of dollars.  Best Western did not even inform Mr. Harooni of the
16 changed standards, but rather hid behind its point system.  *SSCF, ¶* 53, *supra.*

17       Unlike the defendants in *Sharda,* the subjective nature of the inspections clearly
18 makes the difference in this case.  The point total in *Sharda* was allegedly 273.   *Id.* at 14.
19 Even had the inspector not been subjective, as was clear in this case, the hotel at issue there
20 undoubtedly had significant problems.  Here, the point score averaged 796 - just a few
21 points away from what Best Western considers a "passing score."  *See Def.'s SSOF,* ¶ 55.
22 Further, Mr. Harooni had his designs approved by Best Western, purchased furniture
23 through Best Western and/or at their direction, and he spent millions renovating the hotel.
24 There was no question it was better than it had been before his purchase.  Moreover, Mr.
25 Harooni told Best Western that he was running out of money, and the failure to ever resolve
26 the problem with the reservation system could have made the difference.  *Def's SSOF,* ¶ 36.

27       Best Western's discussion that certain aspects of the hotel that could have been better
28 misses the point.  No one is arguing the hotel was perfect.  That does not change the fact

that it was Best Western's conduct (including the new five-year plan to upgrade hotels to a point not contemplated by the parties at the inception of the contract) that led to the wrongful termination.  That plan was not in place when Mr. Harooni purchased the hotel, and it was never explained to him. *SSCF,* § I, ¶ 12; *see also Def.'s SSOF,* ¶ 56.  Although Mr. Harooni was willing to do everything demanded by the action plan that Best Western created, it simply was not enough.  *SSCF,* § I, ¶ 15.  Finally, Best Western failed to abide by the contract and grant the conditional membership in lieu of termination as required.

These issues were not under consideration in the *Sharda* case, and therefore, that case should have no bearing here.  Indeed, defendants in that case made no answer whatsoever, much less ever raised the grave concern of a Board of Directors that make admittedly arbitrary termination decisions.  In this case, Best Western materially breached the contract and, in so doing, frustrated any purpose of the agreement.  Mr. Harooni had no further obligation to pay membership fees when his membership had been wrongly terminated.

### 2. **The Integration Clause Does Not Preclude Additional Evidence**

The Court has a duty to "attempt to enforce [the] contract according to the parties' intent."  Intent is determined by interpreting the contract. *Ervco, Inc. v. Texaco Ref. & Mktg.*, 422 F. Supp. 2d 1084, 1087 (D. Ariz. 2006) (citing *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 854 P.2d 1134, 1138 (Ariz. 1993).  Arizona adheres to the "Corbin approach," which allows the court to look at extrinsic evidence to determine the intent of the parties without a preliminary finding of ambiguity.  *Id.*  Best Western's argument that the integration clause shields it from its misrepresentations to Mr. Harooni also fails because (1) the representations were inducement to enter the agreement; (2) the representations were repeated after the contract was signed; (3) the representations are not contrary to the written contract (and in fact are in accord with it); and (4) Mr. Harooni clearly pleaded fraud in the inducement.[3]  The cases cited by Best Western demonstrate the error in Best Western's

---

[3] Mr. Harooni filed the counterclaim *in pro per,* and as this Court well knows, prior counsel failed to file an amendment during the time permitted by the court to do so.  The Court should look to the of the complaint

