The Schlesinger Conrad Law Firm

Kira A. Schlesinger (State Bar No. 023450)
**THE SCHLESINGER CONRAD LAW FIRM**
11811 N. Tatum Blvd., Ste. 3031
Phoenix, Arizona 85028
Tel: 602-615-6013
Fax: 602-441-5302
E-Mail: Kira@SchlesingerConrad.com

*Attorney for Defendant/Counterclaimant*
*Hooshang Harooni, and*
*Defendant AV Inn Associates 1, LLC*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BEST WESTERN INTERNATIONAL, INC. | No.  CV 08 - 2274 - PHX-DGC |
| Plaintiff, | |
| v. | DEFENDANTS'/COUNTERCLAIMANT'S REPLY TO BEST WESTERN'S OPPOSITION TO DEFENDANTS/COUNTERCLAIMANT'S MOTION FOR SUMMARY JUDGMENT |
| HOOSHANG  HAROONI AND AV INN ASSOCIATES 1, LLC, | |
| Defendants. | **ORAL ARGUMENT REQUESTED** |
| And Related Counterclaim | |

Defendants Hooshang Harooni and AV Inn Associates 1, LLC and

Counterclaimant Hooshang Harooni (collectively "Harooni"), hereby reply to Best

Western's Opposition to Harooni's motion for summary judgment:

I.      **SUMMARY OF ARGUMENT IN REPLY**

Simply put, there were no fair or *bona fide* reasons to cancel Mr. Harooni's

membership in Best Western.  The undsiputed evidence shows that hotel was far better

than it had been under the prior owner, yet the prior owner's membership was never

cancelled.  The services and promises made by Best Western throughout the course of

dealing, including both before and after the agreement was signed, demonstrate that Best

Western breached the agreements.  Moreover, the promises and services were relied upon

by Mr. Harooni.  The Members Bill of Rights and Article II of the Bylaws state that

The Schlesinger Conrad Law Firm

membership will not be cancelled until after a conditional membership is granted.  At best, the provisions are ambiguous and should be construed against Best Western.  Indeed, the term "automatic" is not even defined in the Definitions set forth at the beginning of the Bylaws. *See Bylaws,* (Dkt. 59-3, pg. 9).  Moreover, because the provisions were not applied fairly, and because there was no *bona fide* opportunity to be heard, the "process" for cancellation was not adhered to by Best Western.  While the outcome was wrong, there is an equal argument that the process was a sham because the hearing is inextricably a part of that process.  This is particularly true because the "process" consisted of fifteen minutes, without representation, to a Board of Directors who then acted on their own, undisclosed whims.  Such a hearing cannot override the spirit and the letter of the statute.  Further, the statute merely codifies what case law and Best Western's own documents purport to require: a fair and reasonable opportunity to preserve the hotel membership.  Best Western cannot be heard to complaint that the statute under which it claims to operate is incorporated into its contract.[1]

Best Western had an agenda to eliminate older hotels from its program in order to bolster its flagging reputation.  That agenda was never communicated to Mr. Harooni, much less communicated to him before he spent millions of dollars bringing the hotel up to the standard that Best Western initially told him was required.  Then, after following Best Western's directives, including purchasing furniture from its recommended vendor, Best Western changed the game plan.  Its five-year mission caused Best Western to drive Mr. Harooni from membership. This is bad faith, and the subjective nature of the inspections and an illusory opportunity to be heard does not change that.  Indeed, subjective standards are specifically disallowed under the Member's Bill of Rights.  These prohibited, subjective inspections evidence the larger truth that Best Western acted with improper motive to deprive Mr. Harooni of the benefit of his bargain.   Best Western acted in bad faith, and Best Western has at all times been aware of this claim by Mr. Harooni.

---

[1] Moreover, the issue was not raised for the first time in a reply brief, as Best Western now implies.

The Schlesinger Conrad Law Firm

1    Best Western's argument that there was no consideration for the promised services

2    is without merit.  First, Mr. Harooni is not arguing that he was promised services beyond

3    those that are represented as available to all members.  The promises that Mr. Harooni

4    relied upon were made by Terry Wininger and are referred to in the asserted governing

5    documents.  Best Western's arguments to the contrary miss the mark, and are a blatant

6    attempt to muddle the issues.  Indeed, because the promised services were relied upon and

7    not provided, Best Western's argument regarding consideration and the integration clause

8    are inapplicable to this dispute.

9    Best Western's argument that Bylaw Article II(7)(A) does not confirm that a

10   conditional extension should be granted is specious.  The relevant section states that a

11   membership will cancel automatically where "[A] term or condition is not met, **after the**

12   **Board, having provided a Member with an opportunity for a hearing**, has found

13   grounds exist for cancellation of the Membership and the Member has been granted a

14   conditional extension in lieu of cancellation." *Id.  (emphasis added).*  The language in this

15   section that states  *after an opportunity for a hearing* would be superfluous if, as Best

16   Western contends, this section only applied to those situations where a membership could

17   cancel automatically without a hearing, *e.g.,* where insurance lapses.  The only conclusion

18   is that this section confirms the language in the Members Bill of Rights, and a conditional

19   extension was required under the Bylaws.  As no such extension was granted, Best

20   Western is in breach of its own processes.

21   In arguing that Article II, Section 8 is "fatal" to Mr. Harooni's position, Best

22   Western errs.  That section states only that Best Western would have the power to

23   terminate a membership. Mr. Harooni does not dispute that, under the proper

24   circumstances not applicable here, a membership could be terminated. Further, Best

25   Western ignores the fact that Section 8 also states that in order to invoke subsection B, the

26   Board must comply with its procedures, including a hearing.  Any argument that asserts

27   that Section 8 controls, ignores the language of Section 7, Subsection 7 referencing a

28   hearing, and also ignores the Member's Bill of Rights.  Where a contract is ambiguous, it

1  must be construed to do justice to all language.  Here, with language that would be

2  superfluous under the reading advocated by Best Western, the totality of the contract must

3  be interpreted to require that a conditional membership be granted, and that termination

4  for cause must be preceded by a fair hearing.  As will be demonstrated, a hearing that does

5  not provide a *bona fide* opportunity to be heard cannot satisfy the process requirement

6  required of A.R.S. § 10-3621.

