**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Best Western International, Inc., an Arizona non-profit corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>AV Inn Associates 1, LLC, a California limited liability company; Hooshang Harooni,<br><br>        Defendants. | No. CV-08-2274-PHX-DGC<br><br>**ORDER** |

Plaintiff Best Western International, Inc. has filed a motion for summary judgment against Defendants AV Inn Associates 1, LLC ("AV LLC") and Hooshang Harooni. Dkt. #57. The motion is fully briefed. Dkt. ##69, 73. Defendants have filed a motion for summary judgment on Best Western's claims and on Mr. Harooni's counterclaims. Dkt. #61. The motion is fully briefed. Dkt. ##67, 75. Best Western has also filed a motion for leave to file a sur-rebuttal to the statement of facts submitted by Defendants in conjunction with Defendants' reply to Defendants' motion for summary judgment. Dkt. #81. For reasons that follow, the Court will deny Defendants' motion for summary judgment (Dkt. #61), grant Plaintiff's motion for summary judgment (Dkt. #57), and deny Plaintiff's motion for leave to file a sur-rebuttal (Dkt. #81) as moot.[1]

---

[1] Defendants' requests for oral argument are denied. The parties have fully briefed the issues and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

## I. Background.

Best Western is a non-profit corporation consisting of individually owned hotels that operate under the "Best Western" mark. The rights and duties of Best Western and its members are created and governed by a membership agreement, which incorporates by reference certain bylaws and rules and regulations. Dkt. #58 at 9-28, 30-47. The membership agreement permits the Best Western Board of Directors to terminate a member hotel for failure to meet certain quality and design standards. *Id.* at 37-38.

In 2004, AV LLC owned a hotel in Lancaster, California. Dkt. #58-3 at 5. A different entity named AV Operations Group, Inc. ("AV Inc.") owned the businesses inside the hotel, including the bar and restaurant. Dkt. #58-3 at 5. AV LLC and AV Inc. are both owned by Defendant Harooni. On December 1, 2004, AV LLC and Mr. Harooni entered into a membership agreement ("the agreement") with Best Western which allowed AV LLC to use the Best Western marks at the hotel. *Id.* at 9. On April 8, 2008, Best Western terminated the agreement on the ground that the hotel failed to meet standards required by terms of the agreement. Dkt. #58-4 at 35-40.

In December of 2008, Best Western filed a complaint against AV LLC and Mr. Harooni, claiming that Defendants had failed to pay accrued and accruing membership fees as of December 1, 2008. Dkt. #1. The complaint asserts three claims: breach of contract, open account, and stated account. *Id.* Defendants filed an answer and Mr. Harooni filed three counterclaims against Best Western: breach of contract, breach of implied contract, and breach of the implied covenant of good faith and fair dealing. Dkt. #26. The counterclaims filed against Best Western are "asserted only on behalf of Defendant Harooni, not on behalf of Defendant AV [LLC]" or AV Inc. Dkt. #45.

## II. Legal Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed

1 in the light most favorable to the nonmoving party, shows "that there is no genuine issue as
2 to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.
3 Civ. P. 56(c)(2).

### III. Defendants' Motion for Summary Judgment.

Defendants contend that they are entitled to summary judgment on Best Western's breach of contract claim, and further argue that they are entitled to summary judgment on Mr. Harooni's counterclaims. Defendants make seven arguments: (1) Best Western unlawfully terminated the agreement pursuant to Arizona non-profit law, (2) Best Western failed to provide Defendants with a conditional extension of the agreement, (3) Best Western had no bona fide grounds to terminate the agreement, (4) Mr. Harooni had a reasonable expectation that Best Western would not terminate the agreement based on subjective determinations, (5) Best Western owed a fiduciary-like duty to Mr. Harooni, (6) allowing Best Western to prevail would cause a forfeiture that is disfavored under the law, and (7) Best Western terminated the agreement in bad faith. *Id.* at 5-15. It is unclear which arguments pertain to Best Western's claims and which arguments pertain to Mr. Harooni's counterclaims. Regardless, the Court finds that all seven arguments fail to explain why Defendants are entitled to summary judgment on any claim. The Court will consider each argument in turn.

