Kira A. Schlesinger (State Bar No. 023450)
**THE SCHLESINGER CONRAD LAW FIRM**
11811 N. Tatum Blvd., Ste. 3031
Phoenix, Arizona 85028
Tel: 602-615-6013
Fax: 602-441-5302
E-Mail: Kira@SchlesingerConrad.com

*Attorney for Defendant/Counterclaimant*
*Hooshang Harooni, and*
*Defendant AV Inn Associates 1, LLC*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BEST WESTERN INTERNATIONAL, INC. | No.  CV 08 - 2274 - PHX-DGC |
| Plaintiff, | |
| v. | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT (MOTION FOR RECONSIDERATION) PURSUANT TO RULE 59 AND 60 OF THE FEDERAL RULES OF CIVIL PROCEDURE |
| HOOSHANG  HAROONI AND AV INN ASSOCIATES 1, LLC, | |
| Defendants. | |
| And Related Counterclaim | |

Defendants/Counterclaimant AV Inn Associates 1, LLC and Hooshang Harooni (collectively "Harooni") hereby submit the following Memorandum of Points and Authorities in Support of their Motion for Relief from Judgment (Motion for Reconsideration).

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.    **PRELIMINARY STATEMENT**

On June 24, 2010, this Court stated in its ruling on summary judgment that it was unable to locate sufficient evidence to support Hooshang (Harry) Harooni's counterclaim

against Best Western.  This determination has exposed Harooni to a potential judgment of more than $75,219.59, plus interest and, potentially, attorney's fees.  The judgment deprives Harooni of his rights against Best Western, and results in losses of over $2 million to Harooni, personally—a sum that represents Harooni's life savings.

Particularly problematic are the Court's findings that:

A) Harooni presented no evidence of damages (Dkt. 84/11 of 13 (11:20-24));

B) A notice of a hearing is sufficient under A.R.S. § 10-3621, despite the undisputed fact that the hearing provided was not fair (Dkt. 84/4 of 13 (4:28), fn 2);

C) That Best Western was not obligated to provide members with a conditional membership (as an opportunity to cure an alleged default) before termination may issue (Dkt. 84/4 of 13(4:20-22));

D)  That, absent an affirmative showing of Harooni's expectations to the contrary, the contract permitted subjective assessments to justify termination under the contract despite the specific language of the contract (Dkt. 84/7 of 13 (7:1-3); and

E) Arizona law applies to Harooni's California S Corporation pass-through losses and, therefore, Harooni cannot show damages despite significant losses (Dkt. 84/11 of 13 (11:24)).

Because these issues should have—at a minimum—permitted a trial on the merits, this motion for reconsideration should be granted, and the judgment should be reversed. Further, because there was some confusion regarding exhibits, which was clearly not the fault of Harooni, this Court should permit oral argument to allow clarification these and other outstanding issues.

**II.    ARGUMENT**

**A.    This Court has the Power to Reverse the Ruling on Summary Judgment**

Pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure this Court has the power to review and revers the instant motion for summary judgment.  Under Rule 59, a court may  reconsider its ruling where the moving party can make a convincing showing that the "Court failed to consider material facts that were presented to the Court at the time of its initial decision." *Taylor v. Horizon Distribs., Inc.*, 2009 U.S. Dist. LEXIS 69301, 3-4 (D. Ariz. 2009) (citing *Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.*, 215 F.R.D. 581, 586 (D. Ariz. 2003)).  Here, the Court failed to comment on or, apparently consider, the Declaration of Scott Evans, a properly disclosed percipient witness with personal knowledge regarding Harooni's individual damages.  (Dkt. 84, generally).  Harooni is led to believe that this evidence may have been overlooked because the Court stated:

> Mr. Harooni argues that he can show damages in two ways. First, he can show damages through the expert report of Mr. Lavi. Mr. Harooni claims he suffered damages because he is the owner of AV Inc., a subchapter S corporation, which suffered damages as a result of Best Western's alleged breaches. *Ruling,* (Dkt. 84 (12:15-20).