1 reasoning.  For example, in *Pinnacle Peak Developers v. TRW Inv. Corp.*, 129 Ariz. 385
2 (App. 1980), the court stated that "the application of the parol evidence rule moved along a
3 continuum based on the extent of the contradiction, the relative strength and sophistication
4 of the parties, and their negotiations." *Id.*
5   In this case the intent of the parties regarding services and assistance to Mr. Harooni
6 is well-established.  Not only does Terry Wininger admit that she made representations to
7 Mr. Harooni regarding the availability of services prior to his signing the contract, she
8 acknowledges that these representations would be made to all prospective owners.  The
9 contract itself states that services including reservation systems, marketing services and the
10 like are available to members. *See* Membership Agreement re reservations systems; Bylaws,
11 Members Bill of Rights, No. 12 (member has the right to receive Best Western Services). It
12 is equally clear based upon the deposition testimony and the history of the parties'
13 relationship that services were not tendered.  In fact, the "services" were a ruse to charge
14 members additional fees, *e.g.,* design fees and additional advertising fees.  Thus, the
15 integration clause is, at best, ambiguous.  Parol evidence most assuredly is available to
16 prove the extent and scope of the services promised both by Wininger and within the
17 "Governing Documents." The counterclaim makes it clear that the promise of services was
18 inducement to enter the contract such that consideration lies.  Moreover, Best Western
19 makes much of its alleged status as a "non-profit membership" and asserts that its main
20 function is to provide services for all of its members.  Under these circumstances, it cannot
21 be heard to claim that there was no consideration for the very services membership entails.
22 This is particularly true because Best Western invoices for numerous alleged services,
23 including advertising, design and regional service managers. *See Complaint, Ex. 2.*  In any
24 event, the extent of promised services, as referenced in the documents, is a question of fact
25 for a jury as the evidence clearly shows some services were promised and not provided.

---

27 and not penalize Mr. Harooni for an lack of specific title.  The Counterclaim states:"Plaintiff induced me to purchase the franchise through falsehood and failed to perform all the promised services." *Counterclaim,* ¶
28 3.

### 3. **The Reasonable Expectations Doctrine and Equitable Estoppel Apply**

In Arizona, it is well established that where the bargaining power of two contracting parties is significantly unequal, the more sophisticated of the two drafts a contract that is a contract of adhesion and extremely one-sided, and the representatives of the drafting party make representations that are calculated to induce reliance, the doctrines of reasonable expectations and equitable estoppel prevent enforcement of boilerplate terms. *See Darner Motor Sales v. Universal Underwriters Ins. Co.,* 140 Ariz. 383 (Ariz. 1984).

Here, all of the requirements set forth in *Darner* are present. The contract was drafted by Best Western, and it is extremely one-sided. For example, it purports to limit the hotel owner's recovery to the membership fees, while providing that Best Western "shall have the right to invoke any remedy at law or in equity" and asserts that its remedies are cumulative." *See Membership Agreement,* ¶ 30. Terms such as the alleged obligation to continue paying assessments for the calendar year are buried deep in the Bylaws (Art. II, § 5), were not highlighted and are oppressive. Such terms contradict the basic notion that a member is paying for advertising and other services while he is the owner of the hotel and, ostensibly, a part of the membership cooperative claimed to be Best Western's structure. Likewise, Best Western had every reason to know that if the services were not promised and if Mr. Harooni had understood that he would be arbitrarily terminated based upon subjective inspections, he would not have entered into the deal. He stated plainly, and Ms. Wininger recorded, the fact that this was Mr. Harooni's first venture into hotels, and that his two proposed partners backed out. He clearly stated his concerns and relied upon Best Western's promised assistance. *See SSOF, Ex. 15 (KANA Log); see also Declaration of Hooshang Harooni, SSOF, Ex. 2.* Reliance on services promised by Best Western was far more than "the fervent hope usually engendered by loss." *Darner Motor Sales*, 140 Ariz. at 390. Rather, it was the reasonable expectation induced by Best Western, its personnel and its documents. The documents cannot now permit Best Western to trample its member's rights.