7          The argument that Best Western's inspectors consistently flagged problem areas is

8  irrelevant.  No one claims that the hotel was perfect.  The argument overlooks the fact,

9  established by Best Western's own employees,[2] that Best Western changed the criteria by

10  which a hotel was judged.  This was in furtherance of its five-year plan instituted after Mr.

11  Harooni purchased his hotel, and after he spent well over a million dollars on renovations.

12  Holding Mr. Harooni to changed criteria under these circumstances explains the reason

13  that the scores on his hotel suddenly went down despite there being no evidence

14  whatsoever that the actual condition of the hotel had deteriorated.  To terminate Mr.

15  Harooni's membership without even giving him the opportunity he had requested to

16  comply with the new standards is bad faith as it deprives him of the core value of the hotel

17  membership.  It is this that works a forfeiture of the membership, and any argument that

18  Mr. Harooni is claiming an unjust forfeiture of the purchase price of the hotel is simply a

19  red-herring.

20          Mr. Harooni has discharged his burden by showing there is an absence of evidence

21  to support the Best Westerns' termination of the contract.  *See Celotex Corp. v. Catrett*,

22  477 U.S. 317, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  Best Western, in fact, has

23  not seriously argued, much less supported, its contention that the hotel was not far

24  superior to the condition prior to Mr. Harooni's purchase.  Such failure is determinative.

25

26  [2] The Deposition of Cindy Bree was inadvertently omitted from the hectic filing of the moving papers. A
copy is included with the Opposition to Best Western's Motion for Summary Judgment, but it is admittedly

27  a poor copy.  Best Western cannot claim any prejudice from counsel's inadvertent omission of that
deposition since they have at all times been in possession of that deposition.  With apologies, the

28  deposition is submitted with this Reply for the Court's reference.

The Schlesinger Conrad Law Firm

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2515, 91 L. Ed. 2d 202 (1986).  Conversely, Mr. Harooni has shown through his counterclaim, declaration and pleadings[3] that he had a reasonable expectation that Best Western would deal fairly and assist him.  There can be no real dispute that the tenor of all documents submitted is that Best Western unfairly utilized the subjective inspections to deprive him of his hotel without just cause for doing so.  An additional statement in his declaration would not add to that repeatedly articulated position.  There is no requirement that a party plead every theory to support his causes of action.  That does not change the validity and application of the reasonable expectations doctrine here.  All of the elements are met, and Mr. Harooni has demonstrated that Best Western breached its duty of good faith and fair dealing by wrongfully, arbitrarily and without a good faith basis depriving him of the membership.

## II.    BEST WESTERN HAS HAD A FULL OPPORTUNITY TO "VENTILATE THE ISSUES" AND CANNOT DEPRIVE BEST WESTERN OF THE RIGHT TO PROVIDE FURTHER ELUCIDATION ON REPLY

Ostentatiously citing *Mink v. State,* CV 09-2582-PHX-DGC, 2010 U.S. District Lexis 29307 (D. Ariz. Mar. 26, 2010), not less than three times in its Opposition, Best Western argues repeatedly that Mr. Harooni cannot respond to arguments noted by Best Western in its opposition.  First, neither *Mink* nor any case cited therein goes as far as Best Western would have the Court go in curtailing Mr. Harooni's opportunity to reply.  In fact, in *Mink,* the Court allowed the plaintiff to amend his complaint.  Further, as this Court knows, Mr. Harooni sought assistance of Mr. Philip Nathanson to add a counterclaim, but that was never technically done.  Best Western did, however, file an answer to that counterclaim as asserted by both Mr. Harooni and AV Inn Associates 1, LLC.  Under these circumstances, good cause exists to all Mr. Harooni to either amend or conform his

---

[3] Mr. Harooni filed his complaint *in pro per,* and that counterclaim was executed on May 4, 2009 by Mr. Harooni.  Under Rule 11 of the Rules of Civil Procedure that signature attests to the truth of the statements contained therein.  Therefore, Best Western's claim that Mr. Harooni has not declared that he was under the belief that Best Western would treat him fairly notwithstanding the unclear language of the boilerplate contract terms overlooks the statements in the counterclaim.  It also ignores Paragraphs 6 and 7 of the

The Schlesinger Conrad Law Firm

1  pleadings to the proof.  Moreover, it is pellucid that Mr. Harooni has raised the relevant

2  arguments in his moving papers, or Best Western would not be asserting contradicting

3  arguments.

4      For example, Best Western argues that Mr. Harooni should be precluded from

5  arguing that Best Western's bad faith and wholly arbitrary inspections led to the

6  termination of his membership as evidenced by the simultaneous upgrading by AAA even

7  while Best Western was working to terminate Mr. Harooni's membership.  However,

8  clearly since Best Western has submitted argument on this point, it cannot simultaneously

9  allege that it would be prejudiced by any additional relevant discussion.   The keystone in

10 this situation is unfairness, and where a party has had an opportunity to address the issue,

11 no such unfairness exists.  *See Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir.