### A. Arizona Non-Profit Law.

Defendants contend that Best Western violated Arizona non-profit law by terminating the agreement between AV LLC and Best Western. Dkt. #59 at 4. In support of this argument, Defendants cite A.R.S. § 10-3621, which states that a non-profit organization must establish a procedure for termination of members which must either (1) include "written notice at least fifteen days before the expulsion" and "[a]n opportunity for the member to be heard . . . at least five days before the effective date of the expulsion," or (2) be "fair and reasonable taking into consideration all of the relevant facts and circumstances." A.R.S. § 10-3621(B)(1)-(2). Defendants contend that this statute expressly mandates that any termination of a membership agreement by Best Western be "fair and reasonable." Defendants further contend that the termination in this case was not fair or reasonable.

- 3 -

The Court disagrees that A.R.S. § 10-3621(B)(1)-(2) requires termination of a membership in a non-profit organization to be "fair and reasonable." Rather, the section states that a non-profit organization can terminate a member *either* in a "fair and reasonable" manner *or* after notice and an opportunity to be heard. Defendants have not shown that Best Western failed to provide the notice required by the statute.[2]

**B.   Conditional Extension.**

Defendants argue that "Best Western breeched [sic] its contractual agreement . . . because it failed to provide Mr. Harooni an opportunity to cure the alleged deficiencies at the property in violation of the Bylaws." Dkt. #59 at 5. Defendants contend that Best Western could not terminate the agreement under the bylaws unless the Board granted Defendants a conditional extension. *Id.* at 6.

"Interpretation of a contract is a question of law for the court when its terms are unambiguous on its face." *Ash v. Egar*, 541 P.2d 398, 401 (Ariz. App. 1975). The Court finds that the agreement signed by the parties unambiguously provides that the Board can terminate the agreement without providing a conditional extension. Defendants cite the following provision of the bylaws: "[A] Membership shall automatically terminate on the date of the occurrence of any one of the following events: . . . (7) A term or condition is not met, after the Board, having provided the Member with an opportunity for a hearing, has found grounds exist for cancellation of the Membership and the Member has been granted a conditional extension in lieu of cancellation." Dkt. #58-1 at 36. Defendants argue that this provision requires the Board to provide a member with a conditional extension before terminating the membership. The Court disagrees.

---

[2] In their reply brief, Defendants argue that Best Western breached this provision and its own bylaws by failing to provide Mr. Harooni with a fair hearing. Dkt. #75 at 14-16. The Court will not consider the bylaws argument because it was made for the first time in a reply brief. *Delgadillo v. Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008). As to the argument that Best Western breached A.R.S. § 10-3621, the Court disagrees. A.R.S. § 10-3621 only requires "written notice" and an "opportunity for the member to be heard," and does not expressly require that the hearing be "fair." A.R.S. § 10-3621(B)(1).

1    The provision cited by Defendants is in a section discussing when a membership can
2 terminate automatically. Dkt. #58-1 at 36 (Section 7. Cancellation or Termination;
3 Exemptions; Automatic Transfers). A separate section of the bylaws governs cancellation
4 of the agreement through Board action. Dkt. #58-1 at 37 (Section 8. Cancellation of
5 Memberships By Board Action). The termination of AV LLC's agreement was not done
6 automatically pursuant to Section 7 of the bylaws, but rather was conducted through Board
7 action pursuant to Section 8. Dkt. #58-4 at 35 (letter to AV LLC and Mr. Harooni,
8 explaining that the Board made the "decision to cancel all aspects of the property's
9 membership," and which made clear that the termination was not automatic). Section 8 does
10 not state that the Board is required to grant a conditional extension in lieu of cancellation.
11 *See* Dkt. #58-1 at 37 ("The Board shall have the right to cancel any Membership [for] . . .
12 Failure to comply with the terms and conditions or to meet the standards as set forth in the
13 Regulatory Documents.").