Further, the Court stated at page 13 of the Order that "Mr. Harooni presumably still owns the hotel with all of the improvements he funded." (Dkt. 84 (13:8-9)).  He does not. The evidence also shows that Harooni sold the property at a loss because of the termination of the membership.  Thus, this Court should re-review the matter consistent with Rule 59.

The case is also amenable to alteration of the judgment under Rule 60.  That Rule provides that a court may grant relief from judgment for mistake, inadvertence, excusable neglect or any other reason justifying relief.  Fed. R. Civ. P. 60(b).  To the degree that the evidence was not clearly before the court, and with apologies, counsel only had the

The Schlesinger Conrad Law Firm

1 relevant file for a short time.[1]  When computer problems arose during filing, the Exhibits

2 were forced to be attached to the points and authorities and the statement of facts. *See*

3 *Declaration of Kira A. Schlesinger, filed concurrently.*  While these problems should not

4 have been the Court's, they most assuredly were not caused by Harooni.  Because

5 clarification could have been provided either through additional briefing, or more easily at

6 oral argument, this court should have been granted oral argument.

7        Finally, courts must credit all justifiable inferences in favor of the non-moving

8 party.  *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505

9 (1986); *Harkins Amusement Enterprises, Inc. v. General Cinema Corp.,* 850 F.2d 477,

10 485 (9th Cir. Ariz. 1988).  The evidence in this case demonstrates that summary judgment

11 in favor of Best Western on Harooni's counterclaim was improper.  While the Court may

12 not have determined that the case presented by Harooni was strong enough to enter

13 summary judgment in his favor, it is pellucid that Best Western's unsupported and

14 erroneous assertion that Harooni had no personal damages is wholly insufficient to grant

15 summary judgment on the counterclaim in favor of Best Western.

16        The evidence submitted by both Best Western and Harooni shows that, at a

17 minimum, there is a triable issue of fact such that this Court should have permitted a jury

18 to determine the disputed issues of fact.  The degree of evidence necessary to withstand

19 summary judgment is not the same caliber that may be necessary to prevail at trial.

20 Specifically, the *Celotex* Court stated: "We do not mean that the nonmoving party must

21 produce evidence in a form that would be admissible at trial in order to avoid summary

22 judgment.  Obviously, Rule 56 does not require the nonmoving party to depose [his] own

23 witnesses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (U.S. 1986)  (alteration added).

24 Harooni submitted ample evidence of personal damages. Therefore, relief from the

25 judgment under Rule 60 is also appropriate.

26 _____

27 [1] The file was finally transferred to new counsel following this Court's order on February 26, 2010.  Philip Nathanson's office delivered the file in disarray without complete pleadings, indices

28 or other apparent organization. *See Declaration of Kira A. Schlesinger, filed concurrently.*

**B.** **Review of the Factual Evidence Supports Harooni's Motion for Summary Judgment.**

    **1.** **Consideration of Undisputed Evidence Demonstrates Harooni's Personal Damages Sufficient to Survive Summary Judgment.**

Harooni submitted the declaration of his accountant as a lay witness to support damages.  Testimony of a lay witness based upon personal knowledge is sufficient to support this claim.  Rule 701 reads as follows:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Scott Evans was Harooni's accountant.  His factual declaration that Harooni invested $2.3 million for the purchase of the hotel, and that these funds came from Harooni's 1031 Exchange, is within the accepted scope of a percipient witness where the witness has personal knowledge of the facts asserted.  *United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. Cal. 2001).  Indeed, a lay witness may even testify as to an ultimate issue of fact, so long as the testimony is otherwise admissible. *Id.*

Here, Scott Evans has personal knowledge rationally based upon his experience as Harooni's accountant.  The declaration, along with deposition testimony and Best Western's own records, demonstrate that this investment constituted damages sufficient to support Harooni's counterclaim.  (Dkt. 59-1 (59:10-14) [Deposition of Harooni]; Dkt. 70/6 of 66 (6:17-7:14); Dkt. 70-1 pg. 4 of 48 (3:19-21); Dkt. 70-2 (3:21-26), ¶ 11 [Declaration of Scott Evans]; *see also* Dkt. 59-15/13 of 17).