The Schlesinger Conrad Law Firm

### D. *The Asserted "Motion to Strike the Testimony of Mr. Aziz-Lavi" is Without Merit and is Ill-Timed*

The argument that Mr. Aziz-Lavi should have disclosed prior testimony fails because the Rule only requires that expert testimony for the past four years be disclosed. *See* Fed Rules Civ Proc R 26.  The last case in which Mr. Aziz-Lavi testified was in the unpublished case of *Embroidery Indus. v. LCI Laundry*, 2003 Cal. App. Unpub. LEXIS 3547 (California Unpublished Opinions 2003).  As a case from 2003, there was no requirement to disclose the matter.  Further, Mr. Aziz-Lavi stated that he was unsure when the last time he was deposed may have been, and that he did not keep any record of that event.  *SSCF,* §I, ¶ 29.  Mr. Aziz-Lavi stated that he is a certified public accountant and that he reviewed the documentation related to the case. *See Aziz-Lavi Report, Dkt. 36.*  Mr. Aziz-Lavi also testified to his many years of experience in accounting and his work with clients in purchasing real estate. *SSCF*, §I, ¶ 30.  Mr. Aziz-Lavi testified that he did not have a current curriculum vitae, and had not prepared one in years. *Id.*   The Rule does not require a curriculum vitae, only information regarding the qualifications to testify as an expert.

Here, Mr. Aziz-Lavi is fully qualified as an expert, but has simply not testified recently.  *SSCF,* § I, ¶¶ 30-31.  This is despite the fact that Best Western questioned Mr. Aziz-Lavi at length regarding any prior testimony and the role he may have played in prior litigation.  *SSCF,* § I, ¶ 33.  Best Western makes no argument that they have been prejudiced by the alleged failure to disclose Mr. Aziz-Lavi's.  Where no prejudice is shown, procedural rules are "be interpreted to maximize the likelihood of a decision on the merits". *Aguirre v. Robert Forrest, P.A.*, 186 Ariz. 393, 396 (App. 1996).  Even had such a showing been made, the Court would have great latitude in permitting last disclosure.[4] *Id.*  Without prejudice, and after a full deposition regarding Mr. Aziz-Lavi's conclusions and qualifications, Best Western's argument regarding exclusion must fail.  This is particularly

---

[4] Best Western's citations militate in favor of permitting a supplemental disclosure and/or additional deposition to avoid any prejudice.  *Pell v. E.I. Dupont De Nemours & Co.*, 231 F.R.D. 186, 188 (D. Del. 2005) (reversed in part on other grounds, 539 F.3d 292 (2008) (noting that when district court's exclusionary evidentiary rulings result in a summary or directed judgment the Court of Appeals gives rulings "a 'hard look'").

true since there is no real evidence beyond a faulty memory for dates that Mr. Aziz-Lavi testified in any case such as to have triggered a list of prior testimony.

### III.   CONCLUSION

Best Western dealt so harshly with Mr. Harooni that he ended up losing millions he had personally invested, as well as losing his corporation and the limited liability company. Mr. Harooni filed a counterclaim in good faith seeking redress for these wrongs. Mr. Harooni has demonstrated that Best Western misrepresented its standards and induced him into an agreement that was one-sided and onerous. Best Western's conduct was contrary to his understanding that Best Western would provide services and help him. Best Western claimed to be a "non-profit membership," and Mr. Harooni believed that it was acting for its members interests. The documents and personnel told him services would be provided, inspections would be fair and that a conditional extension would be issued before termination. Best Western ensured Mr. Harooni did not have a counterclaim; it cannot now be heard to say that he does not have a claim. Best Western's Motion for Summary Judgment should be denied.

Dated: April 28, 2010                              THE SCHLESINGER CONRAD LAW FIRM

By: /s/ *Kira A. Schlesinger*
Kira A. Schlesinger
Attorney for Defendant/Counterclaimant
*Hooshang Harooni* and Defendant *AV Inn Associates I, LLC*

### CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of April 2010, I caused to be transmitted by the CM/ECF e-file system a true and correct copy of the foregoing **Opposition to Best Western's Motion for Summary Judgment** to counsel registered as filers on that system. To the best of my knowledge, no additional parties require notification.

By _____/s/ Kira Schlesinger_____