12 1982) (citing, *Fountain v. Filson*, 336 U.S. 681, 69 S. Ct. 754, 93 L. Ed. 971 (1949);

13 *Portland Retail, etc. v. Kaiser Foundation*, 662 F.2d 641, 645 (9th Cir. 1981)).

14     Further, Best Western cannot be heard to complain that it has not had a fair

15 opportunity to address all issues in this case where it filed more than 50 additional

16 purported statements of fact, and a seventeen-page brief in opposition to this motion.[4]

17 That not a single word of its opposition asserts that services were not promised or that

18 services were rendered speaks volumes as to the merit of Mr. Harooni's bad faith and

19 breach of contract claims.

20 **III.    THE EVIDENCE SHOWS THAT BEST WESTERN ACTED IN BAD
             FAITH**

22         **A.  Best Western Fails to Establish that Any Services were Provided**

23     The first argument that Best Western puts forward to dispute that it acted in bad

24 faith is its assertion that the promised services were allegedly available to all hotel

25 members.  Best Western makes no showing - and does not even argue - that the services

---

Declaration of Hooshang Harooni filed in support of the Motion for Summary Judgment.

[4] To date, Best Western has not filed a motion for leave to file an over length brief.

were actually provided to Mr. Harooni.   That Mr. Harooni and his assistant, Kevin Refoua could not state with great specificity exactly what Ms. Wininger said at a meeting three years ago is irrelevant distraction.  No one denies - including Ms. Wininger - that she made these promises.  *SSOF,* ¶ 25, (Dkt. 60, pg. 7) and attachments thereto ("Wininger Depositon, (Dkt. 59-8, pg. 4) *67:10-68:167 ("*Q: Did you ever express to Mr. Harooni that Best Western would provide services to assist him with his hotel? A: Yes."); *see also SSOF,* ¶ 26 (Dkt 60, pg. 7).  It is equally undisputed that these services were in fact, not provided.  *Cf. SSOF,* ¶ 27 (Dkt. 60, pg. 7); *see also* Plaintiff's Combined Response to Defendants' Separate Statement of Facts, ¶ 27 (Dkt. 68) (the transcript is the best evidence of what Ms. Wininger said).  Rather than dispute the fact that Best Western made and failed to keep promises to Mr. Harooni, Best Western attempts to shield itself from liability for its false promises through a boilerplate integration clause.

An integration clause does not shield a party from promises made to induce contract.  *See, e.g., Wagner v. Rao*, 180 Ariz. 486, 489 (App. 1994) (the integration clause unenforceable where party fraudulently procured execution of contract); 17 CJS, Contracts, § 324.  This is particularly true where a contract may be ambiguous.  *See Hamberlin v. Townsend,* 76 Ariz. 191, 196 (Ariz. 1953).  A party "is responsible for ambiguities in his own expressions and has no right to induce another to contract with him on the supposition that his words mean one thing, while he hopes the court will adopt a construction by which they would mean another thing more to his advantage." *Id.*  That is precisely the case here.

Mr. Harooni stated in his counterclaim that "Plaintiff induced me to purchase the franchise through falsehood and failed to perform all of the promised services." *Counterclaim,* ¶ 3.  Whatever else is at issue in this case, at least since May 6, 2009, a central element of the counterclaim is that these promises induced Mr. Harooni to enter into the contract despite his inexperience in running a hotel. *Id.* at ¶ 2.  Best Western knew of Mr. Harooni's inexperience, and rather than help him, Best Western took every advantage of him that they could under one of the most one-sided contracts imaginable.

The Schlesinger Conrad Law Firm

The Schlesinger Conrad Law Firm

1   The undisputed fact is that Best Western promotes itself as providing services,

2   including a revenue manager, reservation systems, Worldwide Marketing Services

3   wherein Best Western "goes out and solicits corporate business," advertising, marketing

4   and solicitations to help drive business to the properties design assistance and

5   consultations for all of its members.  *See, e.g., Deposition of Cheryl Pollack,* 55:1-55:4

6   (Q.   And does Best Western represent to its members that it's going to do certain things

7   such as marketing and advertising? A.   Yes"), attached to the *SSOF*, Ex. 6 (Dkt. 59-5, pg.

8   17).  There is ample evidence that these services were promised but were not, in fact,

9   provided to Mr. Harooni.   *See SSOF,* ¶ 15 (Dkt. 59-7, pg. 5) (Deposition of Terry

10  Wininger); ¶ 25; ¶ 26; ¶ 27; and ¶ 31; *see also* Declaration of Hooshang Harooni, *SSOF,*

11  Ex. 2 (Dkt. 59-3), ¶¶ 5-7.  Mr. Harooni would not have entered the agreement but for the

12  promised services and guidance.[5]

13  Further, a contract must be construed as a whole, and the intention of the parties is

14  to be collected from the entire instrument and not from detached portions.  17 CJS § 309.

15  The entirety of the contract, the course of conduct and the agreements all speak of services

16  that were to be provided by Best Western.  Indeed, without any of these services, then the

17  question arises as to the basis for any charge by Best Western to its members.  In reality,

18  the promises are reflected in the allegedly governing documents.  *See SSOF,* Ex. 3 (Dkt.

19  59-4) (Members Bill of Rights, ¶ 12 (Member has the right to receive all services);

20  Membership Agreement (referencing services provided by Best Western including

21  reservations) attached to the *SSOF,* as Ex. 12.  Indeed, the Rules and Regulations

22  specifically state that Best Western will:

23

24  ─────────────────────

25  [5] Any argument that Mr. Harooni is claiming that these services were promised uniquely to him is a straw
    man argument calculated to distract the Court into contemplation of additional consideration. The
    consideration was all of the fees, expense and time expended in participating in the membership.