14    Defendants argue in their reply brief that the member's bill of rights, which is part of
15 the bylaws, also mandates a conditional extension before termination. Dkt. #75 at 16-17.
16 Defendants point to the following language: "EACH MEMBER OF BEST WESTERN
17 SHALL HAVE THE FOLLOWING RIGHTS: . . . 12. The right to receive all member
18 services until membership is cancelled or terminated, except in the following cases,
19 membership services may be restricted: (i) when grounds for cancellation are found by the
20 Board of Directors to exist, after opportunity for a hearing has been provided, and the Board
21 has granted a conditional extension in lieu of cancellation of membership[.]" Dkt. #58-1 at
22 32 (capitalization in original). Defendants argue that this language shows the Board must
23 always grant a conditional extension before terminating a membership. The Court disagrees.
24 This language clearly states that benefits cease as soon as a membership is "cancelled or
25 terminated," and further provides that, in certain cases where the Board has chosen to grant
26 a conditional extension, benefits flow until cancellation occurs.

27    **C.    Bona Fide Grounds.**
28    Defendants allege that Best Western breached the agreement by enforcing terms that

- 5 -

were "onerous and beyond the scope of the contemplation of the parties[.]" Dkt. #59 at 6-7. In support, Defendants cite a case applying New York law. *Bronx Auto Mall v. Am. Honda Motor Co.*, 934 F. Supp. 596, 610 (S.D.N.Y. 1996) (applying the New York Franchised Motor Vehicle Dealer Act). New York law does not apply in this case, and Defendants have failed to show that any Arizona law similar to New York's could apply. *See* Dkt. #58-1 at 15 (stating that the agreement "shall be governed and construed according to the laws of the State of Arizona").

**D.     Subjective Determinations.**

Defendants argue that Best Western failed to use reasonable and objective assessment standards in deciding to terminate their agreement for failure to meet quality standards, which was contrary to the reasonable expectations of Defendants. Defendants cite the Restatement (Second) of Contract, which has been adopted by Arizona courts. *See Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388 (Ariz. 1984). The relevant section of the Restatement reads as follows:

> [W]here a party to an agreement signs or otherwise manifests assent to a writing and has reason to believe that like writings are regularly used to embody terms of agreements of the same type, he adopts the writing as an integrated agreement with respect to the terms included in the writing.
>
> (2) Such a writing is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.
>
> (3) Where the other party has reason to believe that the party manifesting such assent would not do so if he knew that the writing contained a particular term, the term is not part of the agreement.

Restatement (Second) of Contracts § 211 (1981).

Defendants allege that "the terms of the contract were sufficient to lead Mr. Harooni to believe that objective criteria would be used such that he could reasonably calculate what needed to be done to continue his membership," and that Best Western's representative made "specific, concrete promises that reasonably led Mr. Harooni to believe that the membership would be continued and he would have assistance." Dkt. #59 at 9. Defendants fail to explain, however, how the Restatement (Second) of Contracts § 211 applies in this case or

- 6 -

1  how it entitles Defendants to summary judgment. Moreover, Defendants fail to provide any
2  evidence or citations to the record showing that Best Western had reason to believe that Mr.
3  Harooni would not have assented to the agreement had he understood all material terms.

### E. Fiduciary Duty.

Defendants contend that Best Western owed a fiduciary-like duty to Mr. Harooni because Best Western knew that he lacked experience in the hotel industry and promised to assist him. Defendants contend that a fiduciary duty existed because Mr. Harooni's company was a "member" of the Best Western organization and Best Western is a non-profit organization. Dkt. #59 at 10-11. Defendants further argue that a fiduciary duty existed because Best Western agreed to assist Mr. Harooni with his franchise. Defendants cite no case law showing that a fiduciary relationship existed or that a franchise agreement creates a fiduciary relationship. Indeed, "[a] commercial contract creates a fiduciary relationship only when one party agrees to serve in a fiduciary capacity." *Urias v. PCS Health Sys., Inc.*, 118 P.3d 29, 35 (Ariz. App. 2005). Defendants have provided no citations to the record showing that Best Western agreed to serve in a fiduciary capacity. Moreover, even if there was a fiduciary duty, Defendants have failed to explain how this entitles them to summary judgment on any claim.