Best Western does not contest the facts attested to by Mr. Evans.  Rather, Best Western's argues[2] that Mr. Evans' knowledge of the investment money for the hotel is

---

[2] This argument was improperly contained within the Statement of Facts in Support of Best Western's <u>Reply</u> to Harooni's Opposition to Best Western's Motion for Summary Judgment (Dkt. 74).



The Schlesinger Conrad Law Firm

beyond the scope of the disclosures.  However, the disclosure stated that Mr. Evans would testify regarding "the formation of the business entities involved in the ownership and operation of Mr. Harooni's hotel."  (Dkt. 74-1/4 of 5, ¶3).  It seems self-evident that the funding for the hotel falls within the "ownership and operation" of the property. Moreover, Scot Evan's name appeared on each and every tax return disclosed in this matter, and yet Best Western never sought his deposition.  (Dkt. 58/13 of 41 (13:8-12; Dkt. 70-2/2 of 38 (1:20-24), ¶ 1).  Thus, Best Western's improper argument cannot operate to bar a properly tendered declaration in support of damages.

Further, and contrary to the Court's supposition, Harooni does not still own that hotel.  (Dkt. 58-3/ 8 of 52 (61:10-12)).  The evidence submitted in Harooni's Opposition to Best Western's Motion for Summary Judgment shows that Harooni sold the hotel at a loss.  Harooni lost one purchase offer because Best Western revoked his membership. Harooni ultimately was forced to accept $4.6 million for hotel, despite having paid $5.7 million for it.  Having invested the original $2.3 million out of funds from Harooni's own 1031 Exchange, and investing more than $2 million in the renovations, it is clear that Harooni suffered damages.  (Dkt. 58-3/8 of 51 (61:19-63:6); Dkt. 70-1/5 of 48 (4:9-17) ¶ 19;  Dkt. 70-1/3 of 48 (2:8-11) ¶ 4; (3:19-21), ¶ 14).  Best Western did not dispute this evidence. (Dkt. 74-1).  Thus, the declarations and deposition testimony show that, at a minimum, there is an issue of material fact regarding damages for trial.

> ### 2.    A.R.S. § 10-3621 and Best Western's Governing Documents Required a **Fair** Hearing

Best Western's failure to dispute that the hearing in this case was not fair should have been fatal to their argument.  Arizona Revised Statute § 10-3621 recognizes a member in a non-profit is entitled to notice and an opportunity to be heard.  Best Western receives its authority to act from the non-profit membership statutes.  Courts are to construe statutes so that they "conform to constitutional limitations, and shall work no absurdity or substantial injustice." *McMurchie v. Superior Court*, 26 Ariz. 52, 57-58

The Schlesinger Conrad Law Firm

SC
LF

1   (Ariz. 1923).  To the degree any statute is construed so as to sanction the loss of a property

2   interest without a meaningful opportunity to be heard, it is unconstitutional.  Unless a

3   hearing provides a *possibility* of correcting a wrongful termination, it is not a meaningful

4   opportunity to be heard.  Statutes protecting a member or franchisee were enacted to

5   reduce the disparity of bargaining power. *See, e.g., Humboldt Oil Co. v. Exxon Co.,*

6   *U.S.A.,* 695 F.2d 386, 388 (9th Cir. 1982) (Petroleum Act intended to prevent arbitrary

7   terminations); *Sundown Imports v. Arizona Dep't of Transp., Motor Vehicle Div*., 115

8   Ariz. 428, 431 (1977) ("A.R.S. § 28-1304.02(A) provides that 'the franchisor has the

9   burden of proof to establish that good cause exists to terminate . . . the franchise.').  Due

10  process's "root requirement that an individual be given an opportunity for a hearing before

11  he is deprived of any significant property interest." *Boddie v. Connecticut*, 401 U.S. 371,

12  379 (U.S. 1971).  A finding that a vacuous exercise satisfies the hearing requirement

13  obviates the contractual and statutory protections enacted for the benefit of the members.