26  Undoubtedly other hotel members would have similar claims.  Nevertheless, it is and has been clear from
    the day Mr. Harooni entered the Membership Agreement that he would not have done so but for the

27  promised services and guidance.  Ms. Wininger admits this in her deposition, and this fact was driven
    home by his *in pro per* counterclaim filed in May 2009 (Dkt. 26).

28

1      1.      Observe the management of the property
2   for the purpose of **advising and recommending
    areas needing Improvement.**

3   2. Tour the property, **discussing with management
4   any issues of concern**.
    . . .

5   3. Serve as a resource to the member  . . .  Rules and
6   Regulations, § 200.3, attached to the *SSOF,* as Ex. 5; *see also,
    e.g.,  SSOF,* Ex. 5, 500.6 (fees are due for services provided by
7   or ordered through Best Western).

8       Therefore, the integration clause cannot act to shield Best Western from the

9   promises made by Best Western, including by its representative, Terry Wininger.  At a

10  minimum, the existence of the services is ambiguous.  Therefore, the contract should be

11  construed against Best Western.  Even without the doctrine of *contra proferentem,* it is

12  clear that Best Western did not keep the promises that it made to Mr. Harooni, and that

13  were referenced in the contract.

14      **B.  Best Western's Argument that Mr. Harooni has Failed to Prove Bad
            Faith is Without Merit**

15

16      The conduct by Best Western was oppressive, harassing, arbitrary and in

17  furtherance of its own newly concocted scheme to increase its own profits.   Where a

18  motive is improper, bad faith exists.  The *sin qua non* of a bad faith claim is where there is

19  no right to terminate a contract, but the obligor engages in conduct extraneous to the

20  contract such as to deprive the obligee the benefit of the contract's core purpose. *Hejmadi*

21  *v. AMFAC*, 202 Cal. App. 3d 525, 549 (Cal. Ct. App. 1988) (citing *Sawyer v. Bank of*

22  *America* (1978) 83 Cal.App.3d 135, 139 [145 Cal.Rptr. 623].)

23      Multiple Best Western representatives testified that they were aware of Best

24  Western's five year plan to increase its market share.  Specifically, Ms. Bree testified:

25      Question by Ms. Schlesinger: Are you familiar with the
26      advertising done by Best Western?

27       A.  Yes.
        . . .

28

The Schlesinger Conrad Law Firm

Q.   Are you aware of Best Western having any concerns regarding the image in the general public of the Best Western brand in 2008?

A.   I think in that period of time, there was concern within the competitive set of the eight hotels that Best Western allianced [sic] themselves with. In the consumer's eyes, I think our rating had slipped a little bit.

Q.   So was there any additional pressure on the RSMs to ensure that the quality assessments were done meticulously?

A.   There was emphasis on performing accurate assessments and consistent assessments and to review and assist with any customer service issues. Bree Deposition, 157:16- 158:9

Similarly, Ms. Wininger and Ms. Pollack both testified regarding this new plan and that it changed *after* Mr. Harooni had invested more than a million dollars into renovations of the hotel. *See, e.g., Deposition of Terry Wininger, 44:15-44:23* (Dkt. 59-7, *pg. 13)*.  There is ample evidence that Best Western changed the criteria after having Mr. Harooni spend a small fortune on renovations to meet the old standards.  That, particularly when coupled with the subjective inspections and the violation of the fair hearing requirement, is more than enough to demonstrate that Best Western acted in bad faith.

## C.   <u>A Relationship that has Fiduciary-Like Qualities is Established Under the Franchise Agreement</u>

Best Western asserts that it cannot be held to a fiduciary-like duty because the Membership Agreement states that, as to third party liability, that there is an independent contractor relationship.  *Membership Agreement,* ¶ 17 (*see* SSOF, Ex. 12) (Dkt. 59-4).  It is noteworthy that in making that argument, Best Western fails to cite to any paragraph or language in the Membership Agreement.  That is because what it actually states is that "Best Western is a non profit [sic] corporation operated on a cooperative basis *by and for* its hotelier members." *Id.* at ¶ 17 (emphasis added).  Best Western then seeks to have its cake and eat it too, in that it proceeds to limit its liability as to third-parties by claiming it has an independent contractor relationship with its hotel members.  It cannot have it both ways.  *Cf. Welker v. Kennecott Copper Co.*, 403 P.2d 330, 341 (Ariz. Ct. App. 1965).

Best Western advertises it exists by and for its members.  That is the crux of its

The Schlesinger Conrad Law Firm

claim that it is a non-profit membership as opposed to a for-profit franchise.  While Mr. Harooni contests Best Western's claim, that claim, even standing alone, creates the special relationship that triggers duties akin to those of a fiduciary.  *Stewart v. Phoenix Nat'l Bank,* 49 Ariz. 34, 44 (Ariz. 1937) (finding that where a relation of trust or confidence exists between two parties so that one of them places peculiar reliance in the trustworthiness of another, the latter is under a duty to make a full and truthful disclosure of all material facts, and is liable for misrepresentation or concealment (citing 26 C.J. 1158)).  Indeed, there is no dispute that Best Western was to act for its members in obtaining corporate clients.  *See Deposition of Terry Wininger, 40:1-40:7, attached to SSOF, Ex. 7* (Dkt. 59-7, pg. 13).  That claim alone makes Best Western the members' agent and, as such, a fiduciary.  Here, however, Best Western never "laid its cards on the table" and, thus, violated its duties to Mr. Harooni.  *Stewart*, *supra.*

That Mr. Harooni placed trust in a "non-profit membership" that purported to act on behalf of its members is reasonable.  What is unreasonable is that Best Western can simultaneously assert that it acts for its members and exists to further their interests, but it retains the right to distance itself from liability by asserting there is only an independent contractor relationship.