### F. Forfeiture.

Defendants argue that the Court should refuse to allow Best Western to collect under the agreement because doing so would work a forfeiture contrary to public policy. Dkt. #59 at 12. Defendants argue that "Best Western revoked Mr. Harooni's membership despite the fact that Mr. Harooni had worked tirelessly and invested more than $2 million in renovating the hotel property." *Id.* Defendants fail to explain why "enforcing the terms of the contract as urged by Best Western would be unconscionable and contravene public policy." *Id.* Moreover, Defendants fail to explain why this entitles them to summary judgment.

### G. Bad Faith.

Finally, Defendants argue that Best Western breached the implied covenant of fair dealing implied in the agreement. Defendants argue that bad faith exists here because Best

1 Western "exercise[d] discretion retained or unforeclosed under [the] contract in such a way
2 as to deny the other a reasonably expected benefit of the bargain." *Sw. Sav. & Loan Ass'n*
3 *v. SunAmp Sys., Inc.*, 838 P.2d 1314, 1319 (Ariz. 1992).

4 Defendants have failed to show as a matter of undisputed fact that Best Western used
5 bad faith in its inspection process and in providing services to Defendants. *Celotex Corp.*,
6 477 U.S. at 323 (A party seeking summary judgment "bears the initial responsibility of
7 informing the district court of the basis for its motion, and identifying those portions of
8 [the record] which it believes demonstrate the absence of a genuine issue of material fact.").
9 A court may grant summary judgment only if the pleadings and supporting documents,
10 viewed in the light most favorable to the nonmoving party, "show that there is no genuine
11 issue as to any material fact and that the moving party is entitled to judgment as a matter of
12 law." Fed. R. Civ. P. 56(c). Defendants have failed to show that Best Western used bad faith
13 as a matter of undisputed fact.

14 **H.   Conclusion.**

15 Because the Court finds Defendants' arguments unpersuasive, the Court will deny
16 Defendants' motion for summary judgment in its entirety. Dkt. #59.

17 **VI.   Best Western's Motion for Summary Judgment.**

18 **A.   Best Western's Claims.**

19 Best Western alleges that it is entitled to summary judgment on all three of its claims
20 – breach of contract, open account, and stated account.

21 **1.   Breach of Contract.**

22 The elements required to prove breach of contract are (1) the existence of a contract,
23 (2) breach of that contract, and (3) damages. *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz.
24 1975). Best Western contends that the evidence conclusively demonstrates that a written
25 contract exists, *see* Dkt. #58-1 at 9-28, that Defendants agreed to pay Best Western "fees,
26 dues, charges, and assessments imposed generally on the membership," *see id.* at 11, that
27 Defendants agreed to pay the "cost of all goods or services provided by or ordered through
28 Best Western," *see id.*, and that Defendants have failed to do so, *see id.* at 6. Best Western

- 8 -

1 further alleges that it is obvious that Defendants' failure to pay the required amounts has
2 caused damages.

3 Defendants make several arguments as to why Best Western is not entitled to
4 summary judgment. The Court finds none of them persuasive.

5 Defendants argue that AV LLC and Mr. Harooni could not have breached the
6 agreement through non-payment because Best Western breached the terms of the agreement
7 first by terminating it without cause, contrary to California law. Dkt. #69 at 13-15. As
8 discussed above, however, Arizona law governs this case.

9 Defendants argue that they could not have breached the agreement because the Court
10 has a duty to enforce the agreement according to the parties' intent. *Id.* at 15. They argue that
11 they are allowed to introduce extrinsic evidence to show that Mr. Harooni was induced into
12 signing the agreement through misrepresentations, that the parties clearly intended for Best
13 Western to assist Mr. Harooni, and that Best Western failed to do so. Defendants contend
14 that "the intent of the parties regarding services and assistance to Mr. Harooni is well-
15 established" because "Terry Wininger admit[s] that she made representations to Mr. Harooni
16 regarding the availability of services prior to his signing the contract," because the "contract
17 itself states that services . . . are available to members," and because it "is equally clear based
18 upon the deposition testimony and the history of the parties' relationship that services were
19 not tendered." *Id.* at 16. Defendants fail to cite any facts in the record showing that Best
20 Western failed to provide the assistance that allegedly induced Mr. Harooni's agreement.
21 *See id.* at 15-16. If such evidence does exist, it is the responsibility of Defendants to bring
22 it before the Court. The Court is not obligated to "'scour the record in search of a genuine
23 issue of triable fact.'" *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted).
24 Rather, the Court relies on "'the nonmoving party to identify with reasonable particularity
25 the evidence that precludes summary judgment.'" *Id.* Defendants' papers in this case are
26 "extraordinarily difficult to use" and tend to "obfuscate rather than promote an understanding
27 of the facts[.]" *Id.* at 1278-79. "As the Seventh Circuit observed in its now familiar maxim,
28 'judges are not like pigs, hunting for truffles buried in briefs.'" *Indep. Towers of Wash. v.*