14       Best Western's interpretation of the contract leads to absurd results, which are

15  never favored by the courts.  Under Best Western's interpretation of the contract, Best

16  Western was required to conduct a hearing and grant a conditional membership before it

17  could terminate *services,* but it could terminate the *contract*—a much harsher penalty—

18  without such safeguards.  That cannot be the intent of the contract, or of the legislature.

19  "Indeed, a sine qua non of contract doctrine is a shared expectation that the parties will

20  execute the contract in accord with the law." *Baker v. Liberty Mut. Ins. Co.,* 143 F.3d

21  1260, 1264 (9th Cir. 1998).

22       Best Western does not argue that Harooni ever had a meaningful opportunity to be

23  heard.  (Dkt. 67/3 of 19 (3:8-5:9)).  In fact, despite two pages of argument, Best Western

24  does not once assert that the hearing mandated by its Bylaws was fair. *Id.*  To the degree

25  that the Board reviewed *any* evidence at all during the hearing, it did not inquire as to the

26  propriety of the evidence. (Dkt. (60:23-26), ¶ 62).  Best Western admitted that no hearing

27  conducted by the Board of Directors would possibly change the outcome. (Dkt. 70/15 of

28

The Schlesinger Conrad Law Firm

SC
LF

66 (15:66-22)).  Thus, the hearing was a farce that did not comport with the legislative intent of protecting members' property rights.  Following that charade, Harooni lost a significant property right in his membership.  Because Best Western was in breach of the contract and in violation of the law, summary judgment in favor of Best Western could not properly issue on its contract claims.  Accordingly, this motion should be granted.

### 3.    The Evidence Does Not Support the Subjective Inspections that Led to Termination

Had Best Western conducted a hearing, it would have revealed that the hotel met all appropriate, non-subjective standards for membership. Where a contract provision requires subjective standards, the Court may not re-write those standards. "It is not within the province or power of the court to alter, revise, modify, extend, rewrite or remake an agreement. Where the intent of the parties is expressed in clear and unambiguous language, there is no need or room for construction or interpretation and a court may not resort thereto." *Shattuck v. Precision-Toyota, Inc.*, 115 Ariz. 586, 588 (Ariz. 1977) (citing *Goodman v. Newzona Investment Co.,* 101 Ariz. 470, 472, 421 P.2d 318, 320 (1966)).

The contract unambiguously states members had a right to standardized inspections.  (Dkt. 58-4/2 of 25 (¶ 10)).  Best Western's personnel admitted at deposition that both the inspection and the Board of Director's determinations were subjective. Indeed, Lloyd Nygaard, the person most knowledgeable regarding inspections, and both inspectors involved, Mitch Van Wormer and Cindy Bree all testified that the inspections included subjective assessments.  (Dkt. 60/3 of 17 (3:17-23); Dkt. 60/12 of 17 (12:11-19) ¶49; Dkt. 60/13 of 17 (13:21-14:9)). Due to the subjective assessments by Best Western's agents, Harooni's average score was assessed at 4 points below Best Western's "passing" scores.  (Dkt. 60/13 of 17 (13:5-11), ¶¶ 54 and 55; *see also* Dkt. 60 (13:11-14:9), ¶¶ 56-58).