The case of *Jakemer v. Romano*, 2007 U.S. Dist. LEXIS 15831 (D. Ariz. Mar. 5, 2007) pointed out that evidence of a fiduciary relationship can be found in the statements made by the fiduciary to the claimant.  In that case defendant advertised that it was a "Registered Financial Advisor."  *Id.* at *11.  That statement, coupled with the ongoing willingness of plaintiff to follow the advice of the defendant, showed that the defendant acted in a capacity that exceeded a ministerial function.  Here, Best Western advertised that it was more than an arms-length employer of an independent contractor.

It is commonplace for one party to claim there is an independent contractor relationship to avoid both responsibility and liability.   A fiduciary or special relationship can be found despite the language of a contract, particularly where such language is at odds with the actual relationship or is ambiguous. *See, e.g., SEC v. Rauscher Pierce*

**1**   *Refsnes, Inc*., 17 F. Supp. 2d 985, 993 (D. Ariz. 1998) (finding that sufficient evidence

**2**   existed to survive summary judgment despite contractual language asserting no special

**3**   relationship existed).   The test is control, and the existence of extensive control will

**4**   outweigh boilerplate contract language.  "Without exception the general test laid down to

**5**   determine the difference between an independent contractor and an employee is in

**6**   substance whether the alleged employer retains supervision or control over the method of

**7**   reaching a certain result, or whether his control is limited to the result reached, leaving the

**8**   method to the other party."  *United States Fidelity & Guar. Co. v. Industrial Comm'n,* 42

**9**   Ariz. 422, 429 (Ariz. 1933).

**10**       As alluded to in the moving papers, "[a]t the core of the franchise relationship is the

**11**   contractual control exercised by the franchisor over every aspect of the franchisee's

**12**   business."  *Mister Donut of Am. v. Harris*, 150 Ariz. 321, 324 (Ariz. 1986) (citing H.

**13**   BROWN, FRANCHISING -- A FIDUCIARY RELATIONSHIP, 49 Texas Law Rev. 650 (1971));

**14**   H. Brown, FRANCHISING: TRAP FOR THE TRUSTING, pg. 41 (1969)).  This control was

**15**   evidenced by the Rules and Regulations submitted in conjunction with the moving papers

**16**   and referenced through the arbitrary imposition of subjective inspection standards.  Best

**17**   Western exerted control over the property, décor, reservations, type of payment to be

**18**   accepted, and the availability of a free breakfast, even down to the dishes that must be

**19**   served and the type of toilet seats to be used and the number of toilet paper rolls available.

**20**   *See* Rules and Regulations, *SSOF*, Ex. 5 (Dkt. 59-4, *e.g.,* pgs. 9, 19 and 20), *e.g.*, 500.39

**21**   (breakfast must include choice of breads, choice of three cereals; two fruits, etc., and be

**22**   served three hours every morning, seven days a week); 900.28 (each room shall have two

**23**   rolls of toilet paper with "good quality toilet tissue"); 900.23 (toilet seats shall have

**24**   required bumper); 400.7 (Standards for arrival times that require guarantees and

**25**   guaranteed policies will be sat periodically by Best Western)).  Under these circumstances

**26**   the franchisor/franchisee relationship is deemed a "special relationship," and Best

**27**   Western's attempt to cast it as an independent contractor relationship is unavailing in light

**28**

The Schlesinger Conrad Law Firm

of the degree of control that Best Western exerts over its members.  *Id.; see also Union Bank v. Safanie*, 5 Ariz.App. 342, 347, 427 P.2d 146, 151 (1967).

There can be no real argument that this unfettered control is not consistent with an independent contractor relationship, regardless of what Best Western would like to claim. When this is put in context with the aggressive claims that Best Western is a "non-profit" group working for the betterment of all of its "members," a finding of a heightened duty is appropriate.  Indeed, the essence of a bad faith claim  is the obligation to play fair and to deal honestly so as not to deprive the other party of the benefit of the contract.  *See Daly v. Royal Ins. Co. of Am*., 2002 U.S. Dist. LEXIS 16183 (D. Ariz. July 16, 2002); *see also SEC v. Rauscher Pierce Refsnes, Inc*., 17 F. Supp. 2d 985, 992 (D. Ariz. 1998) (citing 316 U.S. App. D.C. 152, 76 F.3d 1205, 1211 (D.C. Cir. 1996)).

Best Western's citation to *Urias v. PCS Health Systems,* 211 Ariz. 81, 87, 118 P.3d 29 (App. 2005), is unavailing.  That case dealt with a receiver appointed for a healthcare system and a pharmacy that collected rebates on behalf of the health insurance company. There was no close relationship, and there was no allegation that either party relied upon the representations of the other.  *Id.*  In this matter, the undisputed evidence is that Mr. Harooni clearly informed Best Western that he had no experience with hotels, and that Best Western, both orally and in writing, promised services that would assist him. The further undisputed evidence is that those "services" amounted to calls to collect fees and inspections.  *Urias* is inapposite and should be ignored.  Best Western repeatedly said that its raison d'etre was to further the interests of its members.  That creates the fiduciary relationship and invokes a higher duty on the part of Best Western to deal fairly with Mr. Harooni.  It certainly impacts the determination that Best Western acted in bad faith under the circumstances.