- 9 -

1 *Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *U.S. v. Dunkel*, 927 F.2d 955, 956
2 (7th Cir. 1991)) (alteration omitted).

3 Moreover, Defendants fail to cite any legal authority explaining why Best Western's
4 request for summary judgment should be denied even if Best Western promised services to
5 Mr. Harooni and failed to provide them. Defendants do not address, for example, whether
6 any alleged breach by Best Western was of a sufficiently material contract term to preclude
7 Best Western's contract claim. *See, e.g., Zancanaro v. Cross*, 339 P.2d 746, 750 (Ariz. 1959)
8 (stating that "the victim of a material or total breach is excused from further performance"
9 under the contract, while "the victim of a minor or partial breach must continue his own
10 performance, while collecting damages for whatever loss the minor breach has caused him").
11 Indeed, Defendants do not explain in any way how Best Western's alleged failure to abide
12 by the intent of the agreement precludes its breach of contract claim.

13 Finally, Defendants argue that Best Western is not entitled to summary judgment
14 because "the doctrines of reasonable expectation and equitable estoppel prevent enforcement
15 of boilerplate terms." Dkt. #69 at 17. Defendants argue that the membership agreement is
16 oppressive because it limits a hotel owner's recovery to reimbursement of membership fees
17 even though it allows Best Western to invoke "any remedy at law or in equity." *Id.* They
18 also argue that the membership agreement is oppressive because it obligates a hotel "to
19 continue paying assessments for the calendar year" in which the membership is terminated.
20 *Id.* Defendants fail to explain how these terms of the agreement have anything to do with the
21 dispute between the parties, or how they are so oppressive as to vitiate the contract generally.
22 Defendants do not cite any legal authority showing that terms of this type are unenforceable
23 under the doctrines of reasonable expectation and equitable estoppel. Indeed, Defendants
24 cite only one case, *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d
25 388, 400 (Ariz. 1984), in which the court determined that equitable estoppel should be used
26 "as a device to prevent enforcement of those boiler-plate terms of the insurance contract
27 which are more limited than the coverage expressly agreed upon by the parties." This case
28 does not support the proposition that the terms in the membership agreement should not be

enforced, particularly given that Defendants have failed to point the Court to facts showing that the membership agreement's terms are contrary to the "expressed agreement or the purpose of the transaction[.]" *Id.* As a result, the Court cannot find that Best Western is not entitled to summary judgment.

### 2. Open Account.

Best Western alleges that there is no dispute of fact as to its open account claim because it need only "prove the correctness of the account and each item thereof." *Holt v. W. Farm Servs, Inc.*, 517 P.2d 1272, 1274 (Ariz. 1974). Best Western alleges that all the charges, fees, dues, and assessments reflected in the statements filed with Best Western's complaint were permitted to be charged to Defendants pursuant to the contract between the parties. Defendants do not address this argument in their response. The Court will grant summary judgment to Best Western on the open account claim.

### 3. Stated Account.

Best Western alleges that it is entitled to summary judgment on its stated account claim. Defendants do not address this argument in their response. The Court will grant summary judgment to Best Western.

### B. Harooni's Counterclaim.

Best Western contends that it is entitled to summary judgment on Mr. Harooni's counterclaims for breach of contract and breach of the covenant of good faith and fair dealing for five separate reasons: (1) Mr. Harooni cannot prove damages, (2) Mr. Harooni's alleged oral agreements fail, (3) termination of the agreement was not a breach, (4) any alleged malfunction of the reservation system was not a breach, and (5) any alleged failure to inform Mr. Harooni of requests for proposal deadlines for customers was not a breach. Dkt. #57 at 2. Because the Court agrees that Mr. Harooni cannot prove damages, the Court will not consider the other four arguments.