In reality, Best Western presented no evidence that the hotel had deteriorated since Harooni made renovations that improved the quality of the hotel. (Dkt. 68 (14:27), ¶ 21). Without such a showing, and in light of the admitted subjective nature of the inspections,

The Schlesinger Conrad Law Firm

1  Best Western breached its own agreement to employ fair and standardized inspections.

2  (Dkt. 59-4/2 of 25 (¶ 10) [the right to have standardized inspections]).

3      Best Western's motives for terminating Harooni's are reasonably presented in the

4  pleadings. Best Western embarked on a plan to improve its image, and it heightened its

5  inspection requirements at that time.  (Dkt. 60 (10:20-24) ¶ 40; (5:21-28) ¶¶ 18-19).  Best

6  Western did not present any evidence to contravene this assertion.  (Dkt. 68, 31:1-2

7  ("Both the testimony of Wininger and the Defendants' Motion Ex. 17 speak for

8  themselves")).  In fact, Best Western affirmatively stated that the renovations Harooni

9  made to the hotel were "above and beyond what was required by Best Western."  (Dkt. 68

10 (13:19-20)).  Best Western did not dispute that the renovations Harooni made were in

11 concert with Best Western's Design Department. (Dkt. 68 (14:27), ¶ 21).  There is no

12 dispute that, prior to purchase by Harooni, the hotel had "some distress issues," and that

13 Harroni had improved the condition of the hotel.  (Dkt.  68 (11: 14-20) ¶ 16; Dkt. 59-

14 14/pg. 11 (37:14-20)).  Further, there is no dispute that the prior owner of the hotel did not

15 lose his membership.  *Id.*  Under Harooni's ownership, AAA upgraded the hotel from a 2-

16 Star to a 3-Star property.  (Dkt. 60, (6:5-10), ¶ 21; see also Dkt. 68, (14:27), ¶ 21 ("Best

17 Western does not dispute the facts DSSOF ¶ 21").

18     These issues raise a triable issue of fact as to whether the termination of the

19 membership was arbitrary and capricious and/or in bad faith.  Given the significant

20 evidence regarding damages, it was improper to grant Best Western's motion for summary

21 judgment as to the breach of contract and counterclaim.  Respectfully, Harroni should

22 have an opportunity to trial on the merits.

23           **4.**    **The Evidence Demonstrates Harooni Only Entered into the**
                        **Contract on the Basis of Best Western's Assurances**

24     The evidence demonstrates that but for Best Western's assurances, Harooni would

25 not have entered into the contract.  The evidence further demonstrates that Best Western

26 was aware of this.  Therefore, the doctrine of reasonable expectations should have been

27

28

1  applied to estop Best Western from revoking the membership and seeking contract

2  damages from Harooni.

3      In accordance with "[t]he general rule of contract interpretations" endorsed by the

4  Restatement (Second) of Contracts and the late Arthur L. Corbin, "boilerplate terms which

5  are contrary to either the expressed agreement or the purpose of the transaction as known

6  to the contracting parties" are not given effect.  *Mt. Hawley Ins. Co. v. Total Bldg. Sys.*,

7  2008 U.S. Dist. LEXIS 53982 (D. Ariz. 2008) (citing *Darner Motor Sales, Inc. v.*

8  *Universal Underwriters Ins. Co.*, 140 Ariz. 383, 395, 682 P.2d 388, 400 (1984)) .

9  "Therefore, this consumer-protection doctrine, 'essentially a relaxation of the rule barring

10  parol evidence, from being admitted to discern the intent of the parties to the contract,'

11  can 'override even unambiguous contract provisions when an insured reasonably expected

12  the provision to operate differently.'" *Id.* (citing *Vencor Inc. v. Nat'l States Ins. Co.*, 303

13  F.3d 1024, 1035 (9th Cir. 2002); *Gordinier v. Aetna Cas. & Sur. Co.*, 154 Ariz. 266, 272,

14  742 P.2d 277, 283 (1987)).