## IV.   THE STATUTE VIOLATED BY BEST WESTERN IS INCORPORATED INTO EVERY CONTRACT, AND PARALLELS THE REQUIREMENT OF THE CONTRACT

### A.   The Termination Did Not Meet the Requirements of § 10-3621 because it was Contrary to the Provision in the Members' Bill of Rights

The problem that Best Western chooses to overlook is that the termination of Mr. Harooni's membership was not done in accordance with the procedure that Best Western sets forth in its asserted governing documents.  The governing documents provide for a conditional extension in lieu of cancellation.

> The right to receive all member services until membership is cancelled or terminated, except in the following cases, membership services may be restricted; (I) when grounds for cancellation are found by the Board of Directors to exist, after opportunity for a hearing has been provided, **and** the Board has granted a conditional extension in lieu of cancellation of membership, (ii) when the member scores less than 600 points for guest rooms and public areas, and 600 when a members fees, dues or any other account are not paid within the time set by Board policy.  Members Bill of Rights, § 12 (Dkt 59-4, pg. 2) (emphasis added).

This provision, at a minimum, would lead a member to believe that a conditional extension must be granted unless inspection scores are under 600.  The language cited by Best Western contradicting this is buried in fine print deep within the Bylaws.  Even then, the wording is not clear.  Thus, while Mr. Harooni continues to believe that he was entitled to conditional membership, at most Best Western can argue that the contract is ambiguous.  In this circumstance, an ambiguity must be construed against the drafter as it is undisputed that Best Western had a legion of lawyers draft the contract, and Mr. Harooni was not given an opportunity to negotiate its terms.  Further, it is not clear that Mr. Harooni actually had the opportunity to read, much less understand, the provisions. *See Deposition of Hooshang Harooni, SSOF, ¶ Ex. 1* (Dkt. 59-1, pg. 20) 68:4-69:21.

### B.  A.R.S. § 10-3621 Requires an Opportunity to be Heard that was not Afforded as the Board Hearing is a Sham

Mr. Harooni's moving papers and statements of fact in support thereof make it clear that the Board Hearing was a sham such that no *bona fide* opportunity to be heard existed. *See SSOF, ¶ 65, 69.*  In reality the "hearing" lasted only 15 minutes with a security guard standing directly behind Mr. Harooni, and all of the questions related to whether he wanted to sell the hotel.  When the Board heard Mr. Harooni was sick, they terminated the

hearing. *Separate Statement of Controverting Facts ("SSCF"), filed in support of Defendants' Opposition to Best Western's Motion for Summary Judgment, (Dkt. 70-1, pg. 3, et seq.),* incorporated fully herein by reference, *e.g.,* ¶¶ 62; 65; 69; *see also SSOF,* ¶ Dkt. 59-3. There was no opportunity to question witnesses, no way to challenge the photographs taken during the subjective inspections, no live testimony and no chance that the member would not be found in violation. *See Defendants' Separate Statement in Support of Reply to Motion for Summary Judgment,* the entirety of which is incorporated herein by reference including, but not limited to ¶ 20. This is contrary to the Rules and Regulations that state the burden is on Best Western to prove that any claimed violations constitute grounds for termination:

> The order of proceeding during hearings shall be as determined by the Board. provided the member has a full and fair opportunity to present relevant and material evidence In support of his position. The burden of proof of charged violations sufficient to Justify cancellation of membership and of compliance with the procedure required by the Bylaws and these Rules and Regulations shall be upon the Association. *See Rules and Regulations,* § 1200.5(E), attached to the *SSOF,* ¶ 5, (Dkt. 59-4, pg. 24).

There is no evidence that Mr. Harooni ever got an opportunity to address any of the alleged concerns regarding the condition of the hotel. However, he submitted a full statement of controverting evidence and a plan of correction. He stated unequivocally that he was willing to undertake any changes that the Board requested. *See Deposition of Hooshang Harooni,* 116:16-116:21, *attached to SSOF* as Ex. 1 (Dkt. 59-1, pg. 32). There was no basis for termination other than Best Western's own plan to phase out older hotels and terminate Mr. Harooni's because his planned changes, coupled with his health, made the Board feel it could do better elsewhere. *Id.; see also, e.g., Wininger Depositino, 42:15-43:4, attached to the SSOF, as Ex. 7, (Dkt. 59-7, pg. 13).*

Without an opportunity to address the Board, clear evidence to support the alleged violations (beyond the subjective comments of Best Western's own inspector), and without a good faith opportunity to be heard, there is no process that Best Western can

The Schlesinger Conrad Law Firm

point to that was fair and reasonable.  Both the statute (which is incorporated by law into every contract) and Best Western's own asserted governing documents require that there be a hearing.  This was a kangaroo court proceeding, at best. Therefore, Best Western has violated its own process, and cannot be heard to state that mere mailing of notice is sufficient.  The hearing is inextricably intertwined with the process, and fairness goes beyond notice.   While Mr. Harooni assuredly disputes the outcome of the hearing, a parallel argument is with the process itself.  No cancellation can be "fair and reasonable" without adherence to Best Western's own procedure.  Best Western asserts in its Opposition (Dkt. 67, 5:22-26) that "Article II, § 8 and Best Western's Rules and Regulations . . . afford a member whose membership is subject to cancellation with written notice ***and opportunities to show cause*** why his or her membership should not be cancelled." *Id.* (emphasis added).  Best Western has not provided a scintilla of evidence that the hearing was, in fact, an "opportunity to show cause."  There is no evidence that any argument by Mr. Harooni was considered, that he had any opportunity to argue his case, or that any good faith consideration of the issues was made.  Without a *bona fide* opportunity to be heard, there was no appropriate procedure.