To prevail at trial, Mr. Harooni must prove that he suffered damages as a result of the alleged breaches. *Graham*, 540 P.2d at 656; *United Dairymen of Ariz. v. Schugg*, 128 P.3d 756, 762 (Ariz. App. 2006). Best Western argues that Mr. Harooni cannot show that he

incurred any damages because he "appears to claim he is entitled to recover damages allegedly incurred by two separate independent corporate entities [AV Inc. and AV LLC], neither of which has a counterclaim pending against Best Western in this case." Dkt. #57 at 7.

Best Western contends that the only evidence of Mr. Harooni's damages that can be presented at trial are from Mr. Harooni's expert report. Dkt. #57 at 10. Best Western argues that this evidence is useless for determining Mr. Harooni's individual damages because the report, prepared by Elias Aziz Lavi, a Certified Public Accountant, discusses losses incurred by AV Inc. only. Dkt. #36 at 2-28. The report makes clear that Mr. Lavi was determining damages solely for AV Inc., and neither Mr. Harooni nor AV LLC is mentioned in the report. *Id.* Best Western further notes that Harooni has disclosed no other witnesses on damages.

Mr. Harooni argues that he can show damages in two ways. First, he can show damages through the expert report of Mr. Lavi. Mr. Harooni claims he suffered damages because he is the owner of AV Inc., a subchapter S corporation, which suffered damages as a result of Best Western's alleged breaches. Because any losses suffered by a subchapter S corporation are passed through to the shareholders pursuant to federal and state tax law, he asserts that the damages to AV Inc. were passed through to him and are personal damages. Dkt. #69 at 3. The Court disagrees. Defendants fail to cite any Arizona cases showing that an individual shareholder of an S corporation can sue a third party for personal damages based on losses caused to the corporation.[3] Moreover, the expert report of Mr. Lavi does not address how losses are passed through an S corporation or what offsets might apply to the pass-through of such losses – matters likely beyond the ken of the average juror. Nor does his report explain how the specific losses in this case would be passed through to Mr.

---

[3] Defendants cite one California case, *Denevi v. LGCC, LLC*, 121 Cal. App. 4th 1211, 1221 (Cal. App. 2004), but case applies California law and not Arizona law. Moreover, the case allowed an individual claim by a shareholder of a corporation because he suffered personal injury that was "in no sense derivative of his status as an owner-member of the [] entity." *Denevi*, 121 Cal. App. 4th at 1222.

Harooni. *See* Dkt. #36 at 2-12.

Second, Defendants argue that Best Western's own expert noted that there is no clear delineation between AV LLC, AV Inc., and Mr. Harooni. Dkt. #69 at 5. They further argue that Mr. Harooni's damages are clear from the evidence produced during discovery, which show that Mr. Harooni purchased the hotel for $5.7 million and spent $2 million on improvements. *Id.* at 7 (citing Dkt. #70 at ¶ 5). Even if Mr. Harooni did put such money into the hotel, however, Mr. Harooni has failed to show how those expenditures relate to any damages caused by the alleged breaches of Best Western. Mr. Harooni presumably still owns the hotel with all of the improvements he funded. Mr. Harooni provides no evidence of the money he expected to make from the agreement with Best Western or the amounts he lost from the agreement's termination. *See* Restatement (Second) of Contracts § 347 cmt.a ("Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed.").

Mr. Harooni has provided no evidence of his individual damages – an essential element of his breach of contract and breach of implied covenant claims. Best Western is therefore entitled to summary judgment on Mr. Harooni's counterclaims.

**IT IS ORDERED:**

1. Defendants' motion for summary judgment (Dkt. #61) is **denied**.
2. Plaintiff's motion for summary judgment (Dkt. #57) is **granted**.
3. Plaintiff's motion for leave to file a sur-rebuttal (Dkt. #81) is **denied as moot**.
4. Plaintiff shall, within 20 days of this order, lodge a proposed form of judgment to be entered by the Court.

DATED this 24th day of June, 2010.

David G. Campbell
United States District Judge