15      Thus, even if the contract language regarding conditional memberships, the right to

16  standardized inspections, and fair hearings were ambiguous, Harooni's good faith belief

17  that he would be treated fairly and receive services as promised by Terry Wininger and the

18  Best Western documents should be honored.  To the degree this was not clearly presented

19  in the moving papers, oral argument would have afforded an opportunity to clarify the

20  doctrine's application.  In a nutshell, a party may not deny the benefits afforded by a

21  contract when it had reason to know of a party's belief, and worked to bind that party to a

22  contrary agreement through boilerplate contracts of adhesion, while representing that it

23  would honor the reasonable expectations of the opposing party.  *See Darner, supra, Mt.*

24  *Hawley, supra.*

25      Here, Harooni explained to Best Western that he needed help and guidance in the

26  management of the hotel.  (Dkt. 60/4-17 (4:15-5:8) ¶¶ 13, 14 and 15; *see also* ¶¶ 24-25).

27  This was communicated to Best Western and it cannot deny that it was aware of Harooni's

28

1    expectations.  Indeed, it does not argue ignorance.  (Dkt. 67/9 of 19 (9:21-10:19).  Rather,

2    they argue that Harooni could not have had an expectation that his membership would not

3    be cancelled if he failed to meet Best Western's standards.  *Id.*  No one argues that Best

4    Western could never have terminated the membership, but it could not do so after failing

5    to provide services and using subjective, unfair criteria for termination, as well as

6    ultimately failing to provide Harooni with a reasonable opportunity to be heard.  Harooni

7    had a reasonable expectation of being treated as a member of a group and provided the

8    assistance he had been promised.  Had that occurred, he would have had the funds to do

9    whatever was necessary to save his hotel.  (*See e.g.,* Dkt. 60/2 of 17 (2:13-16); Dkt. 70-1/3

10   of 48 (3:8-11) ¶4).  The record supports a finding that Best Western did not provide the

11   promised services.  (Dkt. 60/7 of 17 (7:25-28); Dkt. 60/8 of 17 (8:11-9:2)).

12        Best Western's response to these facts was inadequate to find in favor of Best

13   Western.  For example, the only response to ¶ 31 in Harooni's statement of facts was to

14   refer back to Paragraph 27 of that same statement.  At Paragraph 27, Best Western cited to

15   testimony from Kevin Refoua that Mitch Van Wormer came to the hotel.  However, Best

16   Western omitted critical testimony.  Best Western cites to testimony that Mitch Van

17   Wormer came out to do inspections.  Then, implies through elipse that the conversations

18   with Mr. Van Wormer satisfied the duties to provide a revenue manager.  They did not, as

19   demonstrated by the balance of the testimony:

20

21        Mr. Garbarino:  You just testified that Mitch came out and
             talked with you regarding the various matters that we just
22        discussed. In addition to that, what else did the hotel expect to
             receive from Best Western?

23        THE WITNESS: He would overview the monitoring system.
             And then we would -- we expected that Best Western, our
24        revenue manager, would go through it in more detail.
             Dkt. 59-14/8 of 20 (27:16-25).

25

26        In other words, Best Western cannot prevail on summary judgment by arguing that

27   the vague overview provided by an inspector fulfilled the obligations that Best Western

28

The Schlesinger Conrad Law Firm

1   incurred both through oral and specific promises, as well as under the contract.  (Dkt. 59-

2   14/8 of 20 (25:15-26:8 (Terri Wininger specifically told Defendants that Best Western

3   would monitor the reservation system to ensure that it was operating correctly; *Cf* Dkt.

4   60/9 of 17 (9:3-10:2), ¶¶ 35, 36).   In short, ample evidence shows that the expectations of

5   Harooni regarding a revenue manager, reservation monitoring, marketing and other

6   services were not provided.  This is contrary both to Harooni's expectations and the

7   contract.  Harooni should have been permitted to bring this to a jury, or—at a minimum—

8   raise these numerous issues and the legal questions at oral argument.   This is particularly

9   to if the Court felt that the evidence was not clear, as indicated in the Order at (Dkt. 84/9

10  of 13).