No opportunity to be heard was afforded under the Best Western process because: (a) there were no criteria by which the Board Members judged the hotel evidence; and (b) the Board Members did not actually consider any evidence, did not carry their burden and failed to exercise any unbiased judgment.   Thus, when Best Western states that "Defendants have not claimed, alleged, or argued that they were denied the procedural benefits set forth in the Bylaws" they are simply misstating the facts of this case, as well as the law.

### C. <u>Best Western Fails to Address the Membership Bill of Rights</u>

Article II, Section 7(A)(7) states:

> A term or condition is not met, after the Board, having provided a Member an opportunity to be heard, has found grounds exist for cancellation of the Membership and the



Member has been granted a conditional extension in lieu of cancellation.

The other subsections in Section 7 address issues with leases, insurance or change of ownership.  Under any interpretation, Article II, Subsection 7 is ambiguous, at best.  However, it is clarified by the Members Bill of Rights.  That important preface to the entire "governing documents" states that a conditional membership should be granted.  Under the circumstances of this case, the termination could not have issued because the process was not followed, and there was no full and fair process as required. Best Western ignores this in their Opposition.  This Members Bill of Rights, however, is set forth at the beginning of the Bylaws because it is meant to encapsulate core rights of the members.  It cannot be ignored.  Rather, the conflicting portions of the purported governing documents should be interpreted consistently with this Members Bill of Rights.  In that context, it becomes clear that Mr. Harooni had the right to standardized inspections and a conditional membership in lieu of termination.  Best Western has breached the contract in bad faith.

## V.   THERE WAS NO *BONA FIDE* REASON TO TERMINATE THE CONTRACT

Best Western's argument that there was a *bona fide* reason to terminate the membership fails because all of the evidence shows that the contract was cancelled without any good faith exercise of discretion.  The person most knowledgeable for inspections could not consistently even identify what the alleged defects at the hotel were.  No one disputes the hotel was in far better condition than it had been under the prior owner, and Mr. Harooni had been receiving passing scores until Best Western implemented its five year plan at about the same time Mr. Harooni first put the hotel up for sale.  Also at that time, Mr. Harooni began to press for a reduction in the size of the hotel.  It is no surprise that Best Western suddenly began finding fault with Mr. Harooni's hotel, but there is no evidence whatsoever that the condition of the hotel actually changed.  Accordingly, Best Western cannot point to any *bona fide* reason for termination.

## VI.   THE REASONABLE EXPECTATIONS DOCTRINE APPLIES

The Schlesinger Conrad Law Firm

1        In arguing that Best Western could exercise its claimed discretion to eliminate

2  older properties such as Mr. Harooni's hotel, Best Western cites to *Wells Fargo Bank v.*

3  *Arizona Laborers,* 201 Ariz. 474 (2002).  That case and the quote referenced by Best

4  Western demonstrates that Best Western was obligated to act only within the parameters

5  of the scope of what the parties contemplated.  It confirms that the reasonable expectations

6  doctrine is applicable here.   Specifically, the cited portion of Wells Fargo states that while

7  discretion may be used consistently with "ordinary business purpose[s]", it also states that

8  such purpose must be "reasonably within the contemplation of the parties." *Id.; see also*

9  *Opposition, (Dkt. 67, pg. 8).*

10       The Illinois case of *Kohler v. Leslie Hindman, Inc.,* 80 F.3d 1181 (7th Cir. 1996) is

11 not controlling and it is not applicable.  That case dealt with an auction house that had

12 accepted a painting on consignment with the understanding that the painting would be

13 sold "as is" with no guarantee of authenticity.  The auction house sold the painting

14 contingent upon it proving to be a Rousseau.  When it could not be authenticated, the

15 auction house cancelled the sale.  The owner filed suit, and the auction house defended

16 based on a clause in the auction contract that allowed them to use their discretion to

17 rescind a contract when they would be faced with liability under a warranty of

18 authenticity, which had occurred in the sale.   The Seventh Circuit affirmed that rescission

19 was a proper use of the auction house's discretion.  In so doing, the Seventh Circuit found

20 noted first that contracts are to be interpreted to give full effect to all provisions, and a

21 grant of unfettered discretion to rescind would undermine the balance of the contract

22 provisions. *Id.* at 1186.  In that context, the Seventh Circuit determined any exercise of

23 discretion could only be exercised through rational analysis. *Id.*

24       Critically in this case, Best Western cannot show that it used any rational analysis

25 in terminating the contract.  The contract sets out a Member Bill of Rights that specifically

26 states that a member is entitled to "impartial, standardized and nondiscriminatory

27 inspection procedures applied to each member property." *See Member Bill of Rights,* ¶ 10

28 (Dkt. 59-4, pg. 2).  That Bill of Rights was the first page of text in the Bylaws and is what

The Schlesinger Conrad Law Firm

a member would reasonably believe to set forth his or her rights as to inspections. Accordingly, the subjective inspections with an eye toward eliminating a property that was newly remodeled is not a "rational analysis" as to Mr. Harooni's hotel or its condition. Best Western argues that after several inspections, Mr. Harooni should not have been surprised to find out that Best Western could terminate the contract.  However, like the auction house in *Kohler,* there was an expectation that any determination would be rational.  The pattern of inspections shows that even though renovations consistent with Best Western's design specifications had been completed, and the improvement in the hotel was undisputed, Best Western deducted points to push Mr. Harooni into termination. *See  SSCF,  supra,* ¶ 10.