11         **C.      Contract Language Alone Does Not Govern The Law To Apply**

12         This court asserted that Arizona law applied because the contract at issue said so.

13  That should not, however, have been the end of the analysis.  First, it is well-established

14  that a contract's choice of forum will not always control.  California's franchise laws state

15  clearly that a franchisor cannot mandate an out of state forum.  California Business and

16  Professions Code Section § 20040.5 states explicitly that "A provision in a franchise

17  agreement restricting venue to a forum outside this state is void with respect to any claim

18  arising under or relating to a franchise agreement involving a franchise business operating

19  within this state." *Id.*  This provision was upheld by the Ninth Circuit in *Jones v. GNC*

20  *Franchising, Inc.,* 211 F.3d 495 (9th Cir. 2000).  That case stated:

21              It is apparent that § 20040.5 is  intended to void this clause
              with respect to any claim arising under or relating to the
22              agreement involving the franchise located in . . . California. . .
              . [A] strong public policy may be "declared by statute." By
23              voiding any clause in a franchise agreement limiting venue to
              a non-California forum for claims arising under or relating to a
24              franchise located in the state, § 20040.5 ensures that California
              franchisees may litigate disputes regarding their franchise
25              agreement in California courts.  We conclude and hold that §
              20040.5 expresses a strong public policy of the State of
26              California to protect California franchisees from the expense,
              inconvenience, and possible prejudice . . . . *Id.* at 497-498.
27

28

*The Schlesinger Conrad Law Firm*

The Schlesinger Conrad Law Firm

1    A similar finding was made in *Nagrampa v. MailCoups, Inc*., 469 F.3d 1257, 1290

2    (9th Cir. 2006), where the the Court considered the forum in a franchise-offering circular,

3    that suggested that the out-of-state forum selection and choice of law clauses may not be

4    enforceable under California law, because there was "no reasonable expectation that [the

5    franchisee] had agreed to a forum other than California." *Id.* (citing *Laxmi Invs., LLC v.

6    Golf USA*,193 F.3d 1095, 1097 (9th Cir. 1999) (internal quotation marks omitted).

7    Indeed, in  *Laxmi*, the court found that there was no "meeting of the minds," because a

8    California franchisee would expect that litigation would be in California forums. *Laxmi*,

9    193 F.3d at 1097)).

10    Here, the contract pertained to a California property, and California residents.  The

11    harm was felt in California in that Harooni was forced to sell his property and suffered the

12    harm of Best Western's breaches of contract in his home state of California.  Moreover,

13    any holding that asserts that Arizona law governs a the structure of a California

14    corporation cannot be sustained.  (Dkt. 84/12 of 13, 12 fn 3).

15    **D.    The Court Erred in Not Permitting Oral Argument and Considering**
16          **the Reply**

17    The Order cited to *Lake at Las Vegas Investor's Group, Inc. v. Pacific Malibu

18    Development Corporation,* 933 F.2d 724, 729 (9th Cir. 1991) to deny the opportunity for

19    oral argument properly requested.  Because the failure to grant oral argument significantly

20    prejudiced Harooni, that ruling was in error.