Indeed, as amply set forth in the moving papers, Best Western's conduct is either: (1) an arbitrary and capricious determination; or (2) motivated by self-dealing and for reasons wholly unrelated to the actual condition of Mr. Harooni's hotel.  Either way, such action by Best Western was clearly not within the contemplation of the parties and is contrary to the agreement.  Moreover, the terms that Best Western now cites to in order to defend its conduct were buried deep within voluminous, boilerplate contract terms, would not have been closely read by Mr. Harooni, and were not reasonably understood to allow the conduct at issue here.  Mr. Harooni's position is well-supported by the allegedly "governing documents," his deposition, his counterclaim and the deposition testimony of Best Western's own representatives.  *See, Counterclaim* (Dkt. 26); *Deposition of Harooni, attached to SSOF, Ex. 2,* (Dkt. 59-1, at *68:4-69:21*  (In discussing whether Mr. Harooni read the rules and bylaws, he stated he isn't sure that he received all documents, and stated that he "didn't even know the true meaning of it to be honest") and *95:18-96:9; Declaration of Hooshang Harooni, SSOF,* Ex. 1, (Dkt. 59-3, pg. 3-4, *e.g.,* ¶¶ 8, 12 (Mr. Harooni believed that he would receive services and was not told that the "Quality Assurance Assessments" were applied in such a way so as to cause 80% of the hotels to fail their inspections).  The contract states - or at a minimum, appears to state - that a fair and standardized inspection is a basic right of the member.  There is ample evidence that

1  inspections were extremely subjective to the point that even Lloyd Nygaard, the person

2  most knowledgeable regarding inspections could frequently not state what the alleged

3  defect was. *See Deposition of Nygaard,* attached to the *SSOF*, Ex. 23, (Dkt. 60-5),  pg. 9,

4  *e.g.,* 28:10-17, 35:8-20 (Nygaard cannot see deficiencies in photographs similar to those

5  that would be shown to the board that allegedly reflected deficiencies called out by Cindy

6  Bree).

7      Whether Best Western sought to eliminate Mr. Harooni's hotel as a part of its

8  newly instigated five-year plan, because he wanted to sell or downsize it, or because

9  ultimately they discovered he was ill is irrelevant.  The point is he was not given a fair and

10  standardized assessment, was deprived of services that should have been afforded to him

11  as a member of Best Western and was denied an opportunity to correct the asserted

12  problems through a conditional extension.  These are spelled out in the Members Bill of

13  Rights, and Mr. Harooni relied upon the representations of Best Western regarding the

14  contract terms.  Further evidence of the services promised by Best Western are

15  encompassed in the invoice that Best Western is trying to force Mr. Harooni to pay despite

16  their bad faith conduct.  Indeed, that invoice charges Mr. Harooni for, *inter alia,*

17  advertising (Dkt. 1-2, pg. 2, (3/17/08 entry styled "Advertising Assessment)), "tools for

18  success" (*Id. (3/18/08 entry),* official appointment programs (*Id.* 3/19/08 entry), and

19  design visits (Dkt. 1-2, pg. 6 (4/24/08 entry for $1500, despite the contract having been

20  terminated on 4/8/08).  Best Western had written terms that stated there would be

21  objective, fair inspections.  The corporation did not have an unfettered or sole right to

22  terminate the contract at will using sham inspections as a rationale.  Any argument to the

23  contrary ignores the contract terms and the expectations that Best Western instills in

24  prospective members.

25  **VII.   CONCLUSION**

26      Mr. Harooni has provided ample evidence from which this Court can determine

27  that Best Western acted for reasons other than any genuine concern for the condition of

28  Mr. Harooni's hotel.  Mr. Harooni has also demonstrated, both through this motion, the

The Schlesinger Conrad Law Firm

statement of supporting facts and the Opposition to Best Western's Motion for Summary judgment, incorporated herein by reference, that he has been severely financially damaged as a result of Best Western's bad faith breach of contract.   Best Western's efforts to inject spurious arguments that Mr. Harooni never made, *e.g.,* that Best Western promised him some special services not equally promised to other members, are without merit.  Best Western is a parasitic corporation reaping huge profits off of individual hotel owners like Mr. Harooni. [6]  Best Western should not be allowed to continue calling itself a "non-profit membership" and implying they are there to serve the "members" while simultaneously acting to defeat such members' rights.  Mr. Harooni's Motion for Summary Judgment should be granted.

Dated: May 17, 2010

THE SCHLESINGER CONRAD LAW FIRM

By: */s/ Kira A. Schlesinger*

Kira A. Schlesinger
Attorney for *Hooshang Harooni* and *AV Inn Associates I, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of May 2010, I caused to be transmitted by the CM/ECF e-file system a true and correct copy of the foregoing **Reply to Best Western's Opposition to Defendants/Counterclaimant's Motion for Summary Judgment** to counsel registered as filers on that system.  To the best of my knowledge, no additional parties require notification.

By  /s/ Kira Schlesinger

---

[6] It should be noted that Mr. Harooni believes that all facts asserted in his Statement of Facts are relevant to the determination of this motion.  One example is the Best Western Annual Report, attached as Ex. 17 to Mr. Harooni's Separate Statement of Undisputed Facts. (Dkt. 61-1, pgs. 1-16 ).  That document shows that Best Western is not properly a "non-profit corporation."  Page limitations prevented counsel from referencing all of the myriad details that prove Best Western's wrongful conduct.  That cannot render the Statement of Facts irrelevant as claimed by Best Western.  It is all part of a single picture.  Indeed, the Statement of Facts could practically stand alone as testimony to Best Western's wrongful conduct.  It is no wonder they would like to have it disregarded.

The Schlesinger Conrad Law Firm



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28