21    *Lake at Las Vegas* cites to *Houston v. Bran,* 725 F.2d 516 (9th Cir. 1984).  In

22    *Houston,* the Ninth Circuit "admonish[es] trial courts to grant oral argument on

23    nonfrivolous summary judgment motions." *Id.* at 518.  This case is most assuredly not

24    "frivolous."  Where an argument is "supported by the admissible testimony of several

25    percipient witnesses" the courts "cannot conclude that it was 'so obviously wrong' or so

26    lacking in support that it [is] 'groundless.'" *Rodriguez v. United States*, 542 F.3d 704, 710

27    (9th Cir. 2008)  (citing *United States v. Manchester Farming P'ship*, 315 F.3d 1176, 1183

28

The Schlesinger Conrad Law Firm

1   (9th Cir. 2003)).  Further, as stated by the Ninth Circuit, "an argument is groundless if it is

2   'foreclosed by binding precedent or . . . obviously wrong'"  *Id.* (citing  Oxford English

3   Dictionary (2d ed. 1989) (defining "groundless" as "[d]estitute of foundation, authority, or

4   support; having no real cause or reason; unfounded").

5        Not even Best Western argued that this case was frivolous.  This Court stated that

6   Defendant "fail[ed] to explain why Defendants are entitled to summary judgment."  (Dkt.

7   84/3 of 13 (3:16-17)).  Similarly, the Court opined that "Defendants have not shown that

8   Best Western failed to provide the notice required by the statute," and went on to state

9   there was nothing in the relevant statute  to require that the hearing be fair.  (Dkt. 84/4 of

10  13 (4:4-5 and fn.2).  Importantly, the statute has never been interpreted, and neither Best

11  Western nor the Court cited to any "binding precedent."  Thus by definition, Harooni's

12  motion for summary judgment was not frivolous.

13       Finally, the Court cited to *Delgadillo v. Woodford*, 527 F.3d 919, 930 n.4 (9th Cir.

14  2008) for the proposition that arguments made on reply should not be considered.

15  However, that case is not on point as it refers to arguments in an appellate reply.  The

16  difference is significant because following a reply on appeal, there is no further

17  opportunity to address arguments.  Thus, the appellate rule is to preclude prejudice to the

18  non-moving party.  However, that concern is not pressing in the context of a summary

19  judgment in the trial court.  The non-moving party could have requested additional

20  briefing or addressed such concerns on oral argument.  Indeed, Best Western amply

21  demonstrated its ability to seek additional briefing when it filed its Motion for Sur-Reply.

22  Best Western did not even attempt to file a further response regarding any issue raised by

23  the Reply beyond the lack of a license to practice law in the State of Arizona on the part of

24  deposition counsel, Blair Lazarus.  (Dkt. 81).   Accordingly, there was no proper reason

25  for disregarding any argument asserted by Harooni.  Had the Court given the arguments

26  proper consideration, Harooni respectfully submits that he should have been able to

27  present his case at trial.

28

III.    CONCLUSION

Best Western purports to sell membership comprised of services.  It purports to provide standardized inspections and function for the good of each member.  In this case, slick lawyering seems to have prevailed, and Harooni's counterclaim has been foreclosed. This Court could have (and should have) allowed an amendment, but chose not to address despite the fact that the failure to file a counterclaim was clearly not Harooni's.  This Court could have allowed oral argument but did not do so to Harooni's detriment.  This Court had discretion to review arguments in the Reply, but it chose not to do so, erroneously stating that Best Western would be prejudiced even in the face of its ability to file a sur-reply.  In the end, Harry Harooni did all that he could, but was fleeced by a powerful corporation in "non-profit" guise.  This Court is respectfully requested to reconsider the arguments and evidence in favor of trial on the merits.

Dated: July 9, 2010                    THE SCHLESINGER CONRAD LAW FIRM

                                       By: /s/ Kira A. Schlesinger
                                       Hooshang Harooni and
                                       Defendant AV Inn Associates I, LLC

                                   Certificate of Service

I hereby certify that on this 9th day of July 2010, I caused to be transmitted by the CM/ECF e-file system a true and correct copy of the foregoing **Memorandum of Points and Authorities in Support of Motion for Relief from Judgment (Motion for Reconsideration)** to counsel registered as filers on that system.  To the best of my knowledge, no additional parties require notification.

                           By _____/s/ Kira Schlesinger _____

4839-7056-7174, v